No. 23-1073

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

APPVION, INC. RETIREMENT SAVINGS AND
EMPLOYEE STOCK OWNERSHIP PLAN,
by and through Grant Lyon in his capacity as the ESOP
Administrative Committee of Appvion, Inc.,

*Plaintiff-Appellant*,

v.

DOUGLAS BUTH et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Wisconsin
No. 1:18-cv-01861 (Hon. William C. Griesbach)

**BRIEF OF APPELLEE STATE STREET BANK AND TRUST COMPANY**

Jaime A. Santos
Matthew L. Riffee
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

James O. Fleckner
Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

*Counsel for Defendant-Appellee State
Street Bank and Trust Company*

August 4, 2023

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

State Street Bank and Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Goodwin Procter LLP and T. Wickham Schmidt Esq, PSC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        State Street Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        State Street Corporation.  See also attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jaime A. Santos    Date: February 1, 2023

Attorney's Printed Name: Jaime A. Santos

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 1900 N Street, NW

Washington, DC 20036

Phone Number: 202-346-4034    Fax Number: 202-204-7237

E-Mail Address: JSantos@goodwinlaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    State Street Bank and Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Goodwin Procter LLP and T. Wickham Schmidt Esq, PSC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        State Street Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        State Street Corporation. See also attached.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ James O. Fleckner    Date: February 10, 2023

Attorney's Printed Name: James O. Fleckner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: 100 Northern Avenue

    Boston, MA 02210

Phone Number: (617) 570-1153    Fax Number: (617) 523-1231

E-Mail Address: JFleckner@goodwinlaw.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  State Street Bank and Trust Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  Goodwin Procter LLP and T. Wickham Schmidt Esq, PSC

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

      State Street Corporation

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      State Street Corporation. See also attached.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Matthew L. Riffee       Date: February 10, 2023

Attorney's Printed Name: Matthew L. Riffee

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 1900 N Street, NW

       Washington, DC 20036

Phone Number: (202) 346-4177       Fax Number: (202) 204-7237

E-Mail Address: MRiffee@goodwinlaw.com

rev. 12/19 AK

[ Save As ]   [ Clear Form ]

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stoc v. Douglas Buth, et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 State Street Bank and Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Goodwin Procter LLP and T. Wickham Schmidt Esq., PSC

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

     State Street Corporation

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     State Street Corporation.  See also attached

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Jesse Lempel          Date: June 6, 2023

Attorney's Printed Name:  Jesse Lempel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address:  100 Northern Avenue

  Boston, MA 02210

Phone Number: 617 570 1000          Fax Number:  617 801 8819

E-Mail Address: jlempel@goodwinlaw.com

rev. 12/19 AK

## ATTACHMENT TO STATE STREET BANK AND TRUST COMPANY'S
## RULE 26.1 DISCLOSURE STATEMENT

**State Street Bank and Trust Company Response to Question #3(i)-(ii):**

Appellee State Street Bank and Trust Company is a National Banking Association organized under the National Bank Act.  State Street Bank and Trust Company is the principal banking subsidiary of State Street Corporation.  State Street Corporation is a publicly-traded company organized under the laws of Massachusetts.

No publicly held corporation owns 10% or more of State Street Corporation's stock. However, The Vanguard Group, Inc., an investment adviser which is not a publicly held corporation, has reported that registered investment companies, other pooled investment vehicles and institutional accounts that it or its subsidiaries sponsor, manage or advise have aggregate beneficial ownership under certain regulations of 10% or more of the stock of State Street Corporation.

# TABLE OF CONTENTS

                                                                                    **Page**

STATEMENT OF JURISDICTION..........................................................................1

ISSUES PRESENTED...........................................................................................1

STATEMENT OF THE CASE ...............................................................................1

    A.    State Street is retained as the Plan's independent trustee. ...................2

    B.    Plaintiff sues, and the district court dismisses all claims against
          State Street...........................................................................................7

SUMMARY OF ARGUMENT .............................................................................12

STANDARD OF REVIEW ...................................................................................15

ARGUMENT ........................................................................................................15

I.    The district court correctly held that Plaintiff's claims against State
    Street based on conduct before November 26, 2012 are time-barred. ..........18

    A.    The "fraud or concealment" exception requires affirmative acts
          of concealment intended to avoid detection of an ERISA
          violation..............................................................................................20

    B.    The "fraud or concealment" exception does not apply with
          respect to the 2001 ESOP transaction. .................................................22

    C.    The "fraud or concealment" exception does not apply with
          respect to stock valuations before November 26, 2012. ....................25

    D.    The district court correctly applied Circuit precedent in holding
          Plaintiff to his burden of pleading the elements of fraudulent
          concealment with particularity...........................................................29

    E.    Plaintiff's claims against State Street related to the July 16, 2012
          stock valuation are time-barred..........................................................31

II.    The district court correctly held that Plaintiff failed to plausibly allege
    that State Street breached ERISA's duty of prudence..................................36

    A.    The district court correctly concluded that Plaintiff's
          circumstantial allegations did not permit a plausible inference
          that State Street acted imprudently. ....................................................38

B.    Plaintiff failed to plead any red flags that should have alerted State Street that it could not reasonably rely on the independent appraisers' valuations. .......................................................................42

III.   The district court correctly held that Plaintiff failed to plead a plausible claim for co-fiduciary liability against State Street. ......................48

CONCLUSION .......................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ...................................................15, 16, 38

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) .............................................................39

*Arazie v. Mullane*,
  2 F.3d 1456 (7th Cir. 1993) ...............................................................47

*Barker v. Am. Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995) ................................................12, 21, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................15, 16, 41

*Bergmann v. BMC Indus., Inc.*,
  2006 WL 487864 (D. Minn. Jan. 20, 2006) ......................................35

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington
  Tr. N.A.*,
  241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir.
  2019) .............................................................................................39, 46

*Corp. Sec. Litig.*,
  75 F.3d 276 (7th Cir. 1996) ...............................................................47

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) .....................................................15, 44

*Eateries, Inc. v. J.R. Simplot Co.*,
  346 F.3d 1225 (10th Cir. 2003) .........................................................46

*Ellis v. Rycenga Homes, Inc.*,
  484 F. Supp. 2d 694 (W.D. Mich. 2007).....................................14, 35

*Enneking v. Schmidt Builders Supply Inc.*,
  917 F. Supp. 2d 1200 (D. Kan. 2013)................................................31

*Est. of Godley v. Comm'r*,
    286 F.3d 210 (4th Cir. 2002) ................................................................42

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ..........................................................16, 38, 41

*Fish v. GreatBanc Tr. Co.*,
    749 F.3d 671 (7th Cir. 2014) ................................................................40

*Frey Corp. v. City of Peoria*,
    735 F.3d 505 (7th Cir. 2013) ................................................................32

*Gable v. City of Chicago*,
    296 F.3d 531 (7th Cir. 2002) ................................................................17

*Gelles v. Skrotsky*,
    983 F. Supp. 1398 (M.D. Fla. 1997), *aff'd,* 189 F.3d 484 (11th Cir. 1999).......47

*Go Computer, Inc. v. Microsoft Corp.*,
    508 F.3d 170 (4th Cir. 2007) ................................................................21

*Grove Holding Corp. v. First Wis. Nat'l Bank of Sheboygan*,
    803 F. Supp. 1486 (E.D. Wis. 1992) ................................................................25

*Harris v. Koenig*,
    815 F. Supp. 2d 12 (D.D.C. 2011)................................................22, 24

*Hartquist v. Emerson Elec. Co.*,
    2016 WL 1312028 (M.D.N.C. Mar. 31, 2016)................................................................36

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) ................................................................39

*Hughes v. Nw. Univ.*,
    142 S. Ct. 737 (2022)................................................16, 41

*Irish v. BNSF Ry. Co.*,
    674 F.3d 710 (7th Cir. 2012) ................................................................32

*J.S. Sweet Co. v. Sika Chem. Corp.*,
    400 F.3d 1028 (7th Cir. 2005) ................................................................17

*Kurz v. Phila. Elec. Co.*,
    96 F.3d 1544 (3d Cir. 1996) ..........................................................21, 23

*Laskin v. Siegel*,
    728 F.3d 731 (7th Cir. 2013) ...........................................18, 21, 24, 29

*Martin v. Consultants & Administrators, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) ...................... 12, 19, 20, 21, 22, 24, 25, 26, 29

*Okerlund v. United States*,
    365 F.3d 1044 (Fed. Cir. 2004) ...........................................................44

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ...............................................................49

*Serafin v. William C. Earhart Co., Inc.*,
    2020 WL 437542 (D. Or. Jan. 28, 2020), *aff'd,* 2022 WL 2828223
    (9th Cir. July 20, 2022) .....................................................................35

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) .............................................................45

*PBGC ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan
    Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ......................................................8, 38, 44

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) .........................................................26, 37

*In re Unisys Sav. Plan Litig.*,
    74 F.3d 420 (3d Cir. 1996) ............................................................8, 38

*Walsh v. Vinoskey*,
    19 F.4th 672 (4th Cir. 2021) ..............................................................44

*Wolin v. Smith Barney Inc.*,
    83 F.3d 847 (7th Cir. 1996) .......................................................18, 20, 29

*Zirnhelt v. Mich. Consol. Gas Co.*,
    526 F.3d 282 (6th Cir. 2008) ..............................................................36

**Statutes**

29 U.S.C. § 1104 ............................................................................................17

29 U.S.C. § 1104(a) ...................................................................................9, 17

29 U.S.C. § 1105 ............................................................................................17

29 U.S.C. § 1105(a) ......................................................................................10

29 U.S.C. § 1106 ....................................................................................10, 17

29 U.S.C. § 1113 ................................................................12, 18, 22, 24

29 U.S.C. § 1113(1) .........................................................................1, 10, 18

29 U.S.C. § 1113(1)(A)-(B) ....................................................................13, 31

**Rules**

Fed. R. App. P. 28(i) ...............................................................................18, 42

Fed. R. Civ. P. 8(a) ........................................................................................37

Fed. R. Civ. P. 9(b) ......................................................................18, 19, 24, 30

Fed. R. Civ. P. 12(b)(6) ..............................................................................15

**STATEMENT OF JURISDICTION**

Appellee State Street Bank and Trust Company ("State Street") agrees that the jurisdictional summary in Plaintiff-Appellant's Brief is complete and correct.

**ISSUES PRESENTED**

1.    Whether the district court correctly held that all claims against State Street based on conduct prior to November 26, 2012 are barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113(1).

2.    Whether the district court correctly held that Plaintiff failed to plead a plausible claim for breach of ERISA's fiduciary duties against State Street.

3.    Whether the district court correctly held that Plaintiff failed to plead a plausible claim for ERISA co-fiduciary liability against State Street.

**STATEMENT OF THE CASE**

Plaintiff alleged a wide-ranging fraudulent scheme involving Appvion, Inc. (f/k/a Appleton Papers, Inc. and Appleton, Inc., collectively referred to herein as "Appvion") management, an investment banking company, two independent appraisal firms, and three independent trustees.  Plaintiff claimed that these seven independent, and often non-overlapping, entities conspired to commit fraud and violate ERISA for nearly two decades in order to line the pockets of Appvion management to the detriment of participants in the Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan ("ESOP" or the "Plan").  He sued 60

defendants, including State Street employees and their spouses, focusing most of his allegations on the actions and financial incentives of Appvion management serving on the Plan's ESOP Committee and on Houlihan Lokey, the investment banking company that Appvion hired to broker an ESOP transaction that occurred in November 2001 (nearly seventeen years before Plaintiff filed suit). A succinct summary is set forth in the district court's two motion-to-dismiss orders. A004-52; B001-67.[1] To avoid duplication of co-appellees' briefs, we address only the allegations and procedural history relevant to State Street, the Plan's independent trustee from 2001 until March 2013.

**A.** **State Street is retained as the Plan's independent trustee.**

State Street is a trust company that provides a wide variety of financial services to mutual funds, collective investment trusts, public and private pension funds, corporate entities, and non-profit institutions.

---

[1] District Judge William Griesbach issued the first motion-to-dismiss order. The second motion-to-dismiss order was issued as a report and recommendation ("R&R") by Magistrate Judge Stephen Dries, which Judge Griesbach adopted with the exception of footnote 6. A002; *see infra* p. 11. Accordingly, we refer to the R&R as the district court's order. Furthermore, the R&R in many instances referred back to the district court's prior decision, specifically referencing the district court's prior rulings about the Plaintiff's pleading deficiencies and concluding that those deficiencies had not been cured in the Plaintiff's amended pleading. *E.g.*, B001, B038-39. Thus, both Judge Griesbach's initial motion-to-dismiss order and Judge Dries's subsequent R&R, as adopted by Judge Griesbach, are relevant and referred to herein.

In 2001, Appvion decided to establish an ESOP and become 100% employee owned through a purchase-and-financing transaction. A004. Appvion retained investment banking company Houlihan Lokey to broker and structure the transaction on behalf of the corporation, and later retained State Street to review and negotiate the transaction on behalf of the ESOP. B002.

Under the terms of State Street's retainer agreement,[2] State Street was responsible for conducting a due-diligence review of Appvion and the proposed transaction and determining "whether it is permissible under ERISA to accept the direction of participants to invest all or a portion of their defined contribution account balances" in PDC stock.[3] SA34.[4] Specifically, State Street agreed to "review all relevant documents, analyze all relevant financial reports and opinions rendered by third parties," and determine whether the proposed transaction was fair based on the valuation of PDC stock. *Id.*

Pursuant to the retainer agreement, State Street agreed to retain a financial advisor to provide an opinion on whether the proposed transaction was financially fair to the ESOP. SA34. State Street retained Willamette Management Associates,

---

[2] SA33-36; B113 ¶ 88 (incorporating retainer agreement by reference).

[3] "PDC" refers to Paperweight Development Company, the holding company that owned Appvion. B085 & n.2. The parties have used PDC and Appvion (as well as PDC stock and Appvion stock) interchangeably.

[4] Citations to "SA" refer to the Supplemental Appendix filed together with this brief.

an independent business-valuation firm, to evaluate the financial fairness of the transaction and serve as a neutral valuator of Appvion common stock. B002-003; B103 ¶59. The agreement expressly provided that "State Street will rely on the written opinion of its financial advisor whether (i) the consideration to be paid for the common stock … is not greater than the fair market value" and "(ii) the Proposed Transaction is fair to the ESOP and its participants from a financial point of view." SA34. Appvion agreed to pay State Street a flat fee of $350,000 as consideration for its role in conducting due diligence and reviewing the transaction. SA35. Willamette received a flat fee of $200,000 for its work providing a fairness opinion. B120 ¶116.

Appvion and State Street (who was acting on behalf of the ESOP), with the assistance of their respective counsel and financial advisors, ultimately negotiated a sale price of $810 million, and Appvion's initial share price was set at $10 per share based on a valuation opinion issued by Willamette. A013; B003; B273 ¶651. About $700 million was financed through a series of loans, and the rest was funded through investments that plan participants chose to make from their 401(k) account balance. B003.

After the proposed transaction closed on November 9, 2001, Appvion retained State Street to serve as the ESOP's independent trustee on an ongoing basis. A014. Under the trust agreement between State Street and Appvion (SA13-32), State Street

was not a fiduciary of the Plan with respect to administering the Plan generally—the ESOP Committee, composed of Appvion executives and directors, served in that role. SA23; B099-101. Instead, State Street's role was more limited. It was responsible for receiving and holding in trust employer and participant contributions to the Plan, making distributions from the Plan as directed, voting PDC stock, investing in shares of PDC stock, and reporting the trust's net worth, among related responsibilities. SA18-23.

For reporting the trust's net worth, the trust agreement provided that "all valuations of shares of Company Stock shall originally be made by an 'Independent Appraiser' … retained by the Trustee, and reviewed and finalized by the Trustee." SA20; *see id.* (requiring State Street "to employ and to reasonably rely upon information and advice furnished by … Independent Appraisers"). And for purchasing Appvion stock, the trust agreement provided that State Street "shall purchase Company Stock from the Company or from any shareholder, if the Trustee is directed by the Committee," and that "[a]ll such purchases must be at a price not in excess of fair market value, as determined by an Independent Appraiser." *Id.* at 12.

State Street retained Willamette as the independent appraiser for valuing Appvion stock from 2001-2004, and Stout Risius Ross as the independent appraiser thereafter. A014. Between December 2001 and March 2013, when State Street sold

its ESOP-related business and ceased being the Plan trustee, it biannually reviewed and finalized independent valuations of Appvion stock provided by Willamette and then Stout.  B036.  The stock price varied throughout that time period, increasing from $12.81 per share to $33.62 from December 2001 to December 2006, decreasing to $12.03 in June 2010, and then increasing to $17.55 by December 2012.  B273 ¶652.  Shortly thereafter, State Street ceased being the Plan's trustee and had no further involvement in the Plan.  In April 2013, Reliance Trust Company became the Plan trustee, and its first valuation was $17.85—higher than the last stock valuation finalized by State Street.  SA4-5.  Argent Trust Company purchased Reliance in 2014 and became the Plan trustee as of July 1, 2014.  B103 ¶¶58-59.

In 2015, Appvion sold its most profitable operating division, Encapsys— which was a "driving factor" in the valuations of the company during State Street's tenure.  B176-76 ¶¶329-31.  Argent—then the Plan trustee—had been vested with discretionary authority regarding the Encapsys sale and voted to approve the sale.  B177 ¶333.

According to Plaintiff, the 2015 sale of Encapysis "materially lowered the overall value of the company," and "impaired Appvion's … ability to function."  B160-61 ¶274, B177 ¶334.  By mid-2017, Appvion's stock price was $6.85, and shortly thereafter Appvion filed for bankruptcy.  B003, B054.

**B.    Plaintiff sues, and the district court dismisses all claims against State Street.**

In August 2017, Appvion's Board of Directors appointed Grant Lyon as the sole member of the ESOP Committee.  A016.  He thereafter filed a lawsuit asserting claims under ERISA, federal securities laws, and state law against State Street and 59 other defendants, including individual employees who worked for Appvion, its financial advisor, the Plan's trustees, and the Plan's independent appraisers, along with their spouses.  He claimed that all of the defendants—many of whose tenures did not overlap—somehow collectively and consecutively colluded to engage in a 17-year fraudulent scheme to approve an unfair stock purchase, inflate the price of PDC stock, and fraudulently induce Plan participants to invest in the ESOP, all in an effort to line the pockets of Appvion officers and directors and Appvion's financial advisor, Houlihan.  A005-06; B085-96.

The district court dismissed Plaintiff's first amended complaint with leave to replead, holding in a detailed, 51-page decision that Plaintiff relied on conclusory group pleading allegations and failed to satisfy the relevant pleading standards. A004-55.  In response, Plaintiff filed a 394-page second amended complaint ("SAC"), abandoning all claims against spouses and against individuals who did not serve on the ESOP Committee or on Appvion's Board of Directors.[5]

---

[5] The SAC also abandoned the claim that the indemnification agreement between Appvion and State Street was void, which the district court dismissed.  A046-47.

The SAC's allegations again focused primarily on the actions of (1) Appvion officers and directors, whom Plaintiff alleged had engaged in a scheme to defraud Plan participants of their retirement earnings while receiving the financial benefits of the ESOP transaction and inflated stock prices, and (2) Houlihan, which Plaintiff alleged had the financial incentive to collude with Appvion executives. *E.g.*, B106 ¶¶72-73, B086-88 ¶¶3-8, B168-70 ¶¶297-305. The SAC nonetheless repeatedly characterized State Street as "colluding" with Appvion management and Houlihan, albeit without identifying any fraudulent conduct by State Street or offering any logical explanation as to why State Street—one of the nation's preeminent independent trust companies serving customers large and small across the country— would have any rational incentive to risk its reputation and defraud Plan participants in order to line the pockets of third parties. *E.g.*, B115, B126 ¶148.

Under ERISA, fiduciaries are judged not by the outcome of their decisions but by the process by which those decisions were made.[6] As to the 2001 ESOP transaction, Plaintiff's 394-page complaint does not contain a single allegation regarding Willamette's fairness opinion or stock valuation analysis. It does not contain a single allegation regarding State Street's diligence review, deal negotiations, or process for ultimately determining that the proposed transaction was

---

[6] *See PBGC ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996).

appropriate and permissible under ERISA.  Instead, the SAC simply surmises that "it is certainly reasonable to conclude" that the purchase price was not fair because, in Plaintiff's opinion, *subsequent* stock valuations contained alleged errors.  B126 ¶148.

And as to the 2001-2012 stock valuations, the SAC affirmatively alleges a "detailed level" of "valuation review" that included a detailed discussion by the ESOP Committee, State Street, and the independent appraiser regarding the valuation and process used to reach it, and even valuation adjustments made following those discussions, B131 ¶175; B132 ¶¶177-78, and regular reviews of the valuation by Appvion's Board of Directors and State Street.  B145 ¶228; B205-06 ¶403.  Nevertheless, Plaintiff asked the district court to infer that State Street's review process must have been inadequate—notwithstanding the "detailed level" of review alleged—due to what Plaintiff alleged were errors in the valuation factors used by the independent appraiser.  B037-38.

The SAC asserted 37 claims, four of which were asserted against State Street. Count III alleged that State Street breached ERISA's fiduciary duties of prudence, loyalty, and disclosure under 29 U.S.C. § 1104(a)[7] in approving the 2001 ESOP transaction and in relying on biannual stock valuations reached by Willamette and

---

[7] Consistent with typical federal appellate practice, we cite ERISA provisions using the U.S. Code. *E.g.*, Supreme Court Rule 34.5.  For a useful ERISA-U.S. Code cross-reference resource, see https://benefitslink.com/erisa/crossreference.html.

Stout. Counts XXI and XXII alleged that State Street violated ERISA's prohibited-transaction provision, 29 U.S.C. § 1106, in causing the ESOP to purchase common stock in relation to the 2001 ESOP transaction and in causing the ESOP to purchase Appvion stock twice per year following biannual stock valuations. Count XXVIII asserted claims for co-fiduciary liability under 29 U.S.C. § 1105(a), alleging that State Street was aware of, participated in, enabled, and failed to remedy ERISA violations committed by Appvion management and Houlihan.

The district court referred the defendants' motions to dismiss to Magistrate Judge Stephen Dries, who recommended that two claims against the Plan's 2014-2017 trustee (Argent Trust Company) should be sustained but that all other claims should be dismissed. B001-67. As relevant to State Street, the R&R concluded that any claims based on the 2001 ESOP transaction or stock valuations reached before November 26, 2012 were barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113(1). The R&R rejected Plaintiff's argument that § 1113's "fraud or concealment" tolling provision applied, holding that Plaintiff failed to allege with particularity "sufficient facts to establish that State Street engaged in a course of conduct designed to conceal its alleged wrongdoing." B038. Instead, Plaintiff's allegations of purported concealment were simply the allegations of breach that Plaintiff's claim challenged, or involved alleged misrepresentations made by other

10

defendants, not State Street.  A037-43; B039 (concluding that the SAC did not cure the defects previously identified by the district court).

As to the single December 2012 valuation within the repose period, the R&R concluded that the SAC failed to plausibly allege that State Street—an independent trustee that followed the Plan document, relied on the expertise of an independent appraiser as required by the trust agreement, received a fixed fee for its services, and had no conflict of interest or financial incentive to inflate the stock price to benefit Appvion executives—had violated ERISA in reviewing and relying on valuations performed by independent appraisers.  *See* A041-43 (rejecting fiduciary-breach claim); B040-41 (agreeing with State Street that the SAC had rehashed allegations that the district court had previously held were insufficient).  The R&R also concluded that Plaintiff's prohibited-transaction claim against State Street failed because the ESOP Committee, and not State Street, made the discretionary decision to purchase company stock; State Street merely acted pursuant to the ESOP Committee's direction.  B041-42.

The district court adopted the R&R in its entirety with the exception of one footnote.  A002.[8]

---

[8] The footnote contained Judge Dries's view that the SAC was "no longer inappropriately group-pled" because "any singular defendant has adequate notice of the allegations against themselves to satisfy the Twombly pleading standard."  B016 n.6.  The district court declined to adopt Plaintiff's reading of that footnote as

## SUMMARY OF ARGUMENT

I.    The district court correctly held that Plaintiff's claims against State Street based on conduct before November 26, 2012 are time-barred.  Plaintiff filed his lawsuit on November 26, 2018.  ERISA's statute of repose is six years, with a tolling provision that applies only in the case of "fraud or concealment."  29 U.S.C. § 1113.  An ERISA plaintiff has the burden of pleading fraud or concealment with particularity, and Plaintiff failed to do so here with respect to either the 2001 ESOP transaction or the valuations that State Street finalized between December 2001 and July 2012.

ERISA's tolling provision requires particularly pled allegations that (1) the specific defendant at issue (2) took an affirmative act (not merely omission) (3) that constituted a trick or contrivance specifically intended to conceal a fraud or a fiduciary breach.  *See Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1094-95 (7th Cir. 1992); *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995).  But all of the acts that Plaintiff's opening brief points to as supposedly constituting fraud or concealment are either (1) acts not taken by State Street at all, such as communications or corporate regulatory filings by Appvion's officers, directors, or investment banker; (2) alleged omissions rather than affirmative acts of

---

suggesting that Plaintiff stated a plausible claim for relief and instead effectively struck the footnote from the decision.

fraud or concealment; or (3) acts that cannot plausibly constitute a "trick or contrivance" taken with the intent to "cover [the defendant's] tracks," like the simple publication of a stock valuation at the close of every valuation review. Thus, the district court correctly concluded that Plaintiff failed to plausibly and particularly plead fraud or concealment.

Plaintiff's argument on appeal that his claims based on the July 26, 2012 stock valuation are timely under 29 U.S.C. § 1113(1)(A)-(B) was not preserved—the entirety of his argument on this issue in opposition to State Street's motion to dismiss was a single sentence parroting the text of ERISA's statute of repose. But even if it had been preserved, the district court correctly rejected this argument. The purchase of stock in December 2012 was not the "date of the last action which constituted part of the breach or violation." *Id.* § 1113(1)(A). The district court expressly held that the stock purchase was not a fiduciary act, and Plaintiff did not challenge that ruling on appeal. Furthermore, Plaintiff's fiduciary-breach claim was based on the alleged imprudence of State Street's process for reaching stock-valuation decisions, not on actions taken during the stock purchase. Nor was Plaintiff's fiduciary-breach claim premised on "an omission," thus triggering § 1113(1)(B). No omission-based theory under § 1113(1)(B) appears in the SAC, which plainly frames the alleged breaches as actions. Plaintiff's argument on appeal is simply a transparent attempt to recharacterize his claims to evade ERISA's statute of repose—an effort "courts

generally resist." *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 714 (W.D. Mich. 2007).

II.    As to the one stock valuation that is not time-barred, the district court correctly held that Plaintiff failed to plausibly allege that State Street breached ERISA's duty of prudence.  The district court appropriately took into account the relevant context—State Street's use of an independent appraiser, its compliance with Plan documents, and the lack of any allegations of kickbacks or logical incentive to engage in fraud or misfeasance—and correctly concluded that Plaintiff's allegations failed to plausibly plead a breach of the duty of prudence.  Indeed, the SAC affirmatively described a regular and detailed review of the independent appraiser's valuations involving State Street, the Plan's fiduciary committee, the independent appraiser, and members of the Appvion Board with fiduciary duties to monitor the Plan's fiduciary committee.

In contrast to cases relied upon by Plaintiff, the SAC failed to plead any red flags plausibly suggesting that relying on the independent appraiser's valuation reports was unreasonable—particularly given the existence of contemporaneous offers from third-party companies that were consistent with the valuations reached by the independent appraiser.  Instead, Plaintiff simply offered *ex post* disagreements with judgment calls made by the independent appraiser, who was engaged in the "very inexact science" of making judgment calls on issues of inherent uncertainty.

*Donovan v. Cunningham*, 716 F.2d 1455, 1473 (5th Cir. 1983). Plaintiff's *ex post* disagreement with those judgment calls, made with the benefit of hindsight, does not plausibly establish that State Street lacked a prudent process for reviewing appraisals and reaching valuation determinations, much less that State Street was part of a 17-year fraud on the Plan participants on whose behalf State Street was independently retained to act.

III.    The district court correctly rejected Plaintiff's co-fiduciary claims against State Street. Plaintiff's single paragraph regarding this issue simply regurgitates the allegations of fiduciary breach and is unaccompanied by any supporting authority or explanation. He fails to plead the enablement element of co-fiduciary liability under § 1105(a)(2), and he points to no error in the district court's conclusion that Plaintiff failed to allege State Street's actual knowledge of fiduciary breaches by others, as required by § 1105(a)(1) and (3).

## STANDARD OF REVIEW

"This court reviews de novo the district court's dismissal of the amended complaint for failure to state a claim." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022).

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ERISA cases in particular, the Supreme Court has repeatedly admonished that a "careful, context-sensitive scrutiny of a complaint's allegations" is critical to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeff*er, 573 U.S. 409, 425 (2014); *accord Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022); *Albert*, 47 F.4th at 577. And when evaluating whether a plaintiff has "provide[d] the kind of context that could move [his ERISA] claim from possibility to plausibility under *Twombly* and *Iqbal*," *Albert*, 47 F.4th at 580 (quotation marks omitted), courts must recognize that "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," and so "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *id.* at 577 (quoting *Hughes*, 142 S. Ct. at 742.

That is precisely what Judges Griesbach and Dries each did here. They carefully reviewed Plaintiff's wide-ranging and scattershot allegations, which largely focused on actions taken by parties other than State Street—in particular, Appvion officers and board members who also served as Plan fiduciaries and Appvion's financial advisor, Houlihan. And they correctly determined that the claims against State Street, a well-respected trust company that has not served as a Plan trustee for more than a decade, were deficient. As the district court concluded, the SAC challenged conduct almost entirely outside of ERISA's six-year statute of

repose, and any timely challenge to conduct that occurred after November 26, 2012 was inadequately pled with respect to State Street.

Plaintiff has abandoned on appeal any prohibited-transaction claim against State Street under 29 U.S.C. § 1106,[9] as well as any claim against State Street for breach of the duties of loyalty or disclosure under 29 U.S.C. § 1104(a).[10] Accordingly, the only claims against State Street at issue on appeal are (i) Plaintiff's claim against State Street for breach of the duty of prudence under 29 U.S.C. § 1104 concerning the 2001 ESOP transaction and biannual stock valuations that occurred between 2001 and 2012 (Count III), and (ii) Plaintiff's claim against State Street for co-fiduciary liability under 29 U.S.C. § 1105 (Count XXVIII).  Plaintiff's opening

---

[9] The SAC asserted two prohibited-transaction claims against State Street (Counts XXI and XXII).  The R&R adopted by the district court rejected those claims.  R&R 41-44.  Plaintiff's opening brief challenges the dismissal of the prohibited-transaction claims against the Appvion directors and officers (at 33-34), but it does not challenge the dismissal of the prohibited-transaction claims against State Street.

[10] The fiduciary-breach claim against State Street (Count III) in the SAC asserted distinct breaches of the duties of prudence, loyalty, and disclosure.  The district court rejected all three as inadequately pled.  A041-43; B040-41.  Plaintiff's opening brief, however, develops no arguments with respect to the duties of loyalty or disclosure. Plaintiff has therefore forfeited those claims on appeal.  *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1035 n.2 (7th Cir. 2005); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002).

brief identifies no error committed by the district court in dismissing the claims against State Street, and so this Court should affirm.[11]

### I.    The district court correctly held that Plaintiff's claims against State Street based on conduct before November 26, 2012 are time-barred.

ERISA contains a statute of repose that bars claims filed "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1). It also includes a limited tolling provision: "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." *Id.* § 1113.

An ERISA plaintiff bears the "burden to show fraud or concealment occurred," *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013), and to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Wolin v. Smith Barney Inc.*, 83 F.3d 847, 854 (7th Cir. 1996) (citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994)).

Plaintiff filed his initial complaint on November 26, 2018. B006. With the exception of a single stock valuation that State Street reviewed and finalized in

---

[11] In addition to the arguments in this brief, State Street adopts by reference those arguments in the other Defendants-Appellees' briefs that are applicable to the claims against State Street and that support affirmance. *See* Fed. R. App. P. 28(i).

December 2012, the SAC challenges State Street's role in transactions and valuations more than six years before he filed suit—going back nearly 20 years to the ESOP transaction that closed in November 2001 and including biannual valuations starting in December 2001. Thus, the district court appropriately recognized that the vast majority of the allegations against State Street fell well outside the repose period on the face of the SAC, and it committed no error in concluding that Plaintiff failed to satisfy his heightened pleading burden under Rule 9(b) for fraudulent concealment.

The acts of purported fraud or concealment identified in the SAC all involve either (i) alleged acts committed by other defendants—Appvion management and Appvion's financial advisor Houlihan—not by State Street, or (ii) the publication of the Appvion stock price, which is simply the end result of the valuation that the SAC challenges. Neither satisfies ERISA's tolling provision, which requires plausible allegations (pled with particularity) that State Street engaged in "some trick or contrivance intended to exclude suspicion and prevent inquiry." *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1094 (7th Cir. 1992) (quotation marks omitted); *see id.* at 1095-96 (noting that whether fraud or concealment occurs during the underlying ERISA violation or independently from it, it must consist of affirmative "steps taken by wrongdoing fiduciaries to cover their tracks"); B038-40; A37-39. As the district court rightly observed, that is what Plaintiff did not allege

in any of his three complaints:  some affirmative track-covering efforts *by State Street* beyond the alleged breaches.  The district court therefore correctly rejected Plaintiff's timeliness arguments.

### A.    The "fraud or concealment" exception requires affirmative acts of concealment intended to avoid detection of an ERISA violation.

As this Court has made clear, ERISA's fraud-or-concealment provision "incorporates the fraudulent concealment doctrine," and "the key to a finding of fraudulent concealment is some act on the part of the defendant designed to avoid detection."  *Martin*, 966 F.2d at 1093-94.  "[F]raud claims do not receive the benefit of ERISA's six-year statute of limitations simply because they are fraud claims." *Martin*, 966 F.2d at 1095; *Wolin*, 83 F.3d at 851 ("Fraudulent concealment … is distinct from a fraud that is concealed.").  "Otherwise the statute of limitations would not start to run … even if the defendant had made no effort to conceal it beyond what is implicit in committing fraud …."  *Wolin*, 83 F.3d at 851 (citation omitted). Instead, a plaintiff must allege *with particularity* facts demonstrating that the defendant did something more by engaging in "some misleading, deceptive, or otherwise contrived action or scheme" that either took place *during* an actionable fraud or that occurred subsequent to an ERISA violation that was "designed to mask the existence of a cause of action."  *Martin*, 966 F.2d at 1094 (citation omitted); *Wolin*, 83 F.3d at 851-52.  Pleading fraudulent concealment with particularity is a

demanding standard with at least three important elements, all of which are pertinent here.

First, there must be *an act*. "Concealment by mere silence is not enough." *Martin*, 966 F.2d at 1094 (quoting *Wood*, 101 U.S. (11 Otto) at 143). Thus, "a finding of concealment requires evidence that a defendant took *affirmative steps* to hide the violation itself." *Laskin*, 728 F.3d at 725 (emphasis added).

Second, the concealing act must have been committed by *that defendant*, not some other person or entity: "[p]laintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (citation omitted)); *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1552 (3d Cir. 1996) (requiring that "*the defendant itself has* taken steps to hide its breach of fiduciary duty" (emphasis added)); *see also, e.g.*, *Go Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (fraudulent concealment applies only when "*the party pleading the statute of limitations* fraudulently concealed facts which are the basis of a claim" (brackets and citation omitted) (emphasis added)).

Third, the defendant's act of concealment must have been *designed to avoid detection*—in other words, committed with a specific intent to conceal the alleged breach. *See Laskin*, 728 F.3d at 735 (requiring "evidence that the ERISA violation involved some 'trick or contrivance intended to exclude suspicion and prevent

[inquiry]'" (quoting *Martin*, 966 F.2d at 1095); *see also, e.g.*, *Harris v. Koenig*, 815 F. Supp. 2d 12, 20 (D.D.C. 2011) (explaining that, to benefit from tolling under § 1113, "a plaintiff must … show that the defendant engaged in the concealment intentionally and, of course, knowingly").

As explained below and the district court correctly held, these critical elements are missing here.

### B. The "fraud or concealment" exception does not apply with respect to the 2001 ESOP transaction.

According to Plaintiff, the SAC alleges that Appvion officers and directors engaged a supposedly conflicted third party (Houlihan) to provide a fairness opinion and, along with State Street, breached ERISA's fiduciary duties by misrepresenting Houlihan as independent, disclosing the conflicts of Appvion officers and directors but not Houlihan, disclosing the fee details of some third parties involved in the 2001 transaction but not Houlihan, and fraudulently describing the 2001 transaction as a good deal for the ESOP.  Opening Br. 58-60.  Plaintiff argues that these same acts and misrepresentations constitute fraudulent concealment that concealed the fiduciary breaches and prevented plan participants from discovering them.  *Id.* at 61.

The problem with this argument is the same problem identified by the district court in its first motion-to-dismiss order: the statements and actions Plaintiff points to pertain almost entirely to Houlihan and Appvion officers and directors.  A037-38; *see also* B038-39 (concluding that the SAC did not cure the defects previously

identified by the district court).   In Plaintiff's two-and-a-half-page list of bullet points, one can find allegations of the statements and actions of Appvion CEO Buth, Appvion General Counsel Karch, and Houlihan, with barely a mention of State Street, followed by the broad summary statement that these acts constitute "Defendants' breaches of fiduciary duty" and "acts of concealment by Buth, Karch, State Street, and Houlihan."   Opening Br. 58-61.[12]   This argument simply reverts back to the type of group pleading that was repeatedly rejected by the district court's first motion-to-dismiss order.   A024, A041.   Moreover, it is precisely the type of guilt-by-association strategy that is insufficient to establish fraudulent concealment *by State Street*.  *See Barker*, 64 F.3d at 1402; *Kurz*, 96 F.3d at 1552.   Indeed, a case upon which Lyon relies illustrates the point: in *Hensiek v. Board of Directors of Casino Queen Holding Co., Inc.*, the court held that allegations of "specific statements" made by one group of defendants were insufficient to establish

---

[12] This is not the only place where Plaintiff attempts to misleadingly paint all defendants with a broad brush.  For example, Plaintiff contends that "Defendants authored numerous communications to employees and SEC filings that represented that they were following a prudent process, selectively disclosed details about the valuations, and reaffirmed the stock price, while failing to disclose the actual valuations or the above-described defects."  Opening Br. 11 (citing B140-42, B144, B195-254, B386-93).  But even a cursory examination of the cited portions of the SAC demonstrate that none of the allegations pertain to any statements or publications by State Street.  *See, e.g.*, B140-42 (internal Appvion communication, corporate balance sheet); B144 (email from ESOP Committee member to participants); B195-254 (emails and communications from ESOP Committee members, Appvion's corporate SEC filings); B386-93 (communications from ESOP Committee members to plan participants).

fraudulent-concealment tolling for a different group of defendants.  2022 WL 263321, at *4 (S.D. Ill. Jan. 28, 2022).  The same is true here.

The only statement attributed to State Street in Plaintiff's bullet-point list is a statement allegedly made by a State Street employee at a meeting more than 20 years ago that the $810 million purchase price was "a very good price."  Opening Br. 60. This does not come remotely close to establishing fraudulent concealment—it is not even plausibly alleged to be objectively false, much less knowingly false, nor an "affirmative step[]" constituting a "trick or contrivance intended to exclude suspicion and prevent inquiry." *Martin*, 966 F.2d at 1094 (quotation marks omitted); *Laskin*, 728 F.3d at 735; *see also, e.g.*, *Harris*, 815 F. Supp. 2d at 20 (explaining that, to benefit from tolling under § 1113, "a plaintiff must … show that the defendant engaged in the concealment intentionally and, of course, knowingly").[13]

---

[13] In the district court, Plaintiff attempted to characterize alleged misrepresentations by Appvion management regarding Houlihan's fee arrangement as State Street's acts, contending that State Street's purported authority to "review and approve" a limited subset of documents (offering and disclosure documents and written presentation materials) authored by Appvion and Houlihan somehow rendered the content of those documents attributable to State Street in the first place. *See, e.g.*, ECF No. 247, at 13-14; *see also* SA36.  Plaintiff makes no such argument in his opening brief and has therefore forfeited it on appeal.  In any event, that argument would be meritless: Plaintiff's vague allegation of State Street's *authority* to review documents is unaccompanied by any of the particulars that would satisfy Rule 9(b)— *i.e.,* that State Street reviewed and approved certain statements with the intent to engage in and conceal fraud. *Supra* pp. 20-22.  It is also a thinly veiled effort to repackage the failure to prevent alleged misrepresentations by others as an affirmative act of concealment.  But "[c]oncealment by mere silence is not enough." *Martin*, 966 F.2d at 1094 (quotation marks omitted); *see* A037-38 (concluding that

**C.    The "fraud or concealment" exception does not apply with respect to stock valuations before November 26, 2012.**

The district court also correctly held that Plaintiff failed to plead with particularly any affirmative act of fraud or concealment related to the 2001-2012 stock valuations, which Plaintiff alleges were inaccurate and reached through an imprudent decision-making process.  The conduct Plaintiff relies on for fraudulent-concealment tolling related to the 2001-2012 biannual valuations consists entirely of (i) the simple publication or republication of the valuations themselves; and (ii) statements that were not made by State Street.  Neither can serve as the basis for fraudulent-concealment tolling.  Opening Br. 66-68.

*First*, most of the acts that Plaintiff points to of fraudulent concealment are simply the biannual releases of the Appvion stock price and republications of those stock prices in other documents, such as SEC and DOL filings.  But the publication of the stock price is the necessary and inherent outcome of the valuation process— precisely the opposite of a "trick or contrivance" affirmatively taken by fiduciaries

---

"[e]ven if the State Street Defendants knew of a purported conflict" involving Houlihan, Plaintiff's allegations regarding the prospectus failed to allege acts of concealment by State Street).  And even if Plaintiff had alleged with particularity State Street's *actual authorship* of offering and disclosure documents and State Street's *actual knowledge* of the specifics of Houlihan's retention agreement that made these documents inaccurate—neither of which Plaintiff did here—that still would not satisfy the requirement that Plaintiff plausibly allege that State Street engaged in "some trick or contrivance intended to exclude suspicion and prevent inquiry." *Martin*, 966 F.2d at 1095 (quotation marks omitted).

with the intent "to cover their tracks." *Martin*, 966 F.2d at 1095-96 (quotation marks omitted). If merely pointing to the last step of a fiduciary decision-making process— *e.g.*, publishing a stock valuation, providing notice of the removal of a fund from the plan line-up, or providing notice of a denial of benefits—were sufficient to establish fraudulent concealment, the fraud-or-concealment exception would altogether swallow the repose rule. There would be no need to plead a fraudulent intent by an ERISA fiduciary to cover its tracks. *See* B039 (noting that Plaintiff's argument "conflates the underlying breach with the requisite affirmative conduct to conceal").

Plaintiff did not plead any such trick or contrivance taken with fraudulent intent here. As an initial matter, even assuming *arguendo* that two different independent appraisers' valuation reports were inaccurate, Plaintiff failed to allege with particularity any facts establishing that State Street knew that they were inaccurate, much less that State Street communicated them with an intent to defraud participants. As the district court explained, "although the State Street Defendants collected fees for their services, receiving payment for services rendered does not establish intent or a motive to commit fraud." App. A038 (citing *Grove Holding Corp. v. First Wis. Nat'l Bank of Sheboygan*, 803 F. Supp. 1486, 1502 (E.D. Wis. 1992) ("Although [the defendant auditor] apparently received a fee for its services, this is not sufficient to support an inference of scienter.")); *see also Tricontintental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007)

(explaining that, at the pleading stage, "[t]ypically, an accountant's interest in fees, standing alone, will not suffice to establish fraudulent intent"). Particularly in the absence of any substantial motive for State Street to commit fraud, affixing a fraudulent-concealment label on the very stock-valuation allegations that Plaintiff elsewhere insists do not sound in fraud is not sufficient to plead an affirmative act of fraudulent concealment. Opening Br. 35 n.8 (arguing that the fiduciary-breach claims against State "do not depend on fraud" in an effort to obtain the benefit of a lower pleading standard).

*Second*, Plaintiff points to the release of Appvion 10-Ks, 10-Qs, and Form 5500s reporting the Appvion stock valuations, supposedly concealing that previous stock prices had been inflated, and failing to report any prohibited transactions or other violations. Opening Br. 66-67 (bullet points 2 and 4). But even putting aside the fact that the publication of stock valuations is not sufficient to establish fraudulent concealment, as discussed above, State Street was not responsible for submitting Appvion's corporate SEC filings or releasing them to the public—Appvion was, as the SAC makes clear. *See, e.g.*, B092 ¶20 ("Each 10-K was signed to by Appvion's CEO and CFO … and the members of Appvion's Board of Directors."); B190 ¶364 (similar, regarding 10-Qs). Nor did State Street submit the Plan's DOL filings—as the SAC expressly alleges, "Appvion, as the plan administrator, filed the … Form 5500s" under penalty of perjury. B193 ¶369.

Indeed, State Street is not alleged to have had any involvement with these documents.

Plaintiff also points to "communications," "email[s]," and a book purportedly containing misleading information. Opening Br. 66-68 (bullet points 3, 5, 6, 7). But conspicuously absent is any detail regarding these documents or any identification of who was responsible for them, let alone any allegation connecting any of these documents to State Street. That is no accident. Even a cursory examination of the cited paragraphs of the SAC demonstrate that none of them—with the sole exception of a 2003 newsletter—is attributed to State Street, and many simply refer to Appvion's corporate filings discussed above. *See* B178-82 (Appvion corporate filings and biannual releases of stock valuation by ESOP Committee); B195-97; B200, B202-06, B208-10, B215, B217, B219-21, B228-29 (emails, ownership updates, and biannual releases of stock valuation sent by ESOP Committee members); B232-32, B246 ("Richards Report" from ESOP Committee member); B226 (book published by Appvion). The 2003 newsletter that Plaintiff alleges was "[a]uthored" by State Street simply described State Street's relevant involvement and valuation processes. B205-06. As the district court concluded, "there is no indication that these statements were either false or made with an intent to deceive or to conceal any fraudulent behavior." A039.

**D.     The district court correctly applied Circuit precedent in holding Plaintiff to his burden of pleading the elements of fraudulent concealment with particularity.**

Rather than point to any affirmative acts of concealment by State Street, Plaintiff argues that the district court defied circuit precedent because it rejected "self-concealing acts" as a valid basis for fraud-or-concealment tolling. Opening Br. 54-57. Not so. To the contrary, when ruling on the first round of motions to dismiss, the district court expressly recognized "underlying ERISA violations that are self-concealing" as a viable form of fraud or concealment where they include "some act on the part of the defendant designed to avoid detection," and it discussed and applied the very authorities Plaintiff points to in his opening brief. A020; A022 (quoting *Martin*, 966 F.2d at 1078, and *Laskin*, 728 F.3d at 735). It concluded (correctly) that Plaintiff did not plead with particularity "the kinds of 'affirmative acts' of fraud or concealment that trigger the exception." A022 (addressing claims against Appvion directors and officers); *accord* A037 ("The FAC does not allege facts that support Lyon's contention that the State Street Defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing or prevent Lyon from discovering the facts relevant to his claims.").

Magistrate Judge Dries's subsequent R&R (adopted by the district court) neither broke new ground nor departed from the district court's prior interpretation. To the contrary, it cited the very same authorities (*Martin*, *Laskin*, and *Wolin*) that the district court had previously cited, all of which describe active concealment and

self-concealing acts as bases for fraud-or-inducement tolling.  B012-13, B024-25, B038-39.  The R&R simply concluded that Plaintiff failed to "cure" the fatal pleading flaw that the district court had earlier identified—the "failure to allege with particularity that State Street engaged in a course of conduct designed to conceal evidence of its alleged wrongdoing."  B038 (brackets and quotation marks omitted).  Instead, the SAC continued to point to acts of alleged concealment by other defendants, or simply added a fraud label onto the underlying alleged valuation errors that Plaintiff alleged constituted a fiduciary breach.  B039-49.  The court held that neither was sufficient to plead fraud or concealment with particularity.  *Id.*  Nothing about this analysis "misinterpreted the fraud or concealment exception."  Opening Br. 53.  In short, the district court did not defy circuit precedent—Plaintiff simply did not satisfy circuit precedent.  The SAC did not satisfy Rule 9(b) by establishing with particularity a "trick or contrivance" committed by State Street that was intended to conceal a breach.

The two district court decisions cited by Plaintiff (at 56-57, 61) do not support his argument that the SAC pleads a self-concealing act by State Street sufficient to toll the statute of repose.  Both relied on a theory of "active concealment" rather than self-concealing acts, and in both cases the complaint alleged that, beyond the underlying fraud, *the defendants at issue* (and not a third party) made affirmative misrepresentations with the intent to conceal that fraud.  *See Hensiek*, 2022 WL

263321, at *2, *4; *Enneking v. Schmidt Builders Supply Inc.*, 917 F. Supp. 2d 1200, 1208 (D. Kan. 2013) (inferring that defendants' alleged misrepresentations "were made with the intent to divert further investigation").  As the district court correctly concluded, this case is different because Plaintiff failed to plead any acts of concealment by State Street related to the 2001 transaction here.

*     *     *

In short, Plaintiff does not even *try* to offer fraudulent-concealment arguments specific to State Street.  His opening brief simply makes blanket assertions about purported acts of concealment by defendants generally.  And on closer examination, it is clear that the acts Plaintiff points to were either (i) omissions rather than acts, (ii) acts not taken by State Street, or (iii) conduct that was neither plausibly nor particularly alleged to be tricks or contrivances taken with the intent to conceal an underlying breach or fraud.  None of this salvages Plaintiff's time-barred claims.  Simply attaching a fraud label to an alleged breach does not make the alleged breach an act of fraudulent concealment.  The district court correctly held that Plaintiff's claims are time-barred with respect to the 2001 ESOP transaction and valuations that occurred before November 26, 2012.

### E.    Plaintiff's claims against State Street related to the July 16, 2012 stock valuation are time-barred.

Plaintiff also argues that his claims are timely under 29 U.S.C. § 1113(1)(A)-(B) to the extent they are based on the July 26, 2012 stock valuation and criticizes

31

the district court for rejecting his arguments "with no explanation."  Opening Br. 41.

But the entirety of Plaintiff's argument in opposition to State Street's motion to

dismiss was a single sentence parroting the statute of repose's text unaccompanied

by explanation or authority: "The 'last action' constituting a breach of State Street's

duty of prudence in connection with that valuation occurred with that purchase, and

it was the latest date State Street could have cured the breach or violation."  ECF

No. 210, at 29-30.  This unreasoned assertion does not preserve the argument for

appeal.[14]  And one can hardly fault the district court for dismissing this undeveloped

argument summarily in a footnote.  B040 n.13.  In any event, the district court was

right to reject these arguments.

1.     Under § 1113(1)(A), an ERISA claim accrues on the "date of the last

action which constituted part of the breach or violation."  Plaintiff argues that this

provision applies with respect to the July 2012 stock valuation because the last action

that constituted part of State Street's alleged fiduciary breach was the purchase of

Appvion stock in December 2012 based on the value of Appvion stock determined

in July 2012.[15]  That is incorrect for at least two reasons.

---

[14] *Irish v. BNSF Ry. Co.*, 674 F.3d 710, 715 (7th Cir. 2012) (a "two-sentence aside, made without citation to any authority" was "insufficient to preserve the argument" for appeal); *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509 (7th Cir. 2013) ("When a party fails to develop an argument in the district court, the argument is waived and we cannot consider it on appeal").

[15] According to the SAC, stock purchases in December 2012 would not have been based on the December 2012 stock valuation because "the Plan requires purchases

First, the district court squarely held that State Street's stock purchases based on previously reached stock valuations were not fiduciary acts by State Street. B041-44. As the trust agreement made clear, State Street was required to make stock purchases upon direction from the ESOP Committee, and those purchases were required to be made based on the Independent Appraiser's determination of fair market value. SA20; B043-44. Plaintiff does not challenge that holding on appeal—indeed, he abandons his prohibited-transaction claims against State Street altogether. *See supra* note 9.

Second, Plaintiff's prohibited-transaction claims (Counts XXI and XXII) were the only claims against State Street premised on stock-purchase transactions, SA6-12 ¶¶1072-1109, and Plaintiff has not appealed the district court's dismissal of those claims. Plaintiff's fiduciary-breach claim (Count III) decidedly was not—that claim challenged only the prudence of State Street's process for reaching stock-valuation decisions based on the semi-annual appraisal reports it received from Willamette and Stout. B272-81 ¶¶647-69. Thus, § 1113(1)(A) does not salvage Plaintiff's untimely claims against State Street based on a valuation that was finalized more than six years before Plaintiff's lawsuit.

---

to be made at the lower of the" most recent two reported stock prices, and the stock price was higher in December 2012 than in July 2012. B174 ¶322; SA4-5 ¶191.

2.     Under § 1113(1)(B), an ERISA claim that is premised on "an omission" accrues as of "the latest date on which the fiduciary could have cured the breach or violation."  Plaintiff argues that § 1113(1)(B) applies with respect to the July 2012 stock valuation because State Street could have cured its omissions in December 2012 by refusing to use the July 2012 valuation to purchase stock on behalf of the Plan.  Even putting to the side whether Plaintiff's argument could even theoretically hold water given the district court's unchallenged holding that State Street lacked discretion when making stock purchases, *see supra* p. 11, this theory does not appear in the SAC at all and therefore is forfeited on appeal.  *See* B281 ¶671 (tracking the language of § 1113(A) by alleging only that Plaintiff's prudence claim related to the July 2012 valuation was timely because "the last actions which constituted a breach … in connection with that valuation" occurred in December 2012).

In any event, the SAC did not plead an omission-based theory of breach as to State Street's conduct relating to the valuations.  Instead, it challenged State Street's *actions* in reviewing Willamette's and Stout's appraisal reports and in reaching fair-market-value determinations.  B272-81 ¶¶647-69.  The supposed breaches "by omission" that Plaintiff points to (at 41-42) are not omissions at all.  They are simply aspects of the essential conduct that Plaintiff claims to be a breach of fiduciary duty by State Street:  reliance on Willamette and Stout in valuing the stock.  Indeed, the same list of "instances" of purported omissions that Plaintiff cites from the SAC, *id.*,

appears in the SAC characterized as actions rather than omissions.  That list begins with the master paragraph alleging that "State Street breached its duty of prudence, loyalty and disclosure *in relying* on Willamette and Stout's valuations....  State Street breached its fiduciary duties *by relying* on the valuations in at least the following ways ...."  App. B273 ¶653 (emphases added).  What follows is the list of conduct that Plaintiff now characterizes as omissions even though the SAC clearly describes this conduct as action ("relying on" Willamette and Stout).  Plaintiff's omission-based argument is simply a naked attempt to recharacterize his claims to evade ERISA's statute of repose.

But as courts have repeatedly recognized, "many plaintiffs attempt to strategically recharacterize their claim from one of affirmative act to one of omission.  The courts generally resist such efforts."  *Ellis*, 484 F. Supp. 2d at 714; *accord Serafin v. William C. Earhart Co., Inc*., 2020 WL 437542, at *5 (D. Or. Jan. 28, 2020), *aff'd,* 2022 WL 2828223 (9th Cir. July 20, 2022); *see, e.g.*, *Bergmann v. BMC Indus., Inc.*, 2006 WL 487864, at *4 (D. Minn. Jan. 20, 2006) (rejecting effort to reframe alleged misconduct as an omission to obtain open-ended SOL).  Consequently, for purposes of § 1113(1)(B), courts typically limit breaches by omission to claims based on a plan fiduciary's failure to comply with specific statutory requirements that participants be apprised of modifications to the plan requiring participants to take action or that plan fiduciaries provide documents that

enable participants to take action. *See, e.g.*, *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 288-89 (6th Cir. 2008) (claim based on failure to provide plaintiff with plan documents informing her of plan vesting requirements); *Hartquist v. Emerson Elec. Co.*, 2016 WL 1312028, at *9 (M.D.N.C. Mar. 31, 2016) (claim based on failure to provide participant with information necessary to apply for benefits). Otherwise, any fiduciary deficiency could easily be categorized as an "omission" rather than an action, creating an interminable statute of repose. Plaintiff's claims in connection with the July 2012 valuation are therefore time-barred.

## II. The district court correctly held that Plaintiff failed to plausibly allege that State Street breached ERISA's duty of prudence.

As to the one valuation that is not time-barred—the December 2012 valuation—the district court correctly concluded that Plaintiff failed to plead a plausible claim for breach of the duty of prudence.[16] The court recognized the implausibility of Plaintiff's outlandish claims—claims that relied on the inference that over a 17-year period, three different independent trustees and two different independent appraisers colluded with Appvion's corporate officers, board members,

---

[16] Plaintiff's valuation-based prudence claims all have essentially the same factual premise—purported inaccuracies in the fair-market-value stock prices reached by the independent appraiser. Consequently, should this Court determine that Plaintiff's fiduciary-breach claim is not time-barred with respect to any valuations preceding the December 2012 valuation, the district court's conclusion regarding the December 2012 valuation provides an alternative ground to affirm dismissal of the valuation-based claim in its entirety. *Albert*, 47 F.4th at 577 (Court may "affirm on any ground supported by the record").

and financial advisor to defraud Plan participants by inflating Appvion's stock price, and they did so in order to line the pockets of Appvion management.

Whether understood as a claim sounding in fraud or not,[17] an inference of fiduciary malfeasance is simply nonsensical (and certainly not plausible) as to State Street—one of the nation's preeminent trust companies with its professional reputation on the line and nothing to gain. The SAC did not allege, for example, that State Street received kickbacks, contingency fees, or had any other pecuniary incentive to help Appvion management profit at the expense of the participants on whose behalf State Street was hired to act. Indeed, as the district court recognized, there is no apparent motive whatsoever that would provide a logical explanation for Plaintiff's claims against State Street, aside from the anodyne receipt of fixed administrative fees from its customers. A042; *see also* A038 ("receiving payment for services does not establish intent or a motive to commit fraud"); *Tricontintental*,

---

[17] Plaintiff hedgingly suggests that the magistrate judge might have applied a heightened pleading standard to his prudence claim, which he says does not depend on fraud and therefore should be evaluated only under Rule 8(a). Opening Br. 35 n.8. The district court in fact plainly applied Rule 8(a), B040 n.14, though it was not wrong to recognize elsewhere that the allegations against State Street "are inextricably intertwined with fraud allegations." B056. Plaintiff's entire theory of breach is that State Street knowingly permitted inaccurate information to be included in a stock-price valuation and knowingly relied on inflated projections. Opening Br. 37-39, 64-65. Indeed, Plaintiff's fraudulent-concealment argument is that the same acts that constitute breach also constitute fraudulent concealment. Opening Br. 66-69. Thus, whether interpreted as a fraud-based claim or not, Plaintiff's claim for breach of the duty of prudence relies on an unsupported, implausible inference that State Street knowingly reached and released inaccurate stock-price valuations.

475 F.3d at 841 ("[t]ypically, an accountant's interest in fees, standing alone, will not suffice to establish fraudulent intent").

With this context in mind, the district court committed no error in concluding that Plaintiff failed to plausibly allege a fiduciary breach by State Street.  A041-42; B040-41; *see Albert*, 47 F.4th at 577 (courts must "apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats'" (quoting *Dudenhoeffer*, 573 U.S. at 425)).  Plaintiff failed to plausibly allege any fiduciary malfeasance by State Street in reviewing valuation reports provided by the independent appraisal experts for the Plan.  Indeed, as explained below, the SAC's allegations themselves contradict such a claim—describing a regular and "detailed" review of the independent appraiser's valuations.

### A.    The district court correctly concluded that Plaintiff's circumstantial allegations did not permit a plausible inference that State Street acted imprudently.

As noted above, ERISA's duty of prudence focuses on the *process* by which fiduciaries make their decisions, not on the outcome or results of that process.  *See PBGC*, 712 F.3d at 716 (ERISA's prudence standard "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results" (brackets and quotation marks omitted)); *accord Unisys Sav. Plan Litig.*, 74 F.3d at 434.  The SAC, however, pled no deficiencies in State Street's process for reviewing appraisal reports and reaching valuation decisions.  *See* B040-41; A041.

The lack of process-based allegations in the SAC is particularly notable because Plaintiff here was not in the position of most ERISA plaintiffs—plan participants with little to no knowledge of or ability to investigate the fiduciary decision-making process.  Plaintiff was a plan trustee with ample access to plan documents, meeting minutes, and so forth.  A016.  Yet the SAC does not allege *any* deficiencies in State Street's process, such as allegations that State Street reached valuation decisions in a time crunch without adequate time to review and evaluate appraisal reports; rubber-stamped appraisal reports without review, analysis, or revisions; or was pressured by Appvion management to make unsupported changes to stock valuations.  Nor does the SAC allege circumstances plausibly suggesting that State Street could not have prudently reviewed valuation reports under the circumstances.  *Compare, e.g.*, *Howard v. Shay*, 100 F.3d 1484, 1486 (9th Cir. 1996) (transaction completed one day after valuation without any opportunity for meaningful review or discussion); *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 673, 678 (7th Cir. 2016) (stock began a steep downfall within weeks of ESOP transaction and decreased more than 50% in less than a year, and complaint alleged that trustee conducted no inquiry whatsoever into the company's revenues and that ESOP had to take a loan with an "uncommonly high" interest rate); *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 613, 621, 631 (E.D. Va. 2017) (decisions by trustees made in rushed manner without sufficient

time to review appraisal reports, ESOP was terminated seven months after its creation, and plan fiduciaries were under DOL investigation), *aff'd*, 919 F.3d 763 (4th Cir. 2019).

Indeed, if anything the SAC acknowledges an extensive and collaborative process among the independent appraiser, State Street, and the Plan's fiduciary committee, as well as the Appvion board of directors (who had a duty to monitor the Plan's fiduciary committee). *See, e.g.*, B131 ¶175, B132 ¶¶177-78, B145 ¶228; B205-06 ¶403 (describing regular and "detailed" valuation reviews involving these entities). The SAC also expressly recognized that State Street retained an independent appraiser—something that was required by the trust agreement and that this Court has referred to as "highly relevant," even if not "a complete defense." *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 680 (7th Cir. 2014) (citation omitted); B040. And while Plaintiff argues (at 36) that the district court made a "factual finding" that the use of an independent appraiser categorically renders a trustee's conduct prudent, even a light skim of the district court's decision demonstrates that this argument is disingenuous. Indeed, the district court said exactly the opposite— that the use of an independent expert does not "mandate[] a finding that State Street was prudent," but rather simply "makes it less plausible that [State Street] acted imprudently." B040. This is precisely the type of "context-sensitive scrutiny" and

common-sense evaluation of plausibility that *Albert*, *Dudenhoeffer*, *Twombly*, and *Iqbal* require.

Plaintiff similarly criticizes the district court for taking into account that State Street's retention of and reliance on an independent appraiser complied with the plan documents, contending that this "is irrelevant" to the plausibility analysis. Opening Br. 40; *see* B040. But the Supreme Court in *Dudenhoeffer* said exactly the opposite. It acknowledged that ESOP fiduciaries can find themselves between a rock and a hard place:  if they take an action that complies with the plan document but is later alleged to have resulted in losses to the plan (here, by relying on the valuation of an independent appraiser), they "may be sued for acting imprudently in violation of § 1104(a)(1)(B)," but if they make a decision that they believe may ultimately turn out to be more profitable for participants but is inconsistent with the plan document and that decision ultimately results in losses, they "may be sued for disobeying the plan documents in violation of § 1104(a)(1)(D)." 573 U.S. at 424.  The rock-and-a-hard-place nature of a fiduciary's job is precisely why the Supreme Court has instructed lower courts to carefully scrutinize an ERISA complaint's allegations *in context*, *id.*, and that when doing so, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742.  State Street's compliance with the Plan document and "highly relevant" use of an independent appraiser is plainly part of the context that

was appropriate for the district court to consider when evaluating the plausibility of Plaintiff's prudence claim.

**B.    Plaintiff failed to plead any red flags that should have alerted State Street that it could not reasonably rely on the independent appraisers' valuations.**

Plaintiff contends that even though State Street followed the Plan document by retaining and relying on an independent appraiser to make stock-valuation decisions, trustees are not permitted to rely on the opinions of independent experts where red flags indicate that doing so would be unreasonable.  Opening Br. 39-41. But the SAC pled no such red flags here.  To the contrary, as other Defendants explain in their briefs,[18] contemporaneous offers from third-party companies validated the viability of the fair-market valuations reached by the independent appraiser retained by State Street.  *See Est. of Godley v. Comm'r*, 286 F.3d 210, 214 (4th Cir. 2002) ("fair market value is the price at which [an asset] would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts" (citation omitted)).  The three valuations reached by State Street's successor (Reliance, another independent trustee) immediately following State Street's departure were also entirely consistent with the valuations finalized by State Street

---

[18] State Street adopts by reference the arguments in Stout's brief, as well as in the briefs of other Defendants-Appellees, as relevant to the claims against State Street. *See* Fed. R. App. P. 28(i).

at the end of its tenure—and the June 2013 valuation was in fact *higher* than the last valuation that State Street finalized in December 2012.  SA4-5 ¶191.

Indeed, in contrast to cases cited by Plaintiff involving steep stock-price declines immediately after the formation of an ESOP,[19] Appvion continued to operate for *17 years* after the ESOP was formed, its stock value increased up until the Great Recession, and its stock value was reduced in response to outside factors during State Street's tenure. SA4-5 ¶19; B234-35 ¶496.  And while Appvion ultimately filed for bankruptcy in 2017, that occurred only after Appvion decided to sell its most profitable operating division, Encapsys—an operating division that the SAC affirmatively alleges was a "driving factor" in the valuations of the company during State Street's tenure.  B176 ¶329.  That sale—according to Plaintiff's own allegations—"materially lowered the overall value of the company," and impaired Appvion's … ability to function."  B160-61 ¶274, B177 ¶334.  Indeed, within about two years of the sale, Appvion filed for bankruptcy.  B003, B054.  In short, Plaintiff's conclusory assertion that PDC stock had "no value" from the beginning and that State Street was either engaging in fraud or asleep at the wheel simply cannot be squared with this reality.  B167 ¶289.

With all of this context as background, all Plaintiff offers are *ex post* disagreements with isolated judgment calls made by the independent appraiser.

---

[19] *See supra* p. 39 (citing *Allen*, 835 F.3d at 673; *Brundle*, 241 F. Supp. 3d at 613).

Opening Br. 37-39.  But as courts have repeatedly acknowledged, "[a]ppraisal of closely-held stock is a very inexact science" that includes a "level of uncertainty inherent in the process." *Cunningham*, 716 F.2d at 1473; *accord Okerlund v. United States*, 365 F.3d 1044, 1052 (Fed. Cir. 2004) (noting that "the valuation of a closely held company is an inexact science (some might say an art)"); *Walsh v. Vinoskey*, 19 F.4th 672, 679 (4th Cir. 2021) ("it is apparent that evaluating a non-public company's worth is an intrinsically complex matter, and even experts disagree on fundamental methodologies").

Accordingly, using the benefit of hindsight to identify valuation factors that Plaintiff would have treated differently and labeling those differences "errors" (or knowing errors) does not plausibly establish that the appraisal reports were inaccurate—and it certainly does not permit a plausible inference that State Street lacked a prudent process for reviewing and evaluating those appraisal reports, much less that State Street engaged in a fraudulent scheme to inflate Appvion's stock price. *See PBGC*, 712 F.3d at 721-22 (rejecting hindsight-based allegations and purported red flags that did not "give rise to a plausible inference" that the defendant's "decisions were imprudent" at the time they were made).

Take, for example, Plaintiff's conclusory assertion that State Street permitted appraisers to disregard Appvion's pension obligations despite knowing from pension deductions pertaining to BemroseBooth that unfunded pension liabilities must be

deducted dollar-for-dollar from Appvion's total value.  Opening Br. 37-38; *see, e.g.*, B139-40 ¶¶211-13, B231 ¶482.  A closer examination of Plaintiff's allegations demonstrates that these conclusory assertions do not withstand scrutiny—Plaintiff is comparing apples to oranges.  The SAC makes clear that the BemroseBooth dollar-for-dollar deductions pertained not to pension liabilities generally, but rather to specific "payments" that BemroseBooth was required to make "over the next five years" following pension-related negotiations with the BemroseBooth "pension fund's trustee."  B138 ¶210.  The SAC does not allege *any* near-term pension payments that Appvion was expected to make.  Instead, it points only to Appvion's long-term pension liabilities generally.  *E.g.*, B141 ¶216.  The SAC conspicuously does not allege that Appvion's pension obligations were entirely ignored by Willamette's or Stout's appraisal reports.  Nor could it, as the very valuation reports that Plaintiff filed in the district court demonstrate that pension obligations *are* discussed in the valuations and addressed in various calculations.  *See, e.g.*, SA45; SA48; SA40.  Plaintiff's apples-to-oranges comparison does not permit a plausible inference of imprudence.  *Cf. Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (rejecting apples-to-oranges comparison as plausible basis for inferring imprudence).

     As another example, the SAC sought an inference of imprudence from the fact that State Street permitted appraisers to apply a "control premium."  B277 ¶660.  But

the use of control premiums is notoriously a matter of judgment—and generally within a range depending on the facts, rather than as an on-and-off switch as Plaintiff suggests. *See, e.g.*, B125 ¶146 (15% control premium applied in 2001), B135 ¶250 (10% control premium applied beginning in June 2012); *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1228 (10th Cir. 2003) (application of 35% control premium). The SAC notably does not allege that the appraiser failed to explain the use of a control premium. To the contrary, the SAC expressly acknowledges that Stout's valuation reports *did* explain the use of a control premium. *See, e.g.*, B155 ¶255; SA41-42 (providing two single-spaced pages of analysis supporting the use of a control premium). *Contra Brundle*, 241 F. Supp. 3d at 613 (appraisers' discussion of the use of a control premium "was generic," devoting "just one sentence to articulating its decision to apply" a control premium). Plaintiff's *ex post* disagreement with that judgment call—based merely on his own subjective view of the precise level of control the ESOP had, Opening Br. 38 & n.9—does not plausibly make the use of a control premium by an independent appraiser or independent trustee "fraudulent," no matter how many times Plaintiff labels it that way in the SAC. *E.g.*, B090 ¶16, B126 ¶148, B152, B165 ¶288. And it certainly does not plausibly plead the further leap that State Street's process for reviewing appraisal reports was imprudent.

Plaintiff's effort to seek an inference of imprudence from inaccurate projections is even more tenuous. As this Court has held repeatedly, "[P]redictions of future performance are inevitably inaccurate because things almost never go exactly as planned." *Arazie v. Mullane,* 2 F.3d 1456, 1468 (7th Cir. 1993). That is why "[p]rojections which turn out to be inaccurate are not fraudulent simply because subsequent events reveal that a different projection would have been more reasonable." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). Consequently, simply pointing to projections that ultimately were not achieved does not even plausibly establish that the projections were inaccurate when made, much less that there were red flags that should have alerted State Street that the appraisers' valuation reports were unreliable.

ESOP trustees "cannot possibly be required to be experts on all of the various valuation methods available to appraise plan assets." *Gelles v. Skrotsky*, 983 F. Supp. 1398, 1404-05 (M.D. Fla. 1997) (dismissing fiduciary-breach claims), *aff'd,* 189 F.3d 484 (11th Cir. 1999). That is why they retain appraisers who *are* experts on the myriad complicated factors that go into a stock valuation. When viewed in context as required, Plaintiff's *ex post* criticisms of those valuation reports—representing his view that different judgment calls might or should have been made—does not plausibly establish that State Street lacked a prudent process for reviewing appraisals and reaching valuation determinations.

**III.    The district court correctly held that Plaintiff failed to plead a plausible claim for co-fiduciary liability against State Street.**

Plaintiff devotes one paragraph to arguing that the district court erred in dismissing his claims for co-fiduciary liability against State Street and Reliance, again addressed collectively.    Opening Br. 51.    Plaintiff's argument simply regurgitates the allegations that he elsewhere argues constitute a fiduciary breach by State Street, this time using the label of co-fiduciary liability, and is unaccompanied by any supporting authority.  *Id.* (arguing that State Street "knew the valuations should be subtracting Appvion's pension liability" and "knew that the projections" for profit were inflated).  Even if this argument were not so underdeveloped as to be forfeited, Plaintiff does not establish any error by the district court, for at least three reasons.

First, Plaintiff's claim is derivative of his claims against the ESOP Committee, which were correctly dismissed for the reasons discussed in the officers' and directors' brief, which State Street adopts by reference.  *See also* B044-45.

Second, with respect to co-fiduciary liability under § 1105(a)(2), Plaintiff's sole argument is that he adequately pled a fiduciary breach by State Street.  Opening Br. 51.  That fails for the reasons described above.  But even if that were not the case, § 1105(a)(2) *also* requires an ERISA plaintiff to plausibly allege some breach by State Street that "enabled" a breach by the ESOP Committee.  Plaintiff offers no argument that this enablement element was plausibly established—he notably

appears to have abandoned his argument in the district court that State Street's allegedly erroneous valuations somehow enabled ESOP Committee members to provide inflated projections—a theory that cannot withstand scrutiny given that State Street's valuations came *after* the ESOP Committee provided projections to the independent appraiser. ECF No. 210, at 27.

Third, with respect to co-fiduciary liability under § 1105(a)(1) or § 1105(a)(3), both of which require State Street's "actual knowledge" of fiduciary breaches by others, *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011), the district court correctly held that Plaintiff failed to satisfy this pleading requirement. The "actual knowledge" Plaintiff offered were simply "repetition[s]" of Plaintiff's allegations of breach by State Street—and Plaintiff still does not offer any additional rationale or point to any allegation in the SAC that rebuts this sound holding. B045.

# <u>CONCLUSION</u>

For the foregoing reasons, the district court's dismissal of the claims against

State Street should be affirmed.


Dated: August 4, 2023                    Respectfully submitted,

                                         <u>*s/ Jaime A. Santos*</u>

                                         Jaime A. Santos
                                         Matthew L. Riffee
                                         GOODWIN PROCTER LLP
                                         1900 N Street, NW
                                         Washington, DC 20036
                                         (202) 346-4000

                                         James O. Fleckner
                                         Jesse Lempel
                                         GOODWIN PROCTER LLP
                                         100 Northern Avenue
                                         Boston, MA 02210

                                         *Counsel for Defendant-Appellee State
                                         Street Bank and Trust Company*

# RULE 32(a) CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 11,902 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it appears in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  August 4, 2023                    *s/ Jaime A. Santos*

Jaime A. Santos
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

*Counsel for Defendant-Appellee State Street Bank and Trust Company*

## CERTIFICATE OF SERVICE

I, Jaime Santos, hereby certify that on August 4, 2023, I caused the foregoing **Brief of Appellee State Street Bank and Trust Company** and **Supplemental Appendix** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF Procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the **Brief of Appellee State Street Bank and Trust Company** and 10 copies of the **Supplemental Appendix** to be transmitted to the Court via hand delivery within 7 days of that notice date.

Dated:  August 4, 2023          *s/ Jaime A. Santos*

Jaime A. Santos
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

*Counsel for Defendant-Appellee State Street Bank and Trust Company*