**No. 23-1073**

---

### IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, by and through Grant Lyon in his capacity as the ESOP Administrative Committee of Appvion, Inc., | ) ) ) ) ) | Appeal from the United States District Court for the Eastern District of Wisconsin, Green Bay Division |
| *Plaintiff-Appellant*, | ) ) ) | District Court No. 1:18-cv-01861-WCG |
| v. | ) ) | District Judge William C. Griesbach |
| Douglas P. Buth, et al., | ) ) | |
| *Defendants-Appellees*. | ) ) | |

**BRIEF OF APPELLEES DOUGLAS BUTH, PAUL KARCH, MARK RICHARDS, TOM FERREE, RICK FANTINI, DALE PARKER, ANGELA TYCZKOWSKI, KERRY ARENT, KENT WILLETTS, SUSAN SCHERBEL, RONALD PACE, STEPHEN CARTER, KATHI SEIFERT, ANDREW REARDON, TERRY MURPHY, MARK SUWYN, AND KEVIN GILLIGAN**

Craig C. Martin
*Counsel of Record*
Amanda S. Amert
Michael T. Graham
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654-3456
Telephone: (312) 728-9000
Facsimile: (312) 728-9199

*Counsel for Former Appvion, Inc. Director and Officer Defendants-Appellees*

Dated: August 4, 2023

**ORAL ARGUMENT REQUESTED**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan v. Douglas Buth, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Appellees Douglas P. Buth, Paul J. Karch, Mark Richards, Tom Ferree, Rick Fantini, Dale E. Parker, Angela Tyczkowski, Kerry Arent,

Kent Willetts, Kevin Gilligan, Susan Scherbel, Ronald Pace, Stephen Carter, Kathi Seifert, Andrew Reardon, Terry Murphy, and Mark Suwyn

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Willkie Farr & Gallagher LLP, Jenner & Block LLP, Steinhilber Swanson LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and
N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
N/A

(4)    Provide information required by FRAP 26.1(b)    Organizational Victims in Criminal Cases:
N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s Craig C. Martin    Date: January 17, 2023

Attorney's Printed Name: Craig C. Martin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: Willkie Farr & Gallagher LLP, 300 North LaSalle Dr., Chicago, IL 60654

Phone Number: 312-728-9050    Fax Number: 312-728-9199

E-Mail Address: cmartin@willkie.com

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan v. Douglas Buth, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Appellees Douglas P. Buth, Paul J. Karch, Mark Richards, Tom Ferree, Rick Fantini, Dale E. Parker, Angela Tyczkowski, Kerry Arent,

Kent Willetts, Kevin Gilligan, Susan Scherbel, Ronald Pace, Stephen Carter, Kathi Seifert, Andrew Reardon, Terry Murphy, and Mark Suwyn

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Willkie Farr & Gallagher LLP, Jenner & Block LLP, Steinhilber Swanson LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s Amanda S. Amert    Date: January 17, 2023

Attorney's Printed Name: Amanda S. Amert

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Willkie Farr & Gallagher LLP, 300 North LaSalle Dr., Chicago, IL 60654

Phone Number: 312-728-9010    Fax Number: 312-728-9199

E-Mail Address: aamert@willkie.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan v. Douglas Buth, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Appellees Douglas P. Buth, Paul J. Karch, Mark Richards, Tom Ferree, Rick Fantini, Dale E. Parker, Angela Tyczkowski, Kerry Arent,

Kent Willetts, Kevin Gilligan, Susan Scherbel, Ronald Pace, Stephen Carter, Kathi Seifert, Andrew Reardon, Terry Murphy, and Mark Suwyn

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Willkie Farr & Gallagher LLP, Jenner & Block LLP, Steinhilber Swanson LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s Michael T. Graham    Date: January 17, 2023

Attorney's Printed Name: Michael T. Graham

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: Willkie Farr & Gallagher LLP, 300 North LaSalle Dr., Chicago, IL 60654

Phone Number: 312-728-9015    Fax Number: 312-728-9199

E-Mail Address: mgraham@willkie.com

rev. 12/19 AK

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT CONCERNING ORAL ARGUMENT ............................................. 1

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 1

STATEMENT OF THE CASE............................................................................ 3

    A.     Facts ...................................................................................... 5

    B.     Procedural History ............................................................... 8

SUMMARY OF ARGUMENT .......................................................................... 12

ARGUMENT .................................................................................................... 13

    I.     THE DISTRICT COURT PROPERLY DISMISSED ALL ERISA
          CLAIMS AGAINST THE Ds&Os. ............................................ 14

         A.     The District Court Correctly Held That Claims Based on Alleged
             ERISA Violations Prior to November 26, 2012 Are Time-Barred......... 15

         B.     The District Court Correctly Held That Lyon Failed to State Any
             ERISA Claim Because He Failed to Plead His Claims, Which
             Sound in Fraud, with Particularity. ......................................... 21

             1.     Rule 9(b) Applies to Lyon's Breach of Fiduciary Duty
                  and Prohibited Transaction Claims. ............................ 22

             2.     Rule 9(b) Dooms Lyon's Breach of Fiduciary Duty and
                  Prohibited Transaction Claims.................................... 25

         C.     The District Court Correctly Held That Lyon Failed to Plead His
             Claims for Co-Fiduciary Liability. ........................................ 29

         D.     Dismissal of the ERISA Claims Was Proper Because the Ds&Os
             Were Not Acting As Fiduciaries for the Alleged Acts. ........................ 30

    II.     THE DISTRICT COURT PROPERLY DISMISSED ALL FEDERAL
          SECURITIES FRAUD CLAIMS AGAINST THE Ds&Os. .............................. 33

         A.     The District Court Correctly Held That Lyon Failed to State a
             Claim for Securities Fraud Under Federal Law..................................... 33

i

1.      Lyon Fails to Plead Scienter. ........................................... 34

2.      Lyon Fails to Plead Other Requisite Elements of His
        Federal Securities Fraud Claims. .................................. 37

B.      ERISA's Exclusive Remedy Provision Precludes Lyon's Federal
        Securities Fraud Claims Against the Ds&Os. ......................... 38

III.    THE DISTRICT COURT PROPERLY DISMISSED THE STATE LAW
        CLAIMS AGAINST THE Ds&Os BECAUSE ERISA PREEMPTS
        THEM. ...................................................................... 39

IV.     THE SECOND AMENDED COMPLAINT IS SUBJECT TO
        DISMISSAL AS AN IMPERMISSIBLE SHOTGUN PLEADING. ................ 43

V.      THE DISTRICT COURT PROPERLY DISMISSED THE SECOND
        AMENDED COMPLAINT WITH PREJUDICE. ................................ 44

CONCLUSION ................................................................... 45

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7) ............... 46

CERTIFICATE OF SERVICE ..................................................... 47

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) .................................................................................... 35

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ................................................................................................ 40

*Allen v. GreatBanc Tr. Co.*,
    835 F.3d 670 (7th Cir. 2016) ............................................................................ 24, 25

*Ambrosia Land Invs., LLC v. Peabody Coal Co.*,
    521 F.3d 778 (7th Cir. 2008) ................................................................................... 15

*Appvion Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth et al.*,
    Case No. 18-cv-1861 (E.D. Wis.) .................................................................. *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................................ 37

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 14

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502 (7th Cir. 2007) ............................................................................ 21, 24

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ................................................................................... 33

*CustomGuide v. CareerBuilder*,
    LLC, 813 F. Supp. 2d 990 (N.D. Ill. 2011) .................................................... 43, 44

*Donohoe v. Consol. Operating & Prod. Corp.*,
    30 F.3d 907 (7th Cir. 1994) .................................................................................... 37

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................................ 38

*Enneking v. Schmidt Builders Supply Inc.*,
    917 F. Supp. 2d 1200 (D. Kan. 2013) ................................................................... 20

*Fiene v. V & J Foods, Inc.*,
    962 F. Supp. 1172 (E.D. Wis. 1997) ..................................................................... 16

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014).....................................................................................25

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) .......................................................................43

*Haber v. Brown*,
  774 F. Supp. 877 (S.D.N.Y. 1991)...............................................................28

*Halperin v. Richards*,
  7 F.4th 534 (7th Cir. 2021) ....................................................................41, 42

*United States ex rel. Hanna v. City of Chi.*,
  834 F.3d 775 (7th Cir. 2016) .......................................................................22

*Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*,
  756 F.3d 1032 (7th Cir. 2014) .....................................................................40

*Haywood v. Massage Envy Franchising, LLC*,
  887 F.3d 329 (7th Cir. 2018) .......................................................................14

*Hensiek v. Bd. of Directors of Casino Queen Holding Co., Inc.*,
  No. 3:20-CV-377-DWD, 2022 WL 263321 (S.D. Ill. Jan. 28, 2022)...........19, 20

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) .......................................................................35

*Hukic v. Aurora Loan Servs.*,
  588 F.3d 420 (7th Cir. 2009) .......................................................................44

*IJKG Opco LLC v. Gen. Trading Co.*,
  No. CV176131KMJBC, 2020 WL 1074905 (D.N.J. Mar. 6, 2020)..............31, 32

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
  140 S. Ct. 768 (2020)...................................................................................15

*Kannapien v. Quaker Oats Co.*,
  433 F. Supp. 2d 895 (N.D. Ill. 2006), *aff'd*, 507 F.3d 629 (7th Cir. 2007) .........31

*Kannapien v. Quaker Oats Co.*,
  507 F.3d 629 (7th Cir. 2007) ..................................................................21, 31

*Kaplan v. Shure Bros.*,
  153 F.3d 413 (7th Cir. 1998) .......................................................................40

*KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*,
  No. 12-CV-636-BBC, 2013 WL 5777289 (W.D. Wis. Oct. 25, 2013), *aff'd*,
  763 F.3d 743 (7th Cir. 2014) .......................................................................42

*Keach v. U.S. Tr. Co.*,
    240 F. Supp. 2d 840 (C.D. Ill. 2002) ........................................................ 29, 30

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) .................................................................................... 17

*Laskin v. Siegel*,
    728 F.3d 731 (7th Cir. 2013) ...................................................................... 16

*Martin v. Consultants & Administrators, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) .......................................................... 17, 18, 19

*McCready v. eBay, Inc.*,
    453 F.3d 882 (7th Cir. 2006) ...................................................................... 13

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) .................................................................................... 31

*Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*,
    266 F. Supp. 3d 1154 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) ..................... 35

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ................................................................................ 38, 39

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .................................................................. 23, 27

*Plumbers & Pipefitters Loc. Union v. Zimmer*,
    673 F. Supp. 2d 718 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012) ......................... 35

*In re Providian Fin. Corp. ERISA Litig.*,
    No. C 01-05027 CRB., 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ............................ 28

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) .......................................................... 33, 34, 36

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
    919 F.2d 1216 (7th Cir. 1990) .................................................................... 16

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ....................................................................... 29

*Rocha v. Rudd*,
    826 F.3d 905 (7th Cir. 2016) ...................................................................... 28

*Rogers v. Baxter Int'l, Inc.*,
    417 F. Supp. 2d 974 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008) .................. 21, 24

*In re Salomon Analyst Level 3 Litig.*,
   373 F. Supp. 2d 248 (S.D.N.Y. 2005) ..................................................... 37

*Silverman v. Motorola, Inc.*,
   772 F. Supp. 2d 923 (N.D. Ill. 2011) ..................................................... 37

*Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enterprises, Inc.*,
   793 F.2d 1456 (5th Cir. 1986) ............................................................ 42

*Studer v. Katherine Shaw Bethea Hosp.*,
   867 F.3d 721 (7th Cir. 2017) ............................................................. 40

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ...................................................................... 35

*Thomason v. Nachtrieb*,
   888 F.2d 1202 (7th Cir. 1989) ........................................................... 28

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007) ......................................................... 37, 38

*Wade v. Hopper*,
   993 F.2d 1246 (7th Cir. 1993) ........................................................... 44

*White v. Marshall & Ilsley Corp.*,
   No. 10-CV-311, 2011 WL 2471736 (E.D. Wis. June 21, 2011), *aff'd*, 714
   F.3d 980 (7th Cir. 2013) ................................................................. 29

*Wolin v. Smith Barney Inc.*,
   83 F.3d 847 (7th Cir. 1996) ............................................. 17, 18, 19, 21

*Wood v. Carpenter*,
   101 U.S. 135 (1879) ...................................................................... 17

**Statutes**

15 U.S.C.A. § 78u-4(b)(2)(A) .............................................................. 34

15 U.S.C. § 78t(a) ....................................................................... 36

29 U.S.C.A. § 1144(a) .................................................................... 39

29 U.S.C. §§ 1105(a)(1)-(3) .............................................................. 29

29 U.S.C. §§ 1106(a)(1)(A), (D) .......................................................... 21

29 U.S.C. § 1113 ..................................................................... 15, 16

29 U.S.C. § 1132 ......................................................................... 38

Wis. Stat. § 893.57 ................................................................................................................ 42

**Other Authorities**

29 C.F.R. § 2509.75-8 ......................................................................................................... 31

Fed. R. Civ. P. 8 ......................................................................................................... 14, 43, 44

Fed. R. Civ. P. 9(b) .................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 14

Fed. R. Civ. P. 34(a) ............................................................................................................... 1

Fed. R. Civ. P. 54(b) ........................................................................................................ 1, 12

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(f), Defendants-Appellees Buth, Karch, Richards, Ferree, Fantini, Parker, Tyczkowski, Arent, Willetts, Scherbel, Pace, Carter, Seifert, Reardon, Murphy, Suwyn, and Gilligan (collectively, the "Ds&Os") submit that oral argument is appropriate because this appeal presents important issues under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and oral argument would significantly aid the decisional process.

## JURISDICTIONAL STATEMENT

The Statement of Jurisdiction submitted by Plaintiff-Appellant Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, by and through Grant Lyon in his capacity as the ESOP Administrative Committee of Appvion, Inc. ("Lyon"), is complete and correct.[1]

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court properly dismissed the portions of Lyon's complaint directed against the seventeen Ds&Os because, in 1,342 paragraphs of allegations spanning seventeen years, Lyon failed to state any claim against them. Specifically:

---

[1] The Ds&Os opposed Lyon's motion for judgment under Rule 54(b) and do not agree with the characterizations on page 2 of Lyon's brief.  *See* Appellant's Brief ("AB") at 2.

I.      Whether the District Court properly dismissed Lyon's ERISA claims for breach of fiduciary duty, prohibited transactions, and co-fiduciary liability based on alleged violations occurring before November 26, 2012, as time-barred by ERISA's six-year statute of repose, where Lyon pled no fraud or concealment that is independent from his underlying allegations of wrongdoing to toll that period.

II.     Whether the District Court properly dismissed Lyon's fraud-based ERISA claims for breach of fiduciary duty, prohibited transactions, and co-fiduciary liability, where those claims allege a "sprawling and conspiratorial" scheme that is "implausible on its face," B015,[2] but are not pled with particularity, and where his claim for co-fiduciary liability fails to adequately allege an underlying breach or actual knowledge of a breach.

III.    Whether the District Court properly dismissed Lyon's federal securities fraud claims, which are based on alleged stock overvaluations, where Lyon failed to allege any facts suggesting that the Ds&Os either knew the stock valuations were inflated or released the stock prices with an intent to deceive.

IV.     Whether the District Court properly dismissed Lyon's state law breach of fiduciary duty claim as preempted by ERISA, where that claim is based entirely on the same underlying conduct that is the basis for his ERISA claims against the Ds&Os.

---

[2] Cites to "B[pg.]" are to Appellant's Circuit Rule 30(b) Appendix.

## STATEMENT OF THE CASE

This case arises from the 2001 sale of a paper company, Appvion, Inc. ("Appvion" or the "Company"),[3] via an employee stock ownership plan ("ESOP"), the subsequent stock valuations performed for the Company over the next sixteen years, and the Company's eventual October 2017 bankruptcy filing. The Ds&Os are former Appvion officers and directors who served the Company in various roles during different periods from 2001 to 2017. Lyon brings claims against the Ds&Os for alleged violations of ERISA, federal securities laws, and state law fiduciary breaches.

Spanning 206 pages and 825 paragraphs, Lyon's First Amended Complaint ("FAC") asserted nineteen causes of action against eight corporate entities and 51 individual defendants (including the Ds&Os and their innocent spouses). *See* Dkt. 77.[4] The District Court dismissed the FAC in its entirety, holding that Lyon failed to state any claim upon which relief could be granted. A055.[5]

Lyon then filed his Second Amended Complaint ("SAC"), reshuffling the factual allegations and causes of action that the District Court rejected in its FAC

---

[3] Prior to 2013, Appvion was called Appleton Papers, Inc.

[4] References to the "Dkt." are to the docket in the District Court below. *See Appvion Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth et al.*, Case No. 18-cv-1861 (E.D. Wis.).

[5] Cites to "A[pg.]" are to Appellant's Circuit Rule 30(a) Appendix.

dismissal order.  In total, the SAC spans 394 pages, including 1,342 paragraphs and 37 causes of action.  *See* Dkt. 191.

The central theory of Lyon's SAC is that numerous independent parties engaged in a scheme to inflate Company financial projections and stock valuations over a seventeen-year period from 2001 to 2017.  This "sprawling and conspiratorial" scheme would have required "the participation, loyalty, silence, and dereliction of duty" from numerous independent parties "who had nothing to gain and everything to lose," B015, including (i) the seventeen individual Ds&Os who worked under three separate CEOs in different time periods; (ii) three independent institutional ESOP trustees—co-appellees State Street Bank and Trust Company ("State Street"), Reliance Trust Company ("Reliance"), and co-defendant Argent Trust Company, N.A. ("Argent"); (iii) two different financial valuation firms—Willamette Management Associates, Inc. ("Willamette") and co-appellee Stout Risius Ross, Inc. and Stout Risius Ross, LLC (collectively, "Stout"); and (iv) an independent financial advisor—co-appellees Houlihan Lokey Capital, Inc. and Houlihan Lokey Financial Advisors (collectively, "Houlihan")—that worked only on the initial 2001 ESOP transaction.  The District Court correctly held that despite its 1,342 paragraphs and nearly 400 pages, Lyon's SAC failed to plead any facts to support this theory, and dismissed all claims against the Ds&Os.  A002.  This Court should affirm.

### A.    Facts

**2001 Transaction and ESOP Adoption.**  Appvion was a privately owned company founded in the early 1900s that manufactured specialty, high value-added coated paper products in Appleton, Wisconsin.  As part of a 2001 Company restructuring, Appvion's management team adopted an ESOP structure to allow Appvion's employees to own the Company and purchase Company stock as part of their retirement benefit portfolios.

Appvion corporate officers Buth, Karch, Parker, and Fantini were involved in the ESOP transaction, as were independent entities that Appvion engaged to assist with vetting and implementing the transaction.  B113-17, ¶¶ 88, 92, 103.  Buth retained the investment banking firm Houlihan to facilitate the transaction.  In turn, Houlihan selected the financial firm State Street to serve as the ESOP fiduciary and trustee, and hired Willamette, a separate financial company, to serve as a neutral stock valuator.  B086, ¶ 4; B103, ¶¶ 56, 59.

The transaction required creation of a new holding company for Appvion called Paperweight Development Corp. ("PDC"), and the deal was structured as a sale of 100% of PDC's stock to the ESOP.  B085, ¶ 2.  The ESOP transaction closed on November 9, 2001.  B371, ¶ 1084 (the "2001 Transaction").

**ESOP Trustee.**  Over the next seventeen years, three different independent trust companies served as the ESOP's trustee ("ESOP Trustee").  B103, ¶¶ 56-58.

The original ESOP Trustee was State Street, which Reliance replaced in 2013. B103, ¶¶ 56-57. Argent took over as ESOP Trustee when it purchased Reliance's ESOP business in 2014, and remained the ESOP Trustee until the Company's bankruptcy filing in 2017. B103, ¶ 58; B177, ¶ 335. The ESOP Trustees conducted all ESOP stock purchases and sales transactions, and they had full discretionary authority over the ESOP Trust's sole assets: PDC's stock shares. B129, ¶¶ 167, 170-71.

**ESOP Valuation.** The ESOP Trustee was responsible for making a semi-annual fair market valuation of the ESOP Trust's PDC stock shares. B128, ¶¶ 160-61. The ESOP Trustee retained an independent valuation firm to perform the valuation. From 2001 to 2004, that firm was Willamette. Beginning in 2004, Stout performed the valuations for the ESOP Trustee. B103-04, ¶¶ 59-60.

**ESOP Committee.** The ESOP plan document and ESOP trust agreement authorized the creation of an ESOP administrative committee ("ESOP Committee"), comprised of Company officers, B099-B101, ¶¶ 38-47, and ESOP participants, B168-69, ¶¶ 297-304. These documents also governed both the ESOP Committee's and the ESOP Trustee's authorities and powers. Once the ESOP Trustee determined the PDC stock valuations, the ESOP Committee discussed those valuations with the ESOP Trustee and then communicated those valuations to ESOP participants. B129,

¶ 167.   These valuations were also publicly disclosed through the Company's government filings.  B092-93, ¶ 20; B193, ¶ 369.

The ESOP Committee had no discretion or authority to determine or adjust the ESOP's stock price.  B128-29, ¶¶ 161, 167.  Because both the ESOP Committee and the ESOP Trustee were the ESOP's ERISA fiduciaries, they were obligated to act in the ESOP's and ESOP participants' best interests.  *Id*.  Appvion's Board of Directors (the "Board") selected the ESOP Committee members.

**Appvion Board.**  At various points in time, several non-employee Board members sat on the Board as "Outside Directors."  B101-02, ¶¶ 48-54; B132-33, ¶ 180.[6]  Buth, Karch, Richards, Parker, and Gilligan were Appvion Officers who served alongside the Outside Directors as Board members over the course of the ESOP's existence.  B099-B101, ¶¶ 38-40, 43, 47.

**Bankruptcy.**  Beginning in about 2012, facing the paper manufacturing industry's long decline in an increasingly paperless economy, the Ds&Os explored various options for Appvion's future, up to and including selling the Company outright.  B174-77, ¶¶ 319-34.  In August 2017, Appvion restructured the ESOP Committee.  In the restructuring, the acting ESOP Committee members stepped

---

[6] The Outside Directors are defendants-appellees Stephen Carter, Kathi Seifert, Andrew Reardon, Terry Murphy, Mark Suwyn, Susan Scherbel, and Ronald Pace. AB at 5.  The officer defendants-appellees are Douglas Buth, Paul Karch, Dale Parker, Rick Fantini, Mark Richards, Tom Ferree, Kerry Arent, Angela Tyczkowski, Kent Willetts, and Kevin Gilligan (the "Officers").  *Id.* at 4.

down and were replaced by Lyon, who was not an Appvion employee.  B096, ¶ 27.

On October 1, 2017, just months after Lyon's ESOP Committee appointment,

Appvion filed for Chapter 11 bankruptcy.  B177, ¶ 335.

### B.    Procedural History

**First Amended Complaint.**  Lyon filed his initial complaint on November

26, 2018, Dkt. 1, and filed his FAC on January 8, 2019.  B428.  Lyon's FAC spanned

206 pages and contained 825 paragraphs and nineteen causes of action against eight

corporate entities and 51 individual defendants, including the Ds&Os and their

innocent spouses.  *See* Dkt. 77.  In his FAC, Lyon alleged that "the defendants played

various roles in fraudulently inducing Appvion's employees to adopt the ESOP as

part of their retirement plan and then, over the following sixteen years, artificially

inflating the value of stock owned by the ESOP, resulting in losses to the ESOP."

A005.  Specifically, Lyon asserted ERISA claims, federal securities fraud claims,

and Wisconsin state law claims for fiduciary breaches and securities fraud against

the Ds&Os.  *Id*.  On February 28, 2019, eight defendant groups moved to dismiss

the FAC.  A006.

On July 27, 2020, the District Court issued a thorough, 52-page opinion

dismissing the FAC in its entirety for failure to state a claim upon which relief could

be granted.  A055.  First, regarding Lyon's ERISA claims against the Ds&Os, the

District Court held that ERISA's statute of repose barred his claims based on conduct

that occurred before November 26, 2012.  A019.  It further held that Lyon could not rely on the "fraud or concealment" exception to ERISA's statute of repose because Lyon "failed to allege that [the Ds&Os] engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing."  A021.  The District Court also held that Lyon failed to state an ERISA claim for actions taken after November 26, 2012, because his fraud-based claims "fall short of the heightened pleading standards required by Rule 9(b)."  A024.

Second, regarding Lyon's federal securities fraud claims against the Ds&Os, the District Court held that Lyon failed to state a claim because he "does not sufficiently plead scienter."  A027.  It found that "the FAC does not contain specific allegations suggesting that [the Ds&Os] knew the valuations were artificially inflated as alleged and, despite that fact, intended to release the prices to the [Company participants in the ESOP] for fraudulent purposes."  *Id*.

Finally, regarding Lyon's Wisconsin state law claim against the Ds&Os for breach of fiduciary duty, the District Court held that ERISA completely preempts that claim because "Lyon's claim for corporate breach of fiduciary duty does not implicate a legal duty independent of ERISA."  A029.  His claim for securities fraud under Wisconsin state law also failed because this law "specifically excludes" his

ESOP-related claims.  A030.[7]

**Second Amended Complaint.**  Lyon filed his SAC on September 25, 2020.

B074.  In his SAC, Lyon reshuffled the factual allegations and causes of action that

the District Court rejected in dismissing the FAC.  The resulting SAC is 394 pages,

including 1,342 paragraphs and 37 causes of action against seven entities and

nineteen individuals.  *See* Dkt. 191.

In the SAC, Lyon asserts the following causes of action against the Ds&Os:

- Breach of Fiduciary Duty under ERISA:  Counts 4-20.

- Prohibited Transactions under ERISA:  Counts 21 and 25.

- Co-Fiduciary Liability under ERISA:  Counts 26-27.

- Federal Securities Fraud:  Counts 33-34.

On appeal, Lyon also challenges the dismissal of his state law breach of

fiduciary duty claim against the Ds&Os (FAC Count 16).  *See* AB at 73; B441.

Lyon's SAC did not include this claim.  *See* Dkt. 191.

In the SAC, Lyon alleges two general categories of wrongful conduct by the

Ds&Os.  B006.  First, Lyon alleges that "several Ds&Os allegedly ran a fraudulent

---

[7] Regarding Lyon's claims against the Ds&Os' innocent spouses, the District Court held that Lyon's "FAC merely alleges the spouses' marital relationship to the individually named defendants and is devoid of any allegations that they are trustees, agents, or depositories or that they possess ill-gotten profits."  A018.  As such, "it would be improper for the spouses to remain as defendants in this action."  A019.

scheme to inflate the sale price of Appvion when it sold to the ESOP, incentivized by bonuses that would [allegedly] rise in proportion to the price." *Id.* Second, Lyon alleges that after the 2001 Transaction, "the Ds&Os allegedly continued the fraudulent scheme to inflate PDC's stock price, similarly incentivized by compensation packages [allegedly] tied to the stock price." *Id.*

**Dismissal.**  Six defendant groups moved to dismiss the SAC.  The District Court referred their motions to Magistrate Judge Dries.  On March 17, 2022, Judge Dries issued a report and recommendation ("R&R").  B001.  In a thorough, 67-page R&R, Judge Dries concluded that, with respect to the claims against the Ds&Os, the SAC "has *not* cured" the defects the District Court identified in the FAC.  B001 (emphasis in original).  He recommended that the District Court dismiss most of the SAC's claims, including all claims against the Ds&Os, leaving only two claims against Argent.  *Id.*

On May 5, 2022, Lyon filed objections to the R&R.  Dkts. 243-49.  The parties then engaged in extensive briefing regarding Lyon's R&R objections.  *See* Dkts. 249-60.

On September 6, 2022, the District Court[8] issued an order adopting Judge

---

[8] To avoid confusion, and because the District Court adopted Judge Dries' R&R "with the exception of footnote 6 on page 16," A002, this brief does not distinguish between the R&R and the District Court's order adopting it in discussing the District Court's dismissal of the SAC unless otherwise indicated.

Dries' R&R.  A002.  It dismissed all claims against the Ds&Os; State Street; Reliance; Houlihan; and Stout, Aziz El-Tahch, and Scott Levine, A003, and all but two claims against Argent.  A003.

**Judgment and Appeal.**  On October 4, 2022, Lyon moved for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b).  Over defendants' objections, the District Court granted that motion on December 16, 2022, and entered final judgment.  A001.  This appeal followed.

On appeal, Lyon argues that the District Court erred when it (i) "dismissed all claims for violations prior to November 26, 2012, as untimely, rejecting the fraud or concealment allegations in the SAC"; (ii) "applied Rule 9(b) to all ERISA claims against the [Ds&Os], then dismissed those claims as implausible"; (iii) "rejected the securities fraud claims for failure to plead scienter"; and (iv) "found that Lyon's state law claims were preempted."  AB at 17-18.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's dismissal with prejudice of all claims against the Ds&Os for several reasons.

***First***, Lyon's ERISA claims against the Ds&Os should be dismissed.  The decades-old ERISA claims based on alleged violations before November 26, 2012 are time-barred by ERISA's six-year statute of repose, which protects defendants against these types of stale claims.  Lyon's other ERISA claims fail because they are

premised on allegations of a "sprawling and conspiratorial" scheme to inflate PDC's stock price that is "implausible on its face." B015. Lyon levels serious fraud allegations against the Ds&Os, but fails to meet Rule 9(b)'s heightened standard for his fraud-based fiduciary breach and prohibited transactions claims. Lyon's claim for co-fiduciary liability also fails because he lacks both allegations of an underlying fiduciary breach and allegations that the Ds&Os had actual knowledge of an alleged breach.

*Second*, Lyon failed to plead scienter and other requisite elements of his federal securities fraud claims against the Ds&Os. *Third*, ERISA preempts Lyon's state law fiduciary breach claims against the Ds&Os. *Fourth*, dismissal is warranted for additional reasons the District Court did not reach, including that the SAC is an impermissible shotgun pleading. *Finally*, Lyon's repeated failure to cure his pleading deficiencies, or to identify any additional facts that could cure them, warranted dismissal with prejudice.

## ARGUMENT

This Court should affirm the thorough, well-reasoned decision of the District Court. This Court reviews the District Court's decision to grant a motion to dismiss under Rule 12(b)(6) *de novo*. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). It "may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court."

*Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 332-33 (7th Cir. 2018) (citation omitted).

Under Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation and alteration omitted). To survive a motion to dismiss, a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Id.*; Fed. R. Civ. P. 12(b)(6). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Because the District Court correctly concluded that Lyon could not meet this pleading standard, let alone the heightened pleading standard applied to claims sounding in fraud, its dismissal should be affirmed.

## I.    THE DISTRICT COURT PROPERLY DISMISSED ALL ERISA CLAIMS AGAINST THE DS&OS.

This Court should affirm the District Court's dismissal of Lyon's ERISA claims against the Ds&Os. As the District Court correctly held, Lyon's claims based on alleged ERISA violations prior to November 26, 2012 are time-barred, and are not subject to the fraud or concealment exception to ERISA's statute of repose.

-14-

Lyon's SAC lacks allegations of fraud or concealment that are independent from the underlying allegations of wrongdoing.  Lyon also failed to state any ERISA claim because Rule 9(b) dooms his fiduciary breach and prohibited transaction claims and his co-fiduciary liability claim is based on his inadequately-pled claims of an underlying breach, and because he fails to allege the Ds&Os had actual knowledge of any alleged breach.

### A. The District Court Correctly Held That Claims Based on Alleged ERISA Violations Prior to November 26, 2012 Are Time-Barred.

Under ERISA's statute of repose, an ERISA claim arising from a fiduciary's breach of any responsibility, duty, or obligation is time-barred after six years.  29 U.S.C. § 1113.  As the Supreme Court has noted, this "statute of repose . . . effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020) (internal quotation marks omitted).  The purpose of a statute of repose is to protect parties from "the onerous task of defending against stale claims" like Lyon's decades-old ERISA claims.  *Ambrosia Land Invs., LLC v. Peabody Coal Co.*, 521 F.3d 778, 784 (7th Cir. 2008).  Lyon filed his original complaint on November 26, 2018.  Dkt. 1.  So, his ERISA claims based on acts or omissions more than six years before that date—i.e., before November 26, 2012— are time-barred.

The majority of Lyon's ERISA claims are based on conduct that occurred before November 26, 2012, including conduct related to the 2001 Transaction and to Company stock valuations that occurred from 2001 through November 26, 2012. Lyon argues these claims are saved by Section 1113's "fraud or concealment" exception to the six-year repose period. *See* AB at 52. This exception provides that "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. But Lyon did not adequately plead fraud or concealment.

To deprive a defendant of the protection of ERISA's statute of repose, a plaintiff must do more than point to the conduct alleged to be a fiduciary breach. As this Court has explained, fraud or concealment under ERISA "refers to steps taken by the defendant to hide the fact of the breach rather than to the underlying nature of plaintiffs' claim." *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990). It means "delaying a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not become[] aware of them (concealment)." *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013). "[A] finding of concealment requires evidence that a defendant took affirmative steps to hide the violation itself." *Id*. Rule 9(b) also requires Lyon to plead his fraud or concealment allegations with particularity. *Fiene v. V & J Foods, Inc.*, 962 F. Supp. 1172, 1184

(E.D. Wis. 1997); *see also Wolin v. Smith Barney Inc.*, 83 F.3d 847, 854 (7th Cir. 1996), *disapproved of on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ("[F]raudulent concealment is a species of fraud [] and . . . must be pleaded with particularity.").[9]

As the District Court correctly held, Lyon was required to plead specific acts of fraud or concealment ***separate and apart*** from the underlying wrongdoing he alleges.  B012.  In his brief, Lyon quotes this Court's decisions in *Martin* and *Wolin*. AB 55-56.  But those cases support dismissal.  In *Martin*, this Court "emphasize[d]" that "fraud claims do not receive the benefit of ERISA's six-year statute of limitations simply because they are fraud claims."  *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992).  It further held that an allegation of "[c]oncealment by mere silence is not enough."  *Id*. at 1094.  Rather, "there must be ***actual*** concealment—i.e., 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'"  *Id*. at 1095 (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)) (emphasis added).

Applying this principle, in *Martin*, this Court held that the fraud or concealment exception was satisfied where the defendants "concealed the fraud ***actively***, by channeling [] kickbacks through a dummy corporation" and "falsely

---

[9] *See also* AB at 26 (recognizing that "Rule 9(b)'s heightened pleading standard applies to all 'averments of fraud' regardless of whether those averments pertain to a fraud cause of action").

label[ing]" the kickbacks as "payments for services supposedly rendered in checking members' eligibility." *Id*. at 1095 (emphasis added). Although this "concealment occurred in the course of the fraud itself rather than independently of it," the plaintiff was still required to establish these separate "steps taken by wrongdoing fiduciaries to cover their tracks." *Id*. at 1095-96. Likewise, in *Wolin*, this Court held that "***fraudulent concealment . . . is distinct from a fraud that is concealed***." *Wolin*, 83 F.3d at 851 (emphasis added). Accordingly, the statute should not be tolled "if the defendant had made no effort to conceal [the fraud] beyond what is implicit in committing fraud." *Id*.[10]

Here, Lyon hinges his underlying ERISA claims on his allegations that the Ds&Os knowingly provided the ESOP Trustee and valuation firms with inflated business projections, which he alleges the Trustees then utilized blindly to overvalue the stock price in each semiannual valuation from 2001 to 2017. *See* B006-010. Lyon further alleges that the Ds&Os' incentive-based compensation motivated them to inflate the Company's business projections and thereby commit fraud. *Id*.

---

[10] Similarly, this Court's observation that the statute should not be tolled where "the plaintiff should have discovered the fraud long before its public exposure," *Wolin,* 83 F.3d at 851, does not support Lyon's assertion that "fraud or concealment can occur as part of the wrongdoing itself." AB at 55 (emphasis removed). Nor does this Court's discussion of "self-concealing acts" in *Wolin* relieve Lyon of his burden to plead "effort[s] to conceal [the fraud] ***beyond*** what is implicit in committing fraud." *Wolin*, 83 F.3d at 851 (emphasis added).

But unlike the plaintiffs in *Martin* and *Wolin*, Lyon does not plead separate fraud or concealment allegations. For example, with respect to defendant Buth, Lyon alleges that Buth breached his fiduciary duties when he improperly "disseminated PDC stock valuations" that were allegedly inflated. AB at 62. Lyon then alleges that Buth took steps to conceal his fiduciary breaches by engaging in the ***same conduct***: "releasing inflated PDC stock prices." *Id*. at 66. Likewise, in connection with alleged fiduciary breaches based on the 2001 Transaction, Lyon alleges that Buth breached his fiduciary duties by engaging Houlihan, agreeing to pay it a "contingent fee if the ESOP transaction closed," and not "disclosing Houlihan's own [alleged] conflict." *Id*. at 58-59. Lyon then alleges that the ***same*** "representations about Houlihan's independence" constitute acts of "fraud or concealment." *Id*. at 61.

Lyon's other allegations against Buth and the other Ds&Os are similar. *See* Dkt. 225-1, Exhibit A to Ds&Os' Reply in Support of Motion to Dismiss the SAC (comparing Lyon's allegations of fiduciary breaches with his allegations of fraud and concealment). Yet without "something *more*—something additional to throw people off the scent"—all of these allegations fall short of meeting this Court's fraud or concealment pleading standard. B012 (emphasis in original).

Lyon's reliance on *Hensiek v. Bd. of Directors of Casino Queen Holding Co., Inc.*, No. 3:20-CV-377-DWD, 2022 WL 263321 (S.D. Ill. Jan. 28, 2022), and

*Enneking v. Schmidt Builders Supply Inc.*, 917 F. Supp. 2d 1200 (D. Kan. 2013) is unavailing. *See* AB at 56-57. In *Hensiek*, the plaintiff alleged defendants specifically misrepresented stock purchase transaction terms at company meetings, and misreported key metrics in the company's Form 5500s and annual reports. *Hensiek*, 2022 WL 263321, at *4. In *Enneking*, the plaintiff alleged defendants affirmatively took steps to "hide [the Chief Financial Officer's] criminal history and bankruptcy from the plan participants by [mis]representing his work history." *Enneking*, 917 F. Supp. 2d at 1208. In contrast, here, Lyon alleges the Company's government filings reflected overstated valuations—not that the Ds&Os misrepresented, misreported, or hid the Company valuations prepared by Willamette or Stout. Public reporting is the polar opposite of concealment, and negates Lyon's generic concealment allegations.

Lyon also asserts he alleged separate acts of fraud or concealment "in the form of, *e.g.*, Appvion Form 5500s filed with the Department of Labor." AB at 69. But in its Form 5500 and other government filings, the Company merely accurately published the stock valuations that the Company's valuation firms prepared and the ESOP Trustees confirmed. Lyon does not allege any independent fraud or concealment in the reporting of those valuations—for example, that the Ds&Os altered or misrepresented them. It is plain from the SAC that the Ds&Os publicly and accurately disclosed the valuations through these government filings. Had the

ESOP participants "read the annual reports . . . they would have known the value of their shares. . . . So there was no fraudulent concealment."  *Wolin*, 83 F.3d at 854.

**B.    The District Court Correctly Held That Lyon Failed to State Any ERISA Claim Because He Failed to Plead His Claims, Which Sound in Fraud, with Particularity.**

To state an ERISA breach of fiduciary duty claim, a plaintiff must plead "(1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiffs."  *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007).   To state an ERISA prohibited transaction claim, a plaintiff must plausibly allege that a plan fiduciary caused the plan to engage in a transaction that violates ERISA § 406(a)(1) because it is a "sale or exchange . . . of any property between the plan and a party in interest" and the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."  29 U.S.C. §§ 1106(a)(1)(A), (D).

Although Rule 9(b) does not apply to all breach of fiduciary duty claims, its heightened pleading standard applies "where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act."  *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008).[11]

---

[11] Lyon concedes that "Rule 9(b)'s heightened pleading standard applies to all 'averments of fraud,' regardless of whether those averments pertain to a fraud cause of action."  AB at 26 (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) and *Rogers*, 417 F. Supp. 2d at 984).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This rule requires Lyon to plead "the who, what, when, where, and how" of the fraud, including "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *United States ex rel. Hanna v. City of Chi.*, 834 F.3d 775, 779 (7th Cir. 2016) (citations omitted); *see also* AB at 21-22 (recognizing this standard and citing *Hanna*, 834 F.3d at 779). Because Lyon failed to plead any plausible fraud, all of his ERISA breach of fiduciary duty and prohibited transactions claims fail.

### 1.     Rule 9(b) Applies to Lyon's Breach of Fiduciary Duty and Prohibited Transaction Claims.

The District Court correctly held that Lyon's ERISA fiduciary breach claims had to meet Rule 9(b)'s particularity standard. Lyon bases these claims on his allegations that the Ds&Os "communicat[ed] to the ESOP that PDC's financial health and viability were in good shape, thereby inducing employees to continue to invest in the ESOP." B010. According to Lyon, the Ds&Os made these communications regarding PDC's stock price while they "were aware of several red flags signaling the opposite was true." B010-11. Lyon alleges that the Ds&Os "fraudulently conspired to keep the [stock] price up" because they "were allegedly benefitting from PDC's inflated stock price." B011.

As the District Court held, this "theory against the Ds&Os is *entirely* premised

-22-

on their knowing and self-motivated participation in fraud.  There is no other way to read the allegations against the Ds&Os."  B014, n.4 (emphasis in original). "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).  Given the serious fraud allegations Lyon has leveled against the Ds&Os in his fiduciary breach claims, as well as the stigma attached to these allegations, he must meet Rule 9(b)'s heightened pleading standard.

Lyon asserts that the SAC includes "specific, well-pleaded facts against former CEO Richards for breach of fiduciary duty that did not depend upon fraud." AB at 28.  But the allegations Lyon points to all concern actions Richards took related to PDC stock prices he allegedly "***knew***" were inflated."  *Id*. (emphasis added). Specifically, Lyon alleges that Richards "fail[ed] to value the [PDC] stock in good faith," that he "direct[ed] the ESOP Trustee to purchase PDC's stock . . . for more than fair market value," and that he "act[ed] to benefit his own financial interests rather than the ESOP's."  AB 28-29.  Such allegations of knowing misconduct "sound[] in fraud," and are part of Lyon's larger alleged fraudulent scheme to inflate PDC's stock price.  B014.

Lyon also cannot escape Rule 9(b) by alleging the Ds&Os failed to "monitor

[ESOP Trustees] State Street, Reliance, and Argent in their determinations of the share value." AB 29. Lyon has alleged that the Ds&Os "fraudulently conspired to keep the [stock] price up," B011, not that they merely failed to pay attention to the actions of the ESOP Committee or ESOP Trustee. In other words, Lyon "alleges that [the Ds&Os'] breach of fiduciary duty took the form of a fraudulent act." *Rogers*, 417 F. Supp. 2d at 984. As a result, his breach of fiduciary duty claims must meet Rule 9(b)'s heightened pleading standard.

The District Court also correctly applied Rule 9(b) to Lyon's prohibited transactions claims, noting that it is "hard to see how" Lyon's "prohibited transactions claims do not involve fraud." B014. The claims rest on the same fraud allegations about the Ds&Os' alleged cover-up of PDC stock overvaluations discussed above. *See* B372, ¶¶ 1087, 1090191; B373, ¶¶1139-40. Lyon alleges "[t]he transactions at issue were in furtherance of [the alleged] fraud, and only made possible because of it." B014. Because Rule 9(b)'s heightened pleading standard applies to all "averments of fraud," the District Court correctly applied Rule 9(b)'s heightened pleading standard to Lyon's prohibited transactions claims. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Despite conceding that "Rule 9(b)'s heightened pleading standard applies to all 'averments of fraud,'" AB at 26, Lyon relies on *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670 (7th Cir. 2016) to argue that "[n]o heightened pleading standard applies to

a prohibited transaction claim." AB at 33. But that is not *Allen's* holding. Rather, in *Allen*, this Court addressed the heightened pleading standard articulated in the Supreme Court's *Dudenhoeffer* decision—which requires plaintiffs to plead "special circumstances" when alleging that a fiduciary considering investments in publicly traded shares of company stock "should have recognized from publicly available information alone that the market was over- or undervaluing the stock." *Allen*, 835 F.3d at 674. Such allegations "are implausible as a general rule, at least in the absence of special circumstances." *Allen*, 835 F.3d at 674 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 426 (2014)). *Allen* did not address Rule 9(b), much less hold that Rule 9(b) can never apply to a prohibited transaction claim that relies on fraud averments. In fact, *Allen* does not mention Rule 9(b) or fraud at all.

### 2. Rule 9(b) Dooms Lyon's Breach of Fiduciary Duty and Prohibited Transaction Claims.

The District Court correctly held that Lyon's ERISA claims do not meet Rule 9(b)'s heightened pleading standard. In the SAC, Lyon alleges a broad collusive conspiracy among seventeen individual Ds&Os who worked under three separate CEOs in various time periods over sixteen years, with three independent institutional ESOP trustees, two different financial valuation firms, and an independent financial advisor. As the District Court correctly concluded, "[s]imply put, the sprawling and conspiratorial nature of the proposed fraud (the when and the how of the fraud)

remains implausible on its face." B015.

Lyon asserts that the District Court "improperly applied Rule 9(b) to an overall 'fraudulent scheme' rather than to claims against individual D&O Defendants." AB at 20. But Lyon neither cites any cases to support this assertion nor identifies any claims against individual Ds&Os that are separate and apart from his alleged fraudulent scheme. Perhaps hoping to provide a distraction, Lyon instead relies on an analogy to Lee Harvey Oswald's assassination of President Kennedy. *See* AB at 24-25. Lyon asserts that just as "an inability to prove a larger conspiracy does not make it implausible that Oswald committed the assassination . . . the purported inability of the overall fraudulent scheme in this case does not make it implausible that any single" director or officer violated ERISA. *Id*. at 25.

Lyon's analogy is inapposite in a way that reveals the inadequacy of his allegations. It is indisputable that Lee Harvey Oswald *could* have shot President Kennedy by himself—only one finger was needed to pull the trigger. Here, in contrast, no individual director or officer could have acted alone to inflate the PDC stock and induce employees to continue investing in the ESOP. Indeed, to "perpetuate this [alleged] 16-year fraud, the Ds&Os would have needed to have the participation, loyalty, silence, and dereliction of duty from several outside actors who had nothing to gain and everything to lose." B015. Such a facially implausible

fraud theory must be dismissed. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).

Lyon also asserts that "it appears the district court interpreted Rule 9(b) as imposing not just a heightened pleading standard for fraud but a heightened plausibility standard as well." AB at 25. But Lyon fails to identify any portion of the District Court's decision that required him to "demonstrate the probability of wrongdoing." *Id*. (citation and emphasis omitted). Nor could he, as the District Court applied the correct plausibility standard and held that Lyon failed to "state[] the 'who, what, when, where and how' of the fraud in such a way that it makes the entire fraud ***plausible***"—not probable. B015 (emphasis added).

Pointing to footnote 6 of the R&R does not save Lyon's argument that he alleged plausible claims against the Ds&Os that did not depend on fraud. *See* AB at 28, 30. The District Court expressly declined to adopt Footnote 6 of the R&R. *See* A002. And, the Magistrate did ***not*** find "that Lyon had stated actionable and plausible claims against the D&O Defendants, using the claim against . . . Mark Richards as an example." *Id*. at 30. Rather, the Magistrate Judge found that Lyon "cured ***one*** defect" in the SAC, "the group pleading problem." B016 n.6 (emphasis added). The Magistrate Judge did not find that Lyon plausibly alleged that the Ds&Os breached their fiduciary duties, or that Lyon cured the SAC's many other defects. For example, Lyon's allegations regarding Mr. Richards' involvement in

the February 5, 2013 PDC stock valuation, *see* AB at 31, do not cure the fundamental implausibility of the underlying fraud scheme that valuation is purported to have furthered.

Moreover, Lyon's ERISA claims merely track the statute's language and fail to differentiate among the multiple defendants. For example, Lyon's prohibited transactions claim in Count 25 does not allege any specifics regarding each individual Defendant's conduct. Dkt. 191 at 330-32, ¶¶ 1132-42. Lyon only identifies each Defendant's position on the ESOP Committee and asserts that the position tied the Defendant to the alleged fraud. *See id*. Lyon cannot "state a claim under ERISA" with such "conclusory language." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *see also Haber v. Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (dismissing ERISA action where allegations "simply [incorporated] terms directly from the statute"). Further, this Court has repeatedly "rejected complaints that have 'lumped together' multiple defendants," as Lyon's SAC does. *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016); *see also In re Providian Fin. Corp. ERISA Litig.*, No. C 01-05027 CRB., 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002) (dismissing ERISA fiduciary duty claims lumping "defendants into an undifferentiated mass"). Such allegations simply do not pass the Rule 9(b) test.

**C.   The District Court Correctly Held That Lyon Failed to Plead His Claims for Co-Fiduciary Liability.**

To state a claim for co-fiduciary liability, a plaintiff must plausibly allege that a fiduciary (1) participated knowingly in, or undertook knowingly to conceal, an act or omission that he knows is a breach; (2) failed to follow his fiduciary duties, thereby enabling another fiduciary to commit a breach; or (3) had knowledge of the breach committed by another fiduciary and made no reasonable efforts to remedy that breach. 29 U.S.C. §§ 1105(a)(1)-(3). To meet the third element, "[i]t is well established that *actual knowledge* by a fiduciary is required in order for co-fiduciary liability to attach under § 405(a)." *Keach v. U.S. Tr. Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002) (emphasis added); *see also* AB at 49 (recognizing the "actual knowledge" requirement). Actual knowledge in this context means knowledge of a "breach by any other fiduciary." *Keach*, 240 F. Supp. 2d at 844; *see also Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011).

Lyon's claim for co-fiduciary liability also "is predicated on the existence of underlying breaches of fiduciary duty." *White v. Marshall & Ilsley Corp.*, No. 10-CV-311, 2011 WL 2471736, at *12 (E.D. Wis. June 21, 2011), *aff'd*, 714 F.3d 980 (7th Cir. 2013). Claims for co-fiduciary liability should be dismissed where the underlying breach claim fails. *See White*, 2011 WL 2471736, at *12. Applying this principle, the District Court correctly concluded that Lyon could not state a claim for co-fiduciary liability based on his failed claims of fiduciary breach. Although it

held Lyon had pled a fiduciary breach by Argent, the District Court also correctly dismissed the co-fiduciary duty claim against the Ds&Os because Lyon did not adequately plead that the Ds&Os had actual knowledge of Argent's alleged breach. *See* B017.

The District Court was correct. The SAC is bereft of facts suggesting that the Ds&Os had actual knowledge that Argent was acting imprudently. Lyon alleges only that some Ds&Os "attended ESOP Committee meetings where the valuations were discussed and approved" and were "involved in preparing the projections." AB at 50. Lyon argues that these Ds&Os "knew [the projections] were inflated," *id.*, but offers no support for that conclusory allegation. At best, Lyon's allegations "suggest[] 'constructive knowledge,' such as direct access to valuation reports and facetime with the trustee." B017-18. There are no specific, non-conclusory allegations that the Ds&Os actually "*knew* that the stock prices were inflated." *Id.* (emphasis in original). This failure to allege actual knowledge requires dismissal of Lyon's claims for co-fiduciary liability. *See Keach*, 240 F. Supp. 2d at 844 (C.D. Ill. 2002).

### D. Dismissal of the ERISA Claims Was Proper Because the Ds&Os Were Not Acting As Fiduciaries for the Alleged Acts.

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person

was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Thus, to state an ERISA fiduciary breach claim, Lyon must allege that the Ds&Os were acting as fiduciaries when they engaged in the alleged misconduct. *Id.*

"In determining whether an individual acts as a fiduciary with respect to a particular activity, [the court] must concentrate on the degree of discretion entrusted to that person." *Kannapien v. Quaker Oats Co.*, 433 F. Supp. 2d 895, 906 (N.D. Ill. 2006), *aff'd*, 507 F.3d 629 (7th Cir. 2007) (internal citation marks omitted). Parties who perform purely ministerial or administrative plan functions are not fiduciaries. *See, e.g.*, *id.* at 906-07. And, even when such functions are performed by someone who also has fiduciary responsibility to a plan, that responsibility does not extend to ministerial or administrative plan functions. *Pegram*, 530 U.S. at 226; *Kannapien*, 433 F. Supp. at 906-07. Ministerial or administrative plan functions include, but are not limited to, the drafting and preparation of employee communication materials, reports regarding the plan participants' benefits, and reports required by government agencies (*e.g.*, SEC Form 10-Ks). 29 C.F.R. § 2509.75-8; *IJKG Opco LLC v. Gen. Trading Co.*, No. CV176131KMJBC, 2020 WL 1074905, at *3-*4 (D.N.J. Mar. 6, 2020).

Although the District Court did not reach this issue, Lyon's failure to plead that the Ds&Os were acting as fiduciaries when they engaged in the alleged

misconduct is an additional basis for dismissal.  While certain of the Ds&Os had a role in communicating the stock price after the ESOP Trustee performed its duties, *e.g.*, B129, ¶ 167, such communications were ministerial or administrative functions—not fiduciary acts.  *See IJKG Opco*, 2020 WL 1074905, at *4.  Lyon acknowledges that under the ESOP governing plan and trust documents, the ESOP Trustees—not the Ds&Os—had sole authority and discretion to determine the Company's stock price.  B128, ¶¶ 160-61.  Similarly, Lyon acknowledges that the Trustees—not the Ds&Os—retained the independent valuation firms to assist in preparing the Company's valuations.  B103-04, ¶¶ 59-60; B128, 160-61.  Likewise, Lyon's pre-November 26, 2012 allegations that certain Ds&Os worked on the ESOP prospectus or the ESOP's adoption constitute ministerial—not fiduciary—functions.  B116-17, ¶¶ 100-05; B288, ¶¶ 696-97; B293-94, ¶ 714; B298, ¶ 736; B302-03, ¶¶ 752-53; *IJKG Opco*, 2020 WL 1074905, at *4.[12]  Because the Ds&Os had no discretion about how or whether to communicate the stock prices determined by those valuations, their actions were ministerial in nature.  Accordingly, the District Court's dismissal with prejudice of all ERISA claims against the Ds&Os should be affirmed.

---

[12] In any event, such allegations occurred well before the 2012 statute of repose deadline.  *See supra* at Section I.A.

## II.    THE DISTRICT COURT PROPERLY DISMISSED ALL FEDERAL SECURITIES FRAUD CLAIMS AGAINST THE DS&OS.

On appeal, Lyon devotes less than two pages of his opening brief to his securities fraud claims against the Ds&Os. *See* AB at 69-71. This cursory analysis cannot overcome the District Court's correct conclusion that Lyon failed to plead the required elements of his federal securities fraud claims. Moreover, dismissal of the federal securities fraud claims against the Ds&Os should be affirmed because ERISA's exclusive remedy provision precludes those claims.

### A.    The District Court Correctly Held That Lyon Failed to State a Claim for Securities Fraud Under Federal Law.

To state a securities fraud claim under federal law, Lyon must adequately allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

Fraud allegations are subject to Rule 9(b)'s heightened pleading requirements, which require pleading "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019). Because of this requirement, "a complaint that attributes misrepresentations to all defendants, lumped together for

pleading purposes, generally is insufficient." *Id*. (alteration and quotation omitted). Moreover, the Private Securities Litigation Reform Act ("PSLRA") requires complaints alleging a securities fraud claim to "state ***with particularity*** facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2)(A) (emphasis added).

### 1.    Lyon Fails to Plead Scienter.

Scienter requires pleading facts giving rise to a "strong inference" that ***each*** defendant acted "with the required state of mind . . . which means knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Pugh*, 521 F.3d at 693 (quotation and internal citation marks omitted). "The Supreme Court has directed [this Court] to dismiss the complaint unless 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id*.

Lyon argues that he pled scienter based on conclusory allegations that certain Ds&Os "had access to . . . ESOP Committee meeting minutes" showing projections, that they "were involved in preparing the projections," and that they "were involved in" certain valuations and communications about Company stock prices.  AB at 70. The District Court correctly held that Lyon's scienter allegations were insufficient.

First, none of these general allegations suggest that any of the individual Ds&Os ***knew*** the valuations were inflated or that they released the stock prices with

an intent to deceive.  To the contrary, the SAC suggests that the ESOP Committee members took their fiduciary obligations seriously, including by holding semiannual meetings where they methodically probed the data in the valuation reports.  *See, e.g.*, B383-86, ¶ 1237.  As such, a reasonable person would not "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

Second, that certain Ds&Os served on the ESOP Committee or Board is not enough to plead scienter.  It is well established that a "pleading of scienter may not rest on the inference that defendants must have been aware of [information] based on their positions within the company." *Plumbers & Pipefitters Loc. Union v. Zimmer*, 673 F. Supp. 2d 718, 746 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012) (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002)).

Third, "it is not enough" for Lyon to plead scienter based on the Ds&Os' "certifications in public filings" and financial statements that communicated the Company stock price.  *See Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1167 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018).  Indeed, "there is a big difference between knowing about the reports [of the Company's valuations] and knowing that the reports are false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007).

Fourth, Lyon's oblique reference to the Ds&Os' purported motive to raise the Company stock price, AB at 70, comes nowhere near his burden of alleging that they acted with the requisite "intent to deceive" others regarding the stock's true value. B020.

Finally, as the District Court correctly held, Lyon cannot escape the PSLRA's heightened scienter pleading standard through a control person liability theory. Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 78t(a).  To state a Section 20 claim, however, "a plaintiff must first adequately plead a primary violation of securities laws."  *Pugh*, 521 F. 3d at 693.

Because Lyon fails "even to allege that any of the 'controlled' parties committed a predicate securities fraud violation," the District Court correctly held that Lyon cannot use a "control person liability" theory.  B019.  In his brief, Lyon spends only two sentences on control person liability, asserting that "the SAC also pled control person liability against certain of the Outside Director Defendants."  AB at 71.  That bald assertion cannot overcome Lyon's failure to adequately allege that the control person "*actually* exercised general control over the operations of the wrongdoer" and that the control person "had the power or ability . . . to control the

specific transaction or activity that is alleged to give rise to liability." *Silverman v. Motorola, Inc.*, 772 F. Supp. 2d 923, 927 (N.D. Ill. 2011) (citing *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 911-12 (7th Cir. 1994)) (emphasis in original). Accordingly, as the District Court held, Lyon's federal securities fraud claims fail because he has not pled scienter.

### 2. Lyon Fails to Plead Other Requisite Elements of His Federal Securities Fraud Claims.

Lyon's SAC also fails to plead other requisite elements of his securities fraud claims. He attempts to plead materiality by pointing to certain items he personally believes should have been included in the valuations, concluding that the absence of these items renders such communications "incomplete" and "misleading." B386-90, ¶¶ 1240-45. But to plead materiality, Lyon must allege that there is a "substantial likelihood" that a reasonable investor would have viewed any alleged misrepresentation as "having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988). Lyon's issues with "discretionary choices" made in the Company's valuations do not meet this standard. *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005).

Lyon also failed to adequately plead loss causation, which requires plausible allegations of "a causal connection between the material misrepresentation and the loss." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824,

843 (7th Cir. 2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). Lyon's allegations span seventeen years and involve a panoply of factors that could have caused his alleged losses, including numerous defendants, actions, and uncontrollable market conditions affecting Appvion's performance and stock price. *See* B015. But Lyon neither discounts those other factors nor ties any specific conduct by any of the Ds&Os to specific alleged losses. As such, Lyon cannot plausibly allege "that it was the very facts about which the [Ds&Os allegedly] lied which caused [plaintiff's] injuries." *Tricontinental*, 475 F.3d at 842 (7th Cir. 2007).

### B. ERISA's Exclusive Remedy Provision Precludes Lyon's Federal Securities Fraud Claims Against the Ds&Os.

The District Court found that Lyon failed to plead the elements of his claims for federal securities fraud, and this Court can and should affirm dismissal of those claims on that basis alone. However, dismissal also is warranted because ERISA's exclusive remedy provisions preclude Lyon's federal securities fraud claims.

ERISA's comprehensive enforcement provision, 29 U.S.C. § 1132, provides the exclusive remedy for asserting rights related to an ERISA-governed plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 52 (1987). Accordingly, as a pleading matter, a plaintiff cannot assert federal securities fraud and ERISA claims based on the same underlying allegations.

Here, Lyon relies on the same factual allegations to support both his federal securities fraud and ERISA claims.  Specifically, Lyon alleges that the Ds&Os' business projections and the PDC stock valuations were fraudulent and that the Ds&Os ratified those valuations by communicating the stock price to participants and including the stock price in financial statements.  *Compare* B382-406, ¶¶ 1229-87 (federal securities fraud claims against certain Ds&Os), *with* B314-37, ¶¶ 816-99; B346-65, ¶¶ 946-1044 (ERISA breach of fiduciary duty claims against certain Ds&Os).

For example, with respect to defendant-appellee Richards, Lyon alleges that Richards breached his ERISA fiduciary duties because he "approved, adopted and disseminated the [] PDC stock values even though he knew they were artificially inflated."  B315, ¶ 820.  Lyon's securities fraud claim includes the same allegation that Richards "approved the fraudulent stock prices" and disseminated "fraudulent and misleading communications about the stock values."  B382, ¶ 1234.  Because ERISA provides the exclusive remedy for this alleged conduct, Lyon's securities fraud claims must be dismissed.  *See Dedeaux*, 481 U.S. at 44, 52 (1987).

## III.   THE DISTRICT COURT PROPERLY DISMISSED THE STATE LAW CLAIMS AGAINST THE DS&OS BECAUSE ERISA PREEMPTS THEM.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C.A. § 1144(a).  It is well established

that ERISA has "expansive preemptive power." *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017). Indeed, ERISA "may contain the broadest preemption clause of any federal statute and completely occupies the field of employees' health and welfare benefits." *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014).

ERISA completely preempts a state law claim if (1) "an individual, at some point in time, could have brought his claim under ERISA's expansive civil enforcement mechanism"; and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Studer*, 867 F.3d at 724 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (internal quotations omitted)).

On appeal, Lyon attempts to revive his Wisconsin state law claim "for breach of fiduciary duty" against the Ds&Os. AB at 73.[13] This claim—which mirrors Lyon's ERISA-based fiduciary breach claims and does not implicate a legal duty independent of ERISA—is precisely the sort of claim that ERISA was meant to preempt.

---

[13] Lyon did not include this state law fiduciary breach claim in his SAC, and incorrectly labels it as "Count 13" in his brief. AB at 73. In his SAC, Count 13 is an ERISA fiduciary breach claim. B346. In his FAC, Count 13 is a state law securities fraud claim against certain Ds&Os, Reliance and Argent. Dkt. 77 at 175. Lyon does not challenge the dismissal of this state law securities fraud claim on appeal. Thus, Lyon "has waived any challenge to [its] dismissal on appeal." *Kaplan v. Shure Bros.*, 153 F.3d 413, 420 (7th Cir. 1998).

First, as the District Court correctly held, "[t]here is no dispute that Lyon's [state law] breach of fiduciary duty claim could have been brought under ERISA's civil enforcement provision. Indeed, Lyon has brought such a claim, alleging that [certain Ds&Os] breached their fiduciary duties under ERISA." A029.

Second, Lyon's state law breach of fiduciary duty claim "does not implicate a legal duty independent of ERISA." *Id*. Rather, Lyon expressly bases this claim on the Ds&Os' "fiduciary duty ***to the ESOP***" and seeks to recover plan benefits "***on behalf of the ESOP Plan***." B442, ¶¶ 764-65 (emphasis added); *see also* B429, ¶ 1 (noting that Lyon "seeks to recover damages suffered by the ESOP Plan and ultimately its employee participants"). "In other words, Lyon is not pursuing damages arising from an independent legal duty between Appvion and the defendants; he only seeks to recover benefits under the plan, which is governed by ERISA." A029.

This Court's decision in *Halperin* does not help Lyon's state law claims against the Ds&Os. In *Halperin*, this Court expressly "limited" its holding "to the plaintiffs' particular claims" in that case. *Halperin v. Richards*, 7 F.4th 534, 550 (7th Cir. 2021).[14] There, the plaintiffs were "bankruptcy creditors suing on behalf of the corporation," with "no corollary cause of action under ERISA that they could

---

[14] Counsel for the Ds&Os represented the defendants in the *Halperin* litigation before this Court, and continue to represent the defendants in *Halperin* in the district court.

invoke." *Id.* at 544. Here, in contrast, Lyon is suing in his capacity as the ESOP Committee and has brought over twenty ERISA claims against the Ds&Os.[15]

Claims that accrued prior to November 26, 2015 fail for an additional, independent reason. The statute of limitations for state law fiduciary breach claims in Wisconsin is three years. Wis. Stat. § 893.57; *KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*, No. 12-CV-636-BBC, 2013 WL 5777289, at *6 (W.D. Wis. Oct. 25, 2013), *aff'd*, 763 F.3d 743 (7th Cir. 2014). Thus, Lyon's state law claims based on conduct before November 26, 2015 (three years before this action was commenced) are time-barred. At a minimum, this requires dismissal of the state law fiduciary breach claims against the Ds&Os who left the Company before that date and did not engage in any alleged conduct after 2015: Buth, Karch, Fantini, Parker, Tyczkowski, Willetts, Scherbel, Pace, and Reardon. B099, ¶¶ 38-39; B100, ¶¶ 42-44; B101, ¶¶ 46, 48-49; B102, ¶ 52.[16]

---

[15] Lyon also relies on *Sommers*, a nearly 40-year old case from the Fifth Circuit. AB at 76 (citing *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986)). Although Lyon asserts that this Court "approved of" *Sommers* in *Halperin*, AB at 79, this Court explained that its "reasons differ somewhat from the 'parallel but independent' duties theory employed" in *Sommers*. *Halperin*, 7 F.4th at 544. Unlike *Sommers*, this Court in *Halperin* did "not lean heavily on the fact that the defendants' corporation-law duties have independent state-law grounds." *Id.*

[16] To the extent the Court finds that Lyon has abandoned his state law claims against the co-appellees, it should also find that Lyon has abandoned his state law claims against the Ds&Os. *See*, *e.g.*, brief of co-appellee Houlihan at section I.B.1.

## IV.  THE SECOND AMENDED COMPLAINT IS SUBJECT TO DISMISSAL AS AN IMPERMISSIBLE SHOTGUN PLEADING.

Taken as a whole, Lyon's exceptionally prolix pleading fails to satisfy Rule 8's general pleading requirements.  *See* Fed. R. Civ. P. 8.  Rule 8 requires a "short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  Consistent with this Rule, "[c]ourts have discouraged . . . 'shotgun' pleading where each count incorporate[s] by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged [are] not material to the claim, or cause of action, appearing in a count's heading."  *CustomGuide v. CareerBuilder*, LLC, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (citation and internal quotation marks omitted).  Rule 8 is "not in conflict with" Rule 9(b)—"it is possible to write a short statement narrating the *claim*—which is to say, the basic grievance—even if Rule 9(b) requires supplemental particulars."  *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (emphasis in original).

Here, the SAC incorporates all preceding paragraphs into each of its 37 counts.[17]  By resorting to this kitchen-sink pleading style, Lyon makes it "virtually

---

[17] *See* B255, ¶ 572; B262, ¶ 601; B271, ¶ 635; B284, ¶ 679; B296, ¶ 729; B305, ¶ 769; B310, ¶ 794; B314, ¶ 815; B322, ¶ 845; B331, ¶ 875; B337, ¶ 900; B342, ¶ 923; B346, ¶ 946; B351, ¶ 965; B354, ¶ 981; B357, ¶ 998; B359a, ¶ 1014; B363, ¶ 1030; B365, ¶ 1045; B368, ¶ 1059; B370, ¶ 1072; Dkt. 191 at 323, ¶ 1098; *id*. at 325, ¶ 1110; *id*. at 327, ¶ 1120; *id*. at 330, ¶ 1132; *id*. at 332, ¶ 1143; *id*. at 334, ¶ 1152; *id*. at 337, ¶ 1160; *id*. at 338, ¶ 1168; *id*. at 340, ¶ 1174; *id*. at 341, ¶ 1180; B380, ¶ 1206; B382, ¶ 1229; B403, ¶ 1275; B406, ¶ 1288; B413, ¶ 1314; Dkt. 191 at 391, ¶ 1334.

impossible to know which allegations of fact are intended to support which claim(s) for relief." *CustomGuide*, 813 F. Supp. 2d at 1001 (citation omitted).  Accordingly, the SAC violates Rule 8 and must be dismissed.  *See Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993) (affirming dismissal of complaint for failure to comply with Rule 8).

## V.     THE DISTRICT COURT PROPERLY DISMISSED THE SECOND AMENDED COMPLAINT WITH PREJUDICE.

Dismissal with prejudice is warranted where there is "repeated failure to cure deficiencies . . . or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (citation omitted).  Both factors strongly support the District Court's dismissal with prejudice.  In its FAC dismissal, the District Court analyzed Lyon's pleading defects at length and expressly gave Lyon an opportunity "to file an amended complaint curing the defects noted herein." A055.  Lyon took that opportunity and filed an SAC that spanned 394 pages and contained 1,342 paragraphs.  B074.  However, as the District Court found, the SAC did "*not* cure[]" the defects the District Court identified in the FAC.  B001 (emphasis in original).

On appeal, Lyon does not even attempt to identify any additional facts he could add to his extensive SAC that would alter the District Court's conclusion. Accordingly, it would be futile to give Lyon a third bite at the apple, and this Court should affirm the dismissal of the SAC with prejudice.  *See Wade*, 993 F.2d at 1249

(affirming dismissal with prejudice where "plaintiffs failed to cure the defects repeatedly found in earlier complaints").

## CONCLUSION

For all the foregoing reasons, as well as those discussed in co-appellees' briefs, the District Court's judgment should be affirmed.

Respectfully submitted,

*/s/ Craig C. Martin*
Craig C. Martin
  *Counsel of Record*
Amanda S. Amert
Michael T. Graham
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654-3406
Telephone: (312) 728-9000
Facsimile: (312) 728-9199

*Counsel for Former Appvion, Inc. Director and Officer Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,508 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font, with footnotes in 14-point Times New Roman font.


Dated: August 4, 2023

                                        */s/ Craig C. Martin*
                                        Craig C. Martin

## CERTIFICATE OF SERVICE

I, Craig C. Martin, an attorney, hereby certify that, on August 4, 2023, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court Of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service on all counsel of record will be accomplished by the CM/ECF system.

*/s/ Craig C. Martin*
Craig C. Martin