No. 23-1073

*In the*

# United States Court of Appeals

*for the*

# Seventh Circuit

_____

APPVION, INC. RETIREMENT SAVINGS
AND EMPLOYEE STOCK OWNERSHIP PLAN,
by and through Grant Lyon in his capacity as the
ESOP Administrative Committee of Appvion Inc.,

*Plaintiff-Appellant,*

– v. –

DOUGLAS P. BUTH, ET AL.,

*Defendants-Appellees.*

_____

On appeal from a final judgment of the
United States District Court for the Eastern District of Wisconsin
Case No. 1:18-cv-01861, Hon. William C. Griesbach

_____

**BRIEF FOR APPELLEES HOULIHAN LOKEY CAPITAL AND
HOULIHAN LOKEY FINANCIAL ADVISORS**

_____

THEODORE M. BECKER
J. CHRISTIAN NEMETH
   *McDermott Will & Emery LLP*
   *444 W. Lake Street, Suite 4000*
   *Chicago, IL 60606*
   *312-984-6934*

MICHAEL B. KIMBERLY
CHARLES SEIDELL
EMMETT WITKOVSKY-ELDRED
   *McDermott Will & Emery LLP*
   *500 N. Capitol Street NW*
   *Washington, DC 20001*
   *(202) 756-8000*

*Counsel for Houlihan Lokey Capital and
Houlihan Lokey Financial Advisors*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Houlihan Lokey Capital, Inc., Houlihan Lokey Financial Advisors, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McDermott Will & Emery LLP and Von Briesen & Roper, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Houlihan Lokey, Inc.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Houlihan Lokey, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Michael Kimberly    Date: January 25, 2023

Attorney's Printed Name: Michael Kimberly

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ✓  **No** ☐

Address: McDermott Will & Emery LLP, 500 North Capitol Street, N.W., Washington, D.C. 20001

Phone Number: 202-756-8901    Fax Number: 202-756-8087

E-Mail Address: Mkimberly@mwe.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Houlihan Lokey Capital, Inc., Houlihan Lokey Financial Advisors, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    McDermott Will & Emery LLP and Von Briesen & Roper, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Houlihan Lokey, Inc.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Houlihan Lokey, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Theodore M. Becker    Date: January 25, 2023

Attorney's Printed Name: Theodore M. Becker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓    No ☐

Address: McDermott Will & Emery LLP, 444 W. Lake Street, Suite 4000, Chicago, Illinois

Phone Number: 312-984-6934    Fax Number: 312-984-7700

E-Mail Address: tbecker@mwe.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-1073</u>

Short Caption: <u>Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Houlihan Lokey Capital, Inc., Houlihan Lokey Financial Advisors, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>McDermott Will & Emery LLP and Von Briesen & Roper, S.C.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>Houlihan Lokey, Inc.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>Houlihan Lokey, Inc.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>n/a</u>

Attorney's Signature: <u>/s/ John Christian Nemeth</u>    Date: <u>January 25, 2023</u>

Attorney's Printed Name: <u>John Christian Nemeth</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: <u>McDermott Will & Emery LLP, 333 SE 2nd Avenue, Suite 4500, Miami, FL 33131-2184</u>

Phone Number: <u>312-984-3292</u>    Fax Number: <u>305-397-2618</u>

E-Mail Address: <u>jcnemeth@mwe.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Houlihan Lokey Capital, Inc., Houlihan Lokey Financial Advisors, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McDermott Will & Emery LLP and Von Briesen & Roper, S.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Houlihan Lokey, Inc.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Houlihan Lokey, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Charles Seidell    Date: August 4, 2023

Attorney's Printed Name: Charles Seidell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: McDermott Will & Emery LLP, 500 North Capitol Street, N.W., Washington, D.C. 20001

Phone Number: (202) 756-8140    Fax Number: (202) 591-2973

E-Mail Address: cseidell@mwe.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

     Houlihan Lokey Capital, Inc., Houlihan Lokey Financial Advisors, Inc.

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     McDermott Will & Emery LLP and Von Briesen & Roper, S.C.

(3)      If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         Houlihan Lokey, Inc.

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         Houlihan Lokey, Inc.

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     n/a

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     n/a

Attorney's Signature: /s/ Emmett Witkovsky-Eldred      Date: August 4, 2023

Attorney's Printed Name: Emmett Witkovsky-Eldred

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: McDermott Will & Emery LLP, 500 North Capitol Street, N.W., Washington, D.C. 20001

Phone Number: (202) 756-8223      Fax Number: (202) 756-8087

E-Mail Address: ewitkovsky-eldred@mwe.com

rev. 12/19 AK

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, under-signed counsel for the appellees in No. 23-1073 certify as follows:

1.  The full name of every party that the attorney represents in the case:

    Houlihan Lokey Capital, Inc.; Houlihan Lokey Financial Advisors, Inc.

2.  The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this court:

    McDermott Will & Emery LLP

3.  If the party is a corporation:

    i.  Identify all its parent corporations:

        Houlihan Lokey, Inc. is the sole parent corporation of Houlihan Lokey Capital, Inc. and Houlihan Lokey Financial Advisors, Inc.

    ii. List any publicly held company that owns 10% or more of the party's stock:

        Houlihan Lokey, Inc.

4.  Provide information required by FRAP 26.1(b):

    Not applicable.

5.  Provide Debtor information required by FRAP 26.1(c) 1 & 2:

    Not applicable.

| | |
|---|---|
| August 4, 2023 | /s/ Michael B. Kimberly |
| August 4, 2023 | /s/ Charles Seidell |
| August 4, 2023 | /s/ Emmett Witkovsky-Eldred |
| August 4, 2023 | /s/ Theodore M. Becker |
| August 4, 2023 | /s/ J. Christian Nemeth |

## TABLE OF CONTENTS

Table of Authorities ............................................................................ ii

Introduction ....................................................................................... 1

Jurisdiction ........................................................................................ 2

Issues Presented for Review ............................................................. 2

Statement ........................................................................................... 2

    A.  Factual background ................................................................. 2

    B.  Procedural background .......................................................... 4

Summary of the Argument ................................................................ 6

Argument .......................................................................................... 10

I.   Lyon has abandoned all of his claims against Houlihan ........... 10

    A.  Lyon has abandoned his ERISA claims against Houlihan ........... 11

    B.  Lyon has abandoned his state-law claims against Houlihan ....... 13

        1.  The operative complaint contains no state-law claims .......... 14

        2.  Regardless, Lyon has waived any challenge to the district court's rejection of his state-law claims on the merits ...................................... 18

II.  The claims against Houlihan were correctly dismissed in any event ................. 20

    A.  The ERISA claims against Houlihan were correctly dismissed ................... 21

        1.  Lyon's decades-old ERISA claims against Houlihan are barred by ERISA's statute of repose ................................................ 21

        2.  Houlihan was not a fiduciary of the ESOP (SAC counts 21, 36) ............ 25

        3.  Houlihan did not receive trust property (SAC count 37) ................. 26

    B.  The state-law claims against Houlihan were correctly dismissed ............... 28

        1.  The state-law claims are preempted by ERISA .................................... 28

        2.  The state-law claims fail also as a matter of state law ......................... 31

Conclusion ........................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Alessi v. Rabyestos-Manhattan, Inc.*,
    451 U.S. 504 (1981)..............................................................29

*Ambrosia Land Investments, LLC v. Peabody Coal Co.*,
    521 F.3d 778 (7th Cir. 2008)...................................................21

*Ball v. City of Indianapolis*,
    760 F.3d 636 (7th Cir. 2014) ........................................... 16, 17

*Ball v. City of Indianapolis*,
    No. 12-cv-179, Dkt. 36 (S.D. Ind. Mar. 25, 2013)....................16

*Bank of America v. Veluchamy*,
    643 F.3d 185 (7th Cir. 2011) ..................................................13

*Boogaard v. NHL*,
    891 F.3d 289 (7th Cir. 2018) (Barrett, J.)................................19

*Bunte v. AIG*,
    840 F.3d 448 (7th Cir. 2016) ..................................................27

*Burke v. Boeing Co.*,
    42 F.4th 716 (7th Cir. 2022) ............................................25, 26

*Carver v. Condie*,
    169 F.3d 469 (7th Cir. 1999) ..................................................15

*Chesemore v. Fenkell*,
    829 F.3d 803 (7th Cir. 2016) ..................................................25

*Conkright v. Frommert*,
    559 U.S. 506 (2010)...............................................................21

*DeBruyne v. Equitable Life Assurance Society of the United States*,
    920 F.2d 457 (7th Cir. 1990) .................................................. 30

*Doe v. Archdiocese of Milwaukee*,
    700 N.W.2d 180 (Wis. 2005)...................................................33

*Egelhoff v. Egelhoff ex rel. Breiner*,
    532 U.S. 141 (2001).........................................................28, 29

**Cases—continued**

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v.*
    *Edward D. Jones & Co.,*
    884 F.2d 288 (7th Cir. 1989) ................................................. 26

*Fish v. GreatBanc Trust Co.,*
    749 F.3d 671 (7th Cir. 2014) ................................................. 21

*Gobeille v. Liberty Mutual Insurance Co.,*
    577 U.S. 312 (2016) ................................................................ 28

*Great-West Life & Annuity Insurance Co. v. Knudson,*
    534 U.S. 204 (2002) ................................................................ 27

*Griffin v. Bell,*
    694 F.3d 817 (7th Cir. 2012) ................................................. 20

*Guaranty Trust Co. of New York v. United States,*
    304 U.S. 126 (1938) ................................................................ 24

*Hahn v. Walsh,*
    762 F.3d 617 (7th Cir. 2014) ................................................. 18

*Halperin v. Richards,*
    7 F.4th 534 (7th Cir. 2021) ........................................... 29, 31

*Hammer v. Schwartz-Oscar,*
    No. 21-1718, 2022 WL 2828280 (7th Cir. July 20, 2022) ........................ 13

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,*
    530 U.S. 238 (2000) ................................................................ 26

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009) ................................................. 25

*Hess v. Reg-Ellen Machine Tool Corp.,*
    423 F.3d 653 (7th Cir. 2005) ................................................. 34

*Ingersoll-Rand v. McClendon,*
    498 U.S. 133 (1990) ................................................................ 28

*Intel Corp. Investment Policy Committee v. Sulyma,*
    140 S. Ct. 768 (2020) ............................................................. 21

**Cases—continued**

*Kaloti Enterprises, Inc. v. Kellogg Sales Co.*,
    699 N.W.2d 205 (Wis. 2005)....................................................32

*Kaplan v. Shure Brothers*,
    153 F.3d 413 (7th Cir. 1998) ................................................12

*King v. Atiyeh*,
    814 F.2d 565 (9th Cir. 1987)................................................15

*Kolling v. American Power Conversion Corp.*,
    347 F.3d 11 (1st Cir. 2003)...................................................15

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) ........................................ 16, 17

*Landstrom v. Illinois Department of Children & Family Services*,
    892 F.2d 670 (7th Cir. 1990) ................................................19

*Laskin v. Siegel*,
    728 F.3d 731 (7th Cir. 2013) ...............................................23

*Leblanc v. Cahill*,
    153 F.3d 134 (4th Cir. 1998) ............................................. 30

*Lubin v. Chicago Title & Trust Co.*,
    260 F.2d 411 (7th Cir. 1958)......................................... 15, 16

*Maher v. City of Chicago*,
    547 F.3d 817 (7th Cir. 2008).................................................19

*Malzewski v. Rapkin*,
    723 N.W.2d 156 (Wis. Ct. App. 2006).....................................32

*Martin v. Consultants & Administrators, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) ........................................... 24

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
    20 F.4th 311 (7th Cir. 2021).....................................................2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*,
    377 N.W.2d 605 (Wis. 1985) ...............................................33

**Cases—continued**

*Mertens v. Hewitt Associates,*
 508 U.S. 248 (1993) ..........................................................25, 27

*Montanile v. National Elevator Industry Health Benefit Plan,*
 577 U.S. 136 (2016)................................................................27

*Morse v. Republican Party of Virginia,*
 517 U.S. 186 (1996).............................................................. 22

*Morstein v. National Insurance Services,*
 93 F.3d 715 (11th Cir. 1996) ...........................................29, 30

*Muskegan Hotels, LLC v. Patel,*
 986 F.3d 692 (7th Cir. 2021) ..............................................13

*Nachman Corp. v. Pension Benefit Guaranty Corp.,*
 446 U.S. 359 (1980) ............................................................ 28

*Nierengarten v. Lutheran Social Services of Wisconsin,*
 580 N.W.2d 320 (Wis. 1998) ...............................................33

*Noonan v. Northwest Mutual Life Insurance Co.,*
 687 N.W.2d 254 (Wis. Ct. App. 2004)...................................33

*Pickrel v. City of Springfield,*
 45 F.3d 1115 (7th Cir. 1995) .................................................17

*In re Plant Insulation Co.,*
 734 F.3d 900 (9th Cir. 2013) ............................................. 22

*Plumb v. Fluid Pump Serv., Inc.,*
 124 F.3d 849 (7th Cir. 1997)................................................25

*Prymer v. Ogden,*
 29 F.3d 1208 (7th Cir. 1994)......................................... 15, 16

*Radiology Center, S.C. v. Stifel, Nicolaus & Co.,*
 919 F.2d 1216 (7th Cir. 1990) .............................................23

*Rice v. Panchal,*
 65 F.3d 637 (7th Cir. 1995) .................................................31

**Cases—continued**

*Rush Prudential HMO, Inc. v. Moran*,
   536 U.S. 355 (2002) ............................................................21

*Scott v. Chuhak & Tecson*,
   725 F.3d 772 (7th Cir. 2013) ....................................... 16, 17

*Senese v. Chicago Area I.B. of T. Pension Fund*,
   237 F.3d 819 (7th Cir. 2001) ............................................ 20

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ............................................................ 28

*Slane v. Emoto*,
   582 F. Supp. 2d 1067 (W.D. Wis. 2008) ...........................32

*Tietsworth v. Harley-Davidson, Inc.*,
   677 N.W.2d 233 (Wis. 2004) ...........................................32

*Trustees of AFTRA Health Fund v. Biondi*,
   303 F.3d 765 (7th Cir. 2002) ............................................ 29

*United States v. Blagojevich*,
   612 F.3d 558 (7th Cir. 2010) ............................................19

*United States v. Heon Seok Lee*,
   937 F.3d 797 (7th Cir. 2019) ............................................ 24

*United States v. Stephens*,
   421 F.3d 503 (7th Cir. 2005) ............................................ 24

*Vitrano v. United States*,
   643 F.3d 229 (7th Cir. 2011) ....................................... 14, 16

*White v. United States*,
   8 F.4th 547 (7th Cir. 2021) ..............................................12

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ............................................23

*Young v. City of Mount Ranier*,
   238 F.3d 567 (4th Cir. 2001) ............................................16

*Zastrow v. Journal Communications, Inc.*,
   718 N.W.2d 51 (Wis. 2006) ..............................................33

**Statutes**

29 C.F.R. § 2510.3-101 ....................................................................27, 28

29 U.S.C. § 1102(a)(2) ...................................................................... 30

29 U.S.C. § 1104 .............................................................................. 22

29 U.S.C. § 1104(a)(1)...................................................................... 30

29 U.S.C. § 1106 .............................................................................. 22

29 U.S.C. § 1107(d)(6) ...................................................................3, 30

29 U.S.C. § 1113 ..............................................................12, 21, 22, 23

29 U.S.C. § 1132(a)(3) .......................................................................27

29 U.S.C. § 1144(a) ......................................................................... 28

Employee Retirement Income Security Act of 1974,
    29 U.S.C. § 1055............................................................... *passim*

Wis. Stat. § 893.93(1)(b)...................................................................33

**Other Authorities**

*Effect of an Amended Pleading*,
    6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.).......................14, 16, 18

Fed. R. Civ. P. 8 ..............................................................................18

Fed. R. Civ. P. 8(a)(2)......................................................................18

Fed. R. Civ. P. 15(a) ........................................................................18

Fed. R. Civ. P. 9(b)...........................................................................23

## INTRODUCTION

So far as appellees Houlihan Lokey Capital and Houlihan Financial Advisors (collectively, Houlihan) are concerned, this appeal is not principally about ERISA, state-law breaches of fiduciary duty, or anything of the like. It is, instead, about appellant Grant Lyon's express abandonment of every single claim originally raised against them.

The first amended complaint (FAC) asserted five causes of action against Houlihan under ERISA and various state-law theories. When the district court dismissed all five claims (alongside 14 other claims asserted against more than 50 other defendants), it did so with leave to amend each. Lyon in turn filed a second amended complaint (SAC) that dropped all of the original state-law claims and asserted just three ERISA claims against Houlihan (alongside 20 new or amended causes of action against other defendants). With respect to the SAC, the district court once again dismissed Houlihan.

Yet before this Court, Lyon does not devote a single word to contesting the district court's dismissal of the three ERISA claims against Houlihan. He therefore has waived any appeal of those claims. And he is open about why: As he sees it, if he accepts the district court's conclusion that the claims against Houlihan do not fall under ERISA, then they must be properly framed as non-preempted state-law claims. But the problem with that approach is clear: Lyon *dropped* his state-law claims from the SAC, meaning that they are no longer in the case. Moreover, the district court dismissed the original state-law claims not only on preemption grounds, but also on their merits—and Lyon has declined to address their merits, resulting in waiver on top of abandonment.

That is all the Court needs to say to affirm the dismissal of all the claims against Houlihan. And even on the merits, affirmance would be warranted.

## JURISDICTION

Appellant's jurisdictional summary is complete and correct.

## ISSUES PRESENTED FOR REVIEW

1.  Has Lyon waived his appeal of the dismissal of the ERISA claims asserted against Houlihan (counts 21, 36, and 37 of the SAC) by failing to develop any argument in his opening brief concerning those claims?

2.  Did Lyon abandon his state-law claims against Houlihan by failing to assert them in the SAC, despite having been given leave to replead them upon their dismissal from the FAC?

3.  Supposing that Lyon did not abandon his state-law claims by failing to replead them in the SAC, has Lyon waived his appeal of the dismissal of the state-law claims from the FAC by failing to challenge on appeal the district court's alternative holding that the claims lacked merit?

4.  Supposing that Lyon had not now waived every single claim that he asserted against Houlihan, was the district court correct to dismiss those claims as barred by the passage of time or ERISA's preemption clause, or otherwise for lacking merit?

## STATEMENT

### A.    Factual background*

Around 23 years ago, France-based paper manufacturer Arjo Wiggins Appleton decided to sell its Wisconsin-based subsidiary, Appleton Papers, Inc. A008; B085. (Although Appleton Papers did not change its name to Appvion until more than a decade

---

* The facts recounted here are taken from the SAC and the opinions below. Houlihan assumes but does not concede the truth of the allegations. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311 (7th Cir. 2021).

2

later, we refer to it as Appvion at all times, for simplicity's sake.) After exploring a sale to a third-party, Appvion's CEO, Douglas Buth, considered a sale to Appvion's employees through the creation of an employee stock ownership plan, or ESOP. A008. An ESOP is a form of retirement plan that places ownership of the company with employees, rewarding them for their service with company stock. 29 U.S.C. § 1107(d)(6).

Buth developed a plan to sell 100% of the stock of Appvion's holding company, Paperweight Development Corp. (PDC), to a newly formed ESOP for $810 million. A004. In February 2001, PDC retained Houlihan, an investment banking firm, to serve as its "exclusive financial advisor with respect to the possible acquisition . . . by a to-be-formed Employee Stock Ownership Plan." A008, B0086, B0107. The same letter stated that Houlihan would receive a fee "equal to 1.0% of the 'Aggregate Consideration'" paid in the ESOP transaction. A008, B108. Houlihan also agreed to complete a variety of tasks in preparation for the transaction, including certain corporate due diligence and the development of transaction value parameters, all for PDC. A008-009.

According to the SAC, Houlihan assisted PDC with development of the acquisition plan, including financing the transaction with $106 million from existing Appvion 401(k) retirement plans, which employees could choose to transfer to the ESOP. A009, B021. But to ensure that the PDC stock was sold at fair market value, Appvion separately established an ESOP Committee, which in turn appointed an institutional trustee to, among other things, obtain its own valuation of PDC's stock from an independent third-party appraiser (not Houlihan). A010. In July 2001, Houlihan further agreed to render a fairness opinion to PDC concerning the deal. PDC agreed to pay Houlihan $100,000 for the opinion, which was to be credited against the contingent fee. A013.

Appvion executives, representatives of the ESOP, and Houlihan—which, again, was retained by PDC, not the ESOP—attended a series of meetings (labeled as "road shows" in the SAC) to discuss the ESOP plan with Appvion's employees. *Id.* During one such meeting, Appvion's general counsel allegedly stated that Houlihan would "provide an independent view and validation" of the transaction. *Id.* At the same meeting, a Houlihan executive allegedly stated that the plan was "a good deal." B118.

The transaction was approved, and the sale closed on November 9, 2001, for a final purchase price of $810 million. PDC paid Houlihan a fee of $8.1 million pursuant to the express terms of its engagement letter (B089), and Houlihan's role in the ESOP ended. The operative complaint alleges further fraudulent conduct by a number of parties independent of, and extending decades past, the 2001 closing of the ESOP transaction. But it does not allege that Houlihan or any of Houlihan's employees or representatives had any post-closing involvement with Appvion or the ESOP.

### B.     Procedural background

Many years later, Grant Lyon was appointed the sole member of the Appvion ESOP Committee. B096. Appvion and PDC soon after filed for bankruptcy. B177.

The Bankruptcy Court for the District of Delaware authorized Lyon to bring claims on behalf of the ESOP. B098. He filed an initial complaint on November 26, 2018, more than 17 years after the ESOP transaction had closed and Houlihan's alleged role in the underlying facts had ended. He filed the FAC on January 8, 2019, alleging violations of ERISA and state-law claims against Houlihan.

The district court dismissed the FAC in its entirety without prejudice. A004. It first held that all of the ERISA claims arising before November 26, 2012, were barred by

ERISA's six-year statute of repose, and that these claims were not saved by ERISA's "fraud or concealment" exception. A019-023, A031-032, A037-039. It held also that Lyon's state-law claims against Houlihan for fraud, negligent misrepresentation, and breach of fiduciary duty were preempted by ERISA because they "relate to the ESOP, an ERISA-governed plan." A031-32. And in the alternative, the district court concluded that "[the state-law] claims fail for the independent reason that the FAC fails to state claims upon which relief can be granted" on their state-law merits. A032-033.

Lyon thereafter filed the operative SAC. Dkt. 191. The SAC pleads three ERISA claims against Houlihan but omits any other claims against Houlihan, including any state-law claims. B022-023. Specifically, the SAC alleges that Houlihan engaged in prohibited transactions, violated a fiduciary duty under ERISA owed to the ESOP, and violated ERISA by knowingly participating in others' breaches of fiduciary duty. *Id.*

All of the appellees moved to dismiss, and the district court referred the motions to a magistrate judge. Dkt. 233.

The magistrate judge issued a report and recommendation recommending dismissal of all claims against Houlihan. B021-035. First, the magistrate judge noted that the SAC's claims against Houlihan were "all . . . based on conduct that occurred in relation to the 2001 sale of Appvion to its employees." B023. And the "pleadings did not support Lyon's conclusory allegations that Houlihan misrepresented or concealed anything," rendering ERISA's fraud and concealment exception to the normal six-year limitation on actions inapposite. B024. The magistrate judge concluded that all of the claims against Houlihan were thus untimely. B025.

5

Even so, the magistrate judge addressed the merits of Lyon's claims. He concluded that Houlihan was not an ERISA fiduciary, which doomed the prohibited transaction and fiduciary duty claims. B025-30. And the report and recommendation concluded that none of the $8.1 million Houlihan received upon the closing of the ESOP transaction was paid from plan assets, which foreclosed Lyon's claim for knowing participation in fiduciary breaches of others. B031-032.

The district court overruled Lyon's objections and adopted the report and recommendation with one minor change not relevant to Houlihan. Dkt. 262. It subsequently granted Lyon's motion for a Rule 54(b) final judgment as to the dismissed claims against various defendants, including Houlihan. *See* Dkt. 281. Lyon appealed. Dkt. 283.

## SUMMARY OF THE ARGUMENT

**I.**  The Court can and should affirm the dismissal of the claims against Houlihan without reaching their merits because Lyon has abandoned all of them.

**A.**  Take first the ERISA claims. Although Lyon devotes a large majority of his opening brief to his ERISA claims against the Director and Officer Defendants, State Street, and Reliance, he repeatedly declines to challenge the dismissal of the ERISA claims against Houlihan. It is no answer to say that his challenge to the district court's holdings with respect to the other defendants suffices. The grounds for dismissal among the different defendant groups are logically distinct. And with respect to the analytically independent grounds for dismissing the ERISA claims against Houlihan, Lyon says literally not one word. He has therefore abandoned an appeal from the district court's dismissal of those claims.

**B.**  Lyon is candid about why he has abandoned his ERISA claims against Houlihan on appeal: He appears to acknowledge that if Houlihan is an ERISA fiduciary, or if it was providing services to an ERISA plan and being paid with plan assets, his sole recourse would be through ERISA alone, and his state-law claims would be preempted. He has thus declined to challenge the district court's dismissal of his ERISA claims, so that he may assert that he has no remedy under ERISA after all and argue that his state-law claims thus should be allowed to proceed.

That is mistaken, as we demonstrate in Part II. But for present purposes, it is also irrelevant, because Lyon dropped the state law claims from the case when he declined to replead them in the SAC after they were dismissed without prejudice from the FAC. The law is crystal clear on this point: An amended pleading replaces and renders void any prior pleading, which ceases to have any legal effect. Lyon cannot refer back to the FAC's state-law claims, because the FAC is not the operative complaint. Any other conclusion would lead to procedural oddities—Lyon, in effect, is asking the Court to revive a portion of the FAC, which, if countenanced, would mean that there would be two operative pleadings (or fragments of pleadings) in the case. The federal rules do not permit this kind of patchwork-style litigation.

Lyon has not adequately preserved his appeal of the state-law claims even if they were properly before the Court. The district court dismissed those claims not only on the ground that they were preempted by ERISA (a point that Lyon *does* challenge), but also on the ground that they failed on their merits (a point that Lyon does *not* challenge). When a district court gives alternative grounds for its judgment, the appellant must challenge each such ground. Otherwise, this Court's review cannot change the outcome.

7

Here, for example, a reversal on the preemption point would accomplish nothing, because the claims would remain dismissed for failing to meet the requirements of Wisconsin law—a point that Lyon has not disputed on appeal.

Thus, with respect to Houlihan, Lyon has forfeited his appeal of the dismissal of the ERISA claims, and he long ago abandoned the state-law claims by declining to raise them in the SAC. He also has failed to address the merits of the state-law claims, despite that the district court dismissed them from the FAC on that ground in the alternative. With respect to Houlihan, the Court can and should affirm solely on this basis.

**II.** Although the Court need not reach the issue, the district court also correctly dismissed the claims against Houlihan on their merits.

**A.** For starters, Lyon's decades-old ERISA claims against Houlihan are barred by the statute of repose. ERISA contains a six-year statute of repose. Lyon alleges no conduct by Houlihan after 2001, when the sale of Appvion to PDC closed. The original complaint in this action was not filed until 17 years later, on November 26, 2018. Thus, Lyon's allegations against Houlihan come more than a decade too late.

There is no basis for tolling the limitations period for the claims against Houlihan. The SAC rightly alleges that the terms of Houlihan's contingency fee were open to and known by members of the ESOP committee, whose interests Lyon represents in this litigation. Houlihan is not alleged to have hidden the terms of its compensation. Moreover, the allegations make clear that Houlihan was an advisor for PDC only, and not the ESOP (which has its own advisors), and this was known to Appvion employees. Again, nothing concerning Houlihan's role or compensation was hidden. Lyon's allegations

instead boil down to a mere failure to proactively disclose information. That would support tolling only if Houlihan had a duty to disclose, which it did not.

In all events, the ERISA claims against Houlihan are meritless. Lyon alleges in the SAC that Houlihan breached its fiduciary duties under ERISA—but Houlihan was not a fiduciary of the ESOP. It was retained and paid solely by PDC, while at the same time the ESOP retained its own advisors. There is nothing in the SAC remotely suggesting that the ESOP (for which Houlihan did no work) in any way allocated discretionary authority to Houlihan to control its affairs or that Houlihan voluntarily assumed any such authority. Absent such allegations, Houlihan was not a fiduciary, and counts 21 and 36 of the SAC do not even get off the ground so far as Houlihan is concerned.

Lyon's third ERISA claim for participation in the fiduciary breaches of others is likewise insubstantial. ERISA's remedial provision against non-fiduciaries does not allow claims for money damages; it instead provides for equitable relief to recoup plan assets that are wrongfully held by a third party. Because the district court correctly held that Houlihan was paid by PDC from PDC's assets, and not by the ESOP or one of its fiduciaries with ESOP assets, this claim necessarily fails.

**B.** The district court was also right to dismiss the state-law claims aside from their untimeliness. First, those claims are preempted by ERISA. This is a clear case of state-law causes of action intruding into an area of core ERISA concern. Lyon's allegations concern the detailed regulatory requirements applicable to various parties in a transaction expressly governed by ERISA. The Court has interpreted ERISA's many statutory and regulatory provisions to spell out precisely when a party breaches these duties, fleshing out the details of any cause of action. The question of what counts as an actionable claim

9

is central to ERISA's operation, and interference by state-law plaintiffs asserting geographically varying substantive requirements would threaten to undermine the uniformity of federal law in this area. The state-law claims would not be able to proceed under this settled analysis, even if timely.

The state-law claims also fail on their merits. The FAC contained claims of negligent and intentional misrepresentation (a species of fraud). But in the absence of a special state-law duty to disclose, such theories require more than statements of opinion or mere silence. That is the most that Lyon offers. Because Lyon does not even attempt to establish that Houlihan had a special duty to disclose (it did not), the negligent and intentional misrepresentation claims were both correctly dismissed. The FAC also contained a state-law breach of fiduciary duty claim. But for similar reasons that Houlihan was not a fiduciary under ERISA, it was not a fiduciary under state law, either. This claim was thus properly dismissed.

Moreover, the claims are time barred for the same essential reason that the ERISA claims are so: Lyon brought suit after nearly two decades had passed since Houlihan's role in the ESOP formation ended, and there are no plausible allegations that Houlihan actively concealed any alleged wrongdoing.

## ARGUMENT

## I.    LYON HAS ABANDONED ALL OF HIS CLAIMS AGAINST HOULIHAN

The clearest and simplest path to affirmance with respect to Houlihan is to hold Lyon to the consequences of his strategic litigation decisions: He has not challenged the dismissal of the ERISA claims against Houlihan, and he long ago abandoned the state-law claims. Examples of waiver and abandonment are rarely so clear as this.

**A.     Lyon has abandoned his ERISA claims against Houlihan**

We begin with Lyon's three ERISA claims against Houlihan, which are the only claims against Houlihan appearing in the SAC (counts 21, 36, and 37). Although Lyon devotes over 50 pages of his overlength brief to disputing the dismissal of his ERISA claims against *other* defendants (*see* Br. 19-69), he has declined to offer any challenge to the dismissal of the ERISA claims against Houlihan.

Lyon is express about this: In his statement of issues (Br. 3), he requests review of the question of "[w]hether the district court erred in determining the Second Amended Complaint failed to state any ERISA claims against the Director and Officer Defendants, State Street, and Reliance." But he does not mention his ERISA claims against Houlihan. Later, on page 20 of his brief, Lyon asserts that "[t]he district court erred in dismissing Lyon's ERISA claims against the D&O Defendants, Reliance, and State Street," but he again makes no mention of Houlihan. Lyon concludes the same paragraph by stating (Br. 21) that "[t]he district court accordingly erred in dismissing Counts 1, 3-21, and 25-27." Nowhere does Lyon reference counts 36 and 37 against Houlihan. And although Houlihan is named in count 21, Lyon does not even acknowledge, let alone attempt to refute, the district court's reason for dismissing count 21 against Houlihan, which is that it was not an ERISA fiduciary. *See* B025-030.

Later still, near the conclusion of his ERISA argument, Lyon asserts that "[t]he "district court['s] dismiss[al of the] ERISA claims against the D&O Defendants and State Street based on violations before November 26, 2012 as untimely . . . was error." *See* Br. 52. Again, Houlihan's name does not come up, nor does any explanation of why the dismissal of counts 21, 36, or 37 should be reversed as they concern Houlihan.

It would be no answer to say that Lyon's arguments concerning the other defendants apply equally to Houlihan, because they don't. To be sure, ERISA contains a six year limitations period subject to an exception "in the case of fraud or concealment" of the alleged wrong. 29 U.S.C. § 1113. Here, the district court dismissed counts 21, 36, and 37 against all parties in part because they were untimely and because there was no undue concealment. Although Lyon addresses this issue with respect to the *other* defendants, the grounds for asserting post-transaction concealment of the *other* defendants' alleged wrongdoing are inapplicable to Houlihan, whose role ended as soon as the transaction closed. Indeed, the allegations affirmatively foreclose any assertion of secretive acts by Houlihan. They establish that Houlihan's contingency fee was recorded and known by members of the ESOP committee. *See* B107, B297.

Moreover, the district court dismissed counts 21, 36, and 37 on additional grounds that were unique to Houlihan. *First*, it held that Houlihan was not an ERISA fiduciary and therefore could not be liable for breach of any such duty. *See* B025-030. *Second*, it held that there was no plausible allegation that Houlihan knowingly participated in a prohibited transaction, because there is no allegation that Houlihan received ESOP property. B030-032. Concerning those independently sufficient grounds for dismissing the ERISA claims against Houlihan, *Lyon says not one word*.

Accordingly, "by failing to present argument with respect" to these claims, Lyon "has waived any challenge to their dismissal on appeal." *Kaplan v. Shure Brothers*, 153 F.3d 413, 420 (7th Cir. 1998). Few rules of appellate procedure are better settled than that "[a] party that omits from its opening appellate brief any argument in support of its position waives or abandons that party's claim on appeal." *White v. United States*, 8 F.4th

547, 552 (7th Cir. 2021). In the absence of an argument for reversal, the court certainly will not "do counsel's work, create the ossature for the argument, and put flesh on its bones." *Bank of America v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

The Court often concludes from an appellant's decision to omit arguments relating to one appellee among several that the appellant waives those claims with respect to that appellee. *See, e.g., Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021); *Hammer v. Schwartz-Oscar*, No. 21-1718, 2022 WL 2828280, at *3 (7th Cir. July 20, 2022). It should do so here.

## B.    Lyon has abandoned his state-law claims against Houlihan

To his credit, Lyon is relatively up-front about why he has abandoned his ERISA claims against Houlihan. Near the end of his brief (at 77), he appears to acknowledge that if Houlihan is an ERISA fiduciary, or if it was providing services to an ERISA plan and being paid with plan assets, his sole recourse would be through ERISA alone, and his state-law claims would be preempted. By declining to challenge the district court's holding that "Houlihan was not an ERISA fiduciary and that the $8.1 million fee paid to Houlihan was not paid out of plan assets," Lyon's theory seems to go, he is freer on appeal to assert that he "does not have a remedy under ERISA" and that his state-law claims accordingly are not preempted. *Id.*

There are two glaring problems with that approach. *First*, Lyon abandoned the state-law claims after the FAC was dismissed without prejudice. He could have repleaded those claims in the SAC, but chose not to do so. There accordingly are no state-law claims contained in the operative complaint. *Second*, even if that were not so, Lyon again has

failed to challenge on appeal essential elements of the district court's decision. True, the district court held the state-law claims were preempted by ERISA, which Lyon has contested before this Court. But the district court also held that the state-law claims failed on their merits (A032-033), which Lyon does not address in his opening brief. The state-law claims are thus abandoned two times over.

### 1.   *The operative complaint contains no state-law claims*

**a.**   Consider first that there are no state-law claims stated in the SAC for the Court to review. Lyon interposed certain state-law claims against Houlihan in the *first* amended complaint. But those claims were dismissed by the district court with leave to amend, alongside all the other claims. *See* A004-055; Br. 12. Lyon took leave to amend with new allegations supporting claims under ERISA and the federal securities laws, but he elected no longer to press the state-law claims against Houlihan or anyone else in the superseding SAC. That is abandonment, clear and simple. He cannot now point to the FAC to resurrect claims that he could have repled but chose not to.

This point is not reasonably debated. "It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void." *Vitrano v. United States*, 643 F.3d 229, 234 (7th Cir. 2011) (quoting *Flannery v. Recording Industry Association of America*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004)). Thus, as Wright and Miller have explained, "[o]nce an amended pleading is interposed, the [prior] pleading no longer performs any function in the case." *Effect of an Amended Pleading*, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) (citing, among other cases, *Lubin v. Chicago Title & Trust Co.*, 260 F.2d 411, 413 (7th Cir. 1958) ("It is hornbook law that an amended complaint complete in itself and making no reference to nor adopting any portion of a prior

complaint renders the latter *functus officio*.")).

Against this background, the Court must "limit[] [itself] to the [second] amended complaint [and] must from it alone determine" whether any claims are adequately pleaded. *Lubin*, 260 F.2d at 413. Other courts agree. *See, e.g.*, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."); *Kolling v. American Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003) ("By omitting [a] claim [appearing in the initial complaint] from the amended complaint, [the plaintiff] abandoned it.").

The Court came to precisely this conclusion in *Prymer v. Ogden*, 29 F.3d 1208, 1211 (7th Cir. 1994). There, although the plaintiff "previously had alleged violations of due process in his original and first amended complaints," the Court noted that the operative "second amended complaint alleged only violations of his Fourth Amendment rights and not his due process rights." *Id.* at 1215. The Court thus refused to consider the due process claim on appeal, explaining that a plaintiff "cannot rely on [prior] complaints to further" claims that were "dropped" from the superseding operative complaint. *Id.* n.6. In support of that holding, the Court cited the "well established" rule "that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Id.* (quoting *Manning v. Ashland Oil Co.*, 721 F.2d 192, 197 (7th Cir. 1983)); *see also Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) ("Once the amended complaint was filed, however, it became the governing document in the case and any allegations and parties [from the original complaint] not brought forward [in the amended complaint] fell by the wayside." (citing *Collins v. Kibort*, 143 F.3d 331, 335 (7th Cir. 1998); *Wellness Community National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)).

Just so here. Although Lyon interposed state-law claims against Houlihan in the FAC, he dropped those claims in the SAC despite being granted leave to replead them. They accordingly "have been supplanted" and "abandon[ed]." *Vitrano*, 643 F.3d at 234. The FAC, meanwhile, is no help to Lyon—after the filing of the SAC, the FAC became "void" (*id.*) and "*functus officio*" (*Lubin*, 260 F.2d at 413), and it "no longer perform[ed] any function in the case" (6 Fed. Prac. & Proc. Civ. § 1476).

We anticipate that Lyon may rely on *Scott v. Chuhak & Tecson*, 725 F.3d 772 (7th Cir. 2013), and *Ball v. City of Indianapolis*, 760 F.3d 636 (7th Cir. 2014), for contrary support on this point. But neither of those cases is any help to him. In both, the Court considered the dismissal of claims included in an initial complaint but dropped from the operative amended complaint, where the dropped claims had previously been dismissed *with prejudice* and the plaintiffs were thus barred from reasserting them. *See Scott*, 725 F.3d at 782; Order 11, *Ball v. City of Indianapolis*, No. 12-cv-179, Dkt. 36 (S.D. Ind. Mar. 25, 2013). Of course, when "claims [are] dismissed with prejudice and without leave to amend, [a federal appellate court] will not require that they be repled in a subsequent amended complaint to preserve them for appeal." *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). But as to claims that could have been repleaded and were instead "voluntarily dismissed," an appellate court "will consider those claims to be waived if not repled." *Id.*; *accord Prymer*, 29 F.3d at 1215 n.6; *see also Young v. City of Mount Ranier*, 238 F.3d 567, 572-573 (4th Cir. 2001).

Here, the district court dismissed the FAC expressly with leave to amend *all* claims against *all* defendants. *See* A055 ("The dismissal is without prejudice, however, and Lyon will be allowed thirty days from the date of this order in which to file an amended

16

complaint curing the defects noted herein."). And Lyon could have attempted to replead his state-law claims to avoid preemption by adding new facts and theories that more clearly differentiated them from the ERISA claims that he continued to press against Houlihan. For example, he could have pled additional facts concerning the content and circumstances of the alleged misrepresentations, in an effort to more clearly remove the claim from ERISA's scope. Doing so would not have jeopardized his ERISA claims, given that "plaintiffs may plead in the alternative." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1119 (7th Cir. 1995). To preserve an appeal of the district court's dismissal, Lyon at minimum would have had to replead with new allegations intended to cure the factual state-law defects identified by the district court. But he "voluntarily" dropped the claims instead. *Lacey*, 693 F.3d at 928. Thus, unlike in *Scott* and *Ball*, the failure to replead the state-law claims in the SAC can be understood as nothing other than simple and clear-eyed abandonment of the unpled claims.

**b.** To apply any other rule here would introduce significant practical difficulties. It is unclear, for example, what a reversal of the dismissal of Counts 27, 28, and 29 of the FAC (the state-law claims) would mean in practice, given that the FAC is no longer the operative complaint. It would be no help to Lyon for the Court merely to reverse the September 6, 2022 dismissal of the SAC, because the SAC does not include the state-law causes of action reflected in Counts 27, 28, and 29 of the FAC. The Court would instead have to revive fragments of the long-since-defunct FAC, meaning that there would be two operative complaints in the case—or at least two operative fragments of complaints. That would offend the principle underlying Rule 15(a), that an amended complaint replaces the pleading that it amends. *See* 6 Fed. Prac. & Proc. Civ. § 1476.

It also would offend Rule 8. "[T]he purpose of Rule 8 is to provide a defendant with fair notice of the claims against him." *Hahn v. Walsh*, 762 F.3d 617, 632 (7th Cir. 2014). This requires a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But if defendants are required to stitch together different claims and different legal theories from prior versions of a complaint filed multiple times in a single case, they will never be able to have confidence of what, precisely, the claims are against them or the grounds supporting those claims. *See* 6 Fed. Prac. & Proc. Civ. § 1476 (such a scenario would be "confusing").

The problem is clearer in this case more than most—it has involved *three* complaints over *five* years that, taken together, comprise nearly *three thousand* paragraphs of allegations in support of more than *forty* claims against a rotating cast of more than *four dozen* defendants. There would be nothing fair about requiring defendants to sift through all that to divine what Lyon means to continue pressing and what he doesn't. That is why the rule is settled that a plaintiff must plainly state all claims against all defendants in a single operative pleading. *See id.*; *cf.* Fed. R. Civ. P. 15(a).

The SAC, which is the operative complaint here, includes no state-law claims against Houlihan or anyone else. Those claims are thus no longer in the case.

### 2.     *Regardless, Lyon has waived any challenge to the district court's rejection of his state-law claims on the merits*

Even if (contrary to fact) the FAC were the operative complaint, Lyon still would not have adequately preserved his challenge to the dismissal of the state-law claims. The district court held those claims not only preempted by ERISA, but that they also "fail for the independent reason that the FAC fails to state claims upon which relief can be granted." A032-033. The court methodically addressed the merits of each state-law

claim and concluded that each was legally insufficient as a matter of state law. *Id.* But in the one page that Lyon devotes to the state-law claims against Houlihan before this Court, he does not address that aspect of the district court's holding at all.

This failure to challenge every basis for the district court's dismissal of the state-law claims independently "doom[s]" Lyon's appeal. *United States v. Blagojevich*, 612 F.3d 558, 560 (7th Cir. 2010) (rejecting an appeal where "the appellants forfeited any opportunity to contest one of the two grounds on which they had lost in the district court"). "It is well settled that [the Court] will affirm a district court's judgment if any of several alternative holdings supports it." *Boogaard v. NHL*, 891 F.3d 289, 295 (7th Cir. 2018) (Barrett, J.). And when "there is one or more alternative holdings on an issue," the "failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue." *Maher v. City of Chicago*, 547 F.3d 817, 821 (7th Cir. 2008) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)). The waiver of a separate ground for dismissal means that "even if [the Court] were to reverse the district court" on the appealed issue, the claim "would remain dismissed." *Landstrom v. Illinois Department of Children & Family Services*, 892 F.2d 670, 678 (7th Cir. 1990); *see also Blagojevich*, 612 F.3d at 560 ("[I]f you lose for two independent reasons an appellate victory on one does not affect the judgment").

The district court stated explicitly that its evaluation of the merits of the state-law claims was an "independent reason" for relief. A033. Because Lyon has completely omitted any challenge to the district court's determination that "the FAC fails to state claims upon which relief can be granted" (*id.*), "any challenge to the alternate basis is waived and [the Court] may affirm" on that basis alone (*Griffin v. Bell*, 694 F.3d 817,

826 (7th Cir. 2012)). An appellant's "failure to advance on appeal any arguments with respect to [an] alternate ground means that any challenge to that ground is waived." *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001). And "because affirmance of the district court's alternate ground is dispositive of his appeal," the Court should decline altogether to reach the preemption issue. *Id.*

* * *

In sum, with respect to Houlihan, Lyon has given up the ghost—he has openly waived his appeal of the dismissal of the ERISA claims against Houlihan, and he long ago abandoned the state-law claims by declining to raise them in the SAC despite being given the opportunity to do so. He also has failed to address the merits of the state-law claims, despite that the district court dismissed them alternatively on the merits. Thus, as to Houlihan, the Court can and should affirm solely on the basis of Lyon's waiver and abandonment of his claims, with no need to address the ins-and-outs of limitations periods, equitable tolling, ERISA duties, or preemption principles.

## II. THE CLAIMS AGAINST HOULIHAN WERE CORRECTLY DISMISSED IN ANY EVENT

All that we have said so far is sufficient to affirm with respect to Houlihan while avoiding the meat of the issues. It nonetheless bears explanation that the district court's holdings were correct. Lyon's claims against Houlihan are hopelessly late. In any case, Houlihan is not a fiduciary under ERISA and did not receive any plan assets. And his state law claims are preempted, untimely, and lack merit in their own right.

### A.   The ERISA claims against Houlihan were correctly dismissed

#### 1.   *Lyon's decades-old ERISA claims against Houlihan are barred by ERISA's statute of repose*

**a.**  Lyon's ERISA claims against Houlihan were filed more than a decade too late. As the Supreme Court has recognized, "ERISA represents a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004)) (quotation marks omitted). Thus, ERISA "induc[es]" the formation of benefits plans "by assuring a predictable set of liabilities." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002).

Among the tools that Congress put in place to accomplish these goals is ERISA's statute of repose, which "bars an action brought more than six years after the end of the fiduciary breach, violation, or omission." *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 678 (7th Cir. 2014) (citing 29 U.S.C. § 1113(1)). Such statutes insulate would-be defendants "from the onerous task of defending against stale claims." *Ambrosia Land Investments, LLC v. Peabody Coal Co.*, 521 F.3d 778, 784 (7th Cir. 2008). Accordingly, the Supreme Court has noted that ERISA's "statute of repose . . . effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Intel Corp. Investment Policy Committee v. Sulyma*, 140 S. Ct. 768, 774 (2020).

The district court correctly recognized that ERISA's statute of repose applies to all three of the ERISA claims that Lyon asserted against Houlihan in the SAC. B023-025. The statute of repose applies "with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part." 29 U.S.C.

§ 1113. All three of Lyon's ERISA claims obviously arise "with respect to a fiduciary's breach." *Id.* Two of them—breach of fiduciary duty and engaging in prohibited transactions—apply on their face only to ERISA fiduciaries. *See* 29 U.S.C. § 1104 ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."); 29 U.S.C. § 1106 ("A fiduciary with respect to a plan shall not cause the plan to engage in a [prohibited] transaction.").

And the third—knowing participation in breaches of fiduciary duty—necessarily arises "with respect to" such a breach as well. 29 U.S.C. § 1113. The phrase "with respect to" expands the scope of the statute of repose, making clear that Congress meant to include not just fiduciary breaches themselves but any ERISA claims depending upon them, including those against non-fiduciaries. *See, e.g., Morse v. Republican Party of Virginia*, 517 U.S. 186, 207 (1996) ("The phrase 'votes cast with respect to candidates for public or party office' in § 14 is broad enough to encompass a variety of methods of voting beyond a formal election."); *In re Plant Insulation Co.*, 734 F.3d 900, 910 (9th Cir. 2013) ("The phrase 'with respect to' is generally understood to be synonymous with the phrases 'relating to,' 'in connection with,' and 'associated with.'").

Applying ERISA's six-year statute of repose is fatal to all of Lyon's ERISA claims. As the district court observed, all of the allegations against Houlihan "are based on conduct that occurred in relation to the 2001 sale of Appvion to its employees." B023. Lyon alleges no conduct by Houlihan after 2001, when the sale of Appvion to PDC closed. Yet the original complaint in this action was not filed until seventeen years later, on November 26, 2018. Thus, Lyon's allegations against Houlihan come more than a decade too late and are clearly barred.

**b.** ERISA's statute of repose contains one exception: "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. This exception is "harmoni[ous] . . . with the widely known doctrine of fraudulent concealment, which tolls the running of a statute of limitations when the defendant has prevented the plaintiff's timely discovery of the wrong she has suffered." *Radiology Center, S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (emphasis omitted). Thus, a plaintiff must plead "affirmative" acts "separate" and "independent" from "the underlying wrongdoing" (A022) that were intended to "hide the violation itself." *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013). Lyon "assume[d] the burden of pleading the fraudulent concealment tolling exception." B023. And because the exception calls upon the plaintiff to allege fraud, he must do so "under the heightened federal pleading standard of Rule 9(b)" of "particularity." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012); *accord* B023.

The district court correctly concluded that Lyon did not allege any such fraud or concealment by Houlihan. B024-025. For one thing, the allegations affirmatively foreclose any assertion of secretive acts by Houlihan. They establish, to the contrary, that "the ESOP Committee," whose interests Lyon represents in this litigation, "knew about Houlihan's role and compensation at the time of the 2001 transaction." B024 (quoting A031); *see also* B107, B297. Houlihan thus did not try to hide the particulars of its compensation—it signed an engagement letter with some of those responsible for the ESOP that directly laid out how it would be paid. Moreover, the allegations make clear that Houlihan was an advisor for PDC only, and not the ESOP (which had its own

financial advisors), and that this fact was known to Appvion. B117-B118. "Simply put, the pleadings did not support Lyon's conclusory allegations that Houlihan misrepresented or concealed anything." B024.

Lyon's allegations at most boil down to a "mere failure to disclose information." *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005). Lyon says, for example, that Houlihan's contingency fee was not revealed in the prospectus or "roadshow" attended by employees. *See, e.g.,* B118-120. But mere failure to disclose is insufficient to support a claim for tolling, which instead calls for allegations of "acts of concealment or affirmative misrepresentations." *Stephens*, 421 F.3d at 507; *see also United States v. Heon Seok Lee*, 937 F.3d 797, 810 (7th Cir. 2019) ("Where the fraud alleged deals with a half truth or material omission, we generally require proof of an [affirmative] act of concealment on the part of the defendant."). The SAC does not allege—at all, much less with particularity—any such "trick or contrivance intended to exclude suspicion and prevent inquiry." *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992) (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)).

Against this background, the district court was right to conclude that the SAC contained "no plausible allegation that Houlihan's conduct was not discoverable until more than a decade after the ESOP transaction." B025. Lyon's ERISA claims—all premised on innuendo regarding conduct now more than twenty years past—are precisely the sort of "stale and vexatious" claims (*Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 136 (1938)) that Congress sought to put a stop to by instituting ERISA's statute of repose.

### 2. *Houlihan was not a fiduciary of the ESOP (SAC counts 21, 36)*

Even if Lyon's allegations were not more than a decade overdue, they would be legally insufficient. To start, two of them—counts 21 and 36—fail for the simple reason that they are available only against ERISA fiduciaries. Houlihan was not an ERISA fiduciary, as the district court held. B025-030. Accordingly, Houlihan cannot be liable for breach of fiduciary duty or engaging in a prohibited transaction.

"Determining fiduciary status under ERISA is a functional inquiry." *Chesemore v. Fenkell*, 829 F.3d 803, 813 (7th Cir. 2016). That inquiry focuses on "control and authority over the plan." *Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993). Those "who ha[ve] no real power to control what the plan [does]" are not fiduciaries. *Id.*

Fiduciaries thus may be "either named or functional." *Burke v. Boeing Co.*, 42 F.4th 716, 725 (7th Cir. 2022). Since Lyon does not allege that Houlihan is named by any instrument of the ESOP as its fiduciary, his allegations must establish that Houlihan functions as such. That is a high bar to meet, especially given that "Houlihan had an explicit, public, and formal relationship with PDC, not with the ESOP." B027. "Merely 'playing a role' or furnishing professional advice is not enough to transform a company into a fiduciary." *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009). Simply having "[i]nfluence" is also not sufficient; a "firm [must] exercise[] 'final authority' over" the ESOP's affairs or investment decisions. *Id.*

The SAC does not in any way suggest that the ESOP "allocate[d] any discretionary authority" to Houlihan to control its affairs or that Houlihan had "voluntarily assumed any [such] authority." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 855 (7th Cir. 1997). Indeed, it is plain on the face of the SAC that Houlihan answered only to PDC, as

its "exclusive financial advisor." B107; *accord* B028 ("Houlihan had a formal relationship with only one side, PDC."). This role "did not vest [Houlihan] with any responsibility, authority, or discretion to make investment decisions with respect to" the ESOP, or otherwise direct it. *Burke*, 42 F. 4th at 726. As the district court explained, the mere "influence" alleged in the complaint is "a far cry from control." B028.

Absent allegations that Houlihan "exercise[d] any power of control, management or disposition with respect to monies or other property of an employee benefit fund, or ha[d] the authority or responsibility to do so," Lyon has failed to allege that Houlihan was an ERISA fiduciary, and thus counts 21 and 36, which are premised on that fact, necessarily fail. *Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th Cir. 1989).

### 3. Houlihan did not receive trust property (SAC count 37)

Lyon's claim that Houlihan knowingly participated in a breach of fiduciary duty by others is likewise insufficient because there is no allegation in the complaint that Houlihan received ESOP property. The district court correctly dismissed it. B030-032.

ERISA entitles plan participants, beneficiaries, or fiduciaries "to enjoin any act or practice which violates any provision of" Title I of ERISA or "to obtain other appropriate equitable relief . . . to redress such violations." *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 243 (2000) (quoting 29 U.S.C. § 1132(a)(3)). Such relief arguably can extend to non-fiduciaries who engage with fiduciaries in breaches of the fiduciaries' duties. *Id.* at 245. Crucially, however, the statute provides only for relief against non-fiduciaries that is "'equitable' in nature," such as "restitution of ill-gotten plan assets." *Id.* at 253 (quoting *Mertens*, 508 U.S., at 260). By the same token,

§ 1132(a)(3) does not make available claims for money damages, which are "of course, the classic form of legal relief." *Mertens*, 508 U.S. at 255.

The Court has parsed the difference between compensatory damages (not available under § 1132(a)(3)) and equitable monetary relief like restitution (available under § 1132(a)(3)) by observing that "[t]he remedy is properly regarded as equitable *only* if the plaintiff seeks the return of 'specifically identified funds that remain in the defendant's possession.'" *Bunte v. AIG*, 840 F.3d 448, 453 (7th Cir. 2016) (quoting *Montanile v. National Elevator Industry Health Benefit Plan*, 577 U.S. 136, 144 (2016)). In *Bunte*, the Court therefore held that the plaintiff had failed to state an ERISA claim under § 1132(a)(3) because he hadn't pointed to identifiable plan funds that could be ordered returned to the plan. *Id. Accord Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 214 (2002); *Montanile*, 577 U.S. 136, 151 (2016).

Thus, to state an ERISA claim under § 1132(a)(3) for knowing participation by a nonfiduciary in a fiduciary breach by another, a plaintiff must establish both that (1) the non-fiduciary illicitly received plan funds and (2) those funds remain specifically identifiable, such that a court may equitably restore them to the plan.

The SAC does not satisfy this test because the $8.1 million contingency payment that Houlihan received was not paid out of plan assets. Section 2510.3-101 of title 29 of the Code of Federal Regulations excludes from the definition of "plan assets" the assets of certain entities in which a plan has invested. One such excluded entity is an "operating company," which the regulation defines as "an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital." *Id.* § 2510.3-101(c)(1). PDC is

plainly such a company—it "owned the subsidiary Appvion," which "produced and sold paper products." B032. As the district court correctly held (*id.*), that plainly fits the definition under § 2510.3-101(c)(1).

**B.   The state-law claims against Houlihan were correctly dismissed**

### 1.   *The state-law claims are preempted by ERISA*

The state-law claims were also rightly dismissed, first because they are preempted. ERISA is a "comprehensive and reticulated statute" enacted "following almost a decade of studying the Nation's private pension plans." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980). It imposes "participation, funding, and vesting requirements" on employee benefit plans and "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983). Congress intended this "uniform body of benefits law" to "minimize the administrative and financial burden of complying with conflicting directives among the States or between the States and the Federal Government." *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 142 (1990). "Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries." *Id.*

ERISA's goal of uniformity would be impossible, however, if plans and their administrators were "subject to different legal obligations in different states." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001). ERISA thus contains an "express preemption clause" which is "terse but comprehensive." *Gobeille v. Liberty Mutual Insurance Co.*, 577 U.S. 312, 319 (2016). The clause specifies that its "provisions . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). With this language,

28

Congress "meant to establish pension plan regulation as exclusively a federal concern." *Alessi v. Rabyestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).

The district court correctly reasoned that Lyon's state-law claims fell within the ambit of ERISA's preemption clause because they "relate to" the formation of an "ERISA-governed plan." A032. The Supreme Court has held that a state-law cause of action is preempted where it "implicates an area of core ERISA concern." *Egelhoff*, 532 U.S. at 147. To be sure, a state-law cause of action is not preempted simply because "the plaintiff is an ERISA plan." Appellant's Br. 77. But equally true, a cause of action does not escape preemption simply because the defendant is not an ERISA fiduciary. *See Halperin v. Richards*, 7 F.4th 534, 554 (7th Cir. 2021) (holding state-law claims preempted as applied to non-fiduciary contractor). Rather, this Court has contrasted those cases that "implicate any of ERISA's fundamental concerns" with those where "the Plan is merely the context in which" the alleged wrong occurs. *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 779 (7th Cir. 2002). Cases in the former category are preempted; cases in the latter are not. *Id.*

Of course, some suits will present fact patterns in which the only tie to ERISA is that one side is a plan or the other is a fiduciary. In *Biondi*, for example, the Court considered claims against an ERISA beneficiary for fraudulently concealing his divorce in order to keep his ex-spouse enrolled in a benefit plan. 303 F.3d at 769. It held those claims not preempted, because they were only tangentially related to an ERISA plan as opposed to touching matters of core ERISA concern. *Id.* at 779. In *Morstein v. National Insurance Services*, 93 F.3d 715 (11th Cir. 1996), the Eleventh Circuit allowed the application of state law to allegedly fraudulent conduct of a non-ERISA entity insurance

29

agent who misled an employee to get them to change their insurance coverage. *Id.* at 723. The court analyzed the history of ERISA and concluded that "Congress did not intend for ERISA preemption to extend to state law tort claims brought against an insurance agent," who is not an "ERISA entit[y]." *Id.* at 722. And in *Leblanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998), the Fourth Circuit allowed state-law liability for garden-variety fraud in which the defendant allegedly supplied falsified financial information to trick an investor into investing—but the investor happened to be an ERISA-governed pension plan. *Id.* at 139-44, 149. These cases stand for nothing more than that ERISA does not sweep so broadly as to govern the everyday interactions of individuals simply because one side has some relation to an ERISA plan.

By contrast, the case here presents a clean example of generally applicable state-law causes of action applied to an area of core ERISA concern. Lyon's allegations (assumed true) concern Houlihan's role in devising a valuation and plan for the ESOP transaction. B451-453. The allegations thus bear directly on the legal requirements that both Houlihan and others allegedly bore in connection with a transaction expressly governed by ERISA. *See* 29 U.S.C. § 1107(d)(6) (describing ESOP transactions).

ERISA contains a detailed and reticulated scheme governing the creation of pension plans, specifying in painstaking detail which parties owe which duties to whom. *See* 29 U.S.C. § 1104(a)(1) (defining the duties of fiduciaries); 29 U.S.C. § 1102(a)(2) (defining fiduciaries). This Court has interpreted ERISA's many statutory provisions to spell out precisely when a fiduciary breaches these duties, fleshing out the details of the cause of action. *See, e.g., DeBruyne v. Equitable Life Assurance Society of the United States*, 920 F.2d 457, 464-65 (7th Cir. 1990). These roles and responsibilities are at the

very core of ERISA's structure, and interference by state law with geographically varying substantive requirements threatens to undermine the "federal common law of ERISA" that Congress has tasked courts with expounding. *Rice v. Panchal*, 65 F.3d 637, 645 (7th Cir. 1995).

The Court recently affirmed in *Halperin* that state-law causes of action are thus impermissible in circumstances similar to those here. The Court in *Halperin* considered state common-law claims against a non-fiduciary financial advisor. 7 F.4th at 554. An ESOP trustee had "hired [the advisor] for its expertise to help [the trustee] with the ESOP valuation process." *Id.* In holding that the claims against the non-fiduciary financial advisor were barred by ERISA's preemption clause, the Court explained that "if state law could burden" third-party contractors working for ESOP trustees, it would hinder the ability of ESOP trustees "to hire trusted experts whose thinking is not clouded with concerns about recommending actions to directors and officers that might be contrary to the corporation's interests." *Id.* "Otherwise, ERISA fiduciaries may not be able to confide fully in non-fiduciary contractors" to help them in meeting their obligations under ERISA. *Id.* Thus, state law cannot impose liability on contractors who perform services like "preparing [an] independent valuation of [an] ESOP's holdings." *Id.*

### 2.     *The state-law claims fail also as a matter of state law*

The district court also was correct that Lyon's state-law claims are meritless even if not preempted—a point unaddressed in the opening brief. In the long-since-superseded FAC, Lyon asserted fraud, negligent misrepresentation, and breach of fiduciary duty against Houlihan. *See* Br. 73 (citing FAC counts 27-29). Each was rightly dismissed.

31

**a.** Concerning the "fraud" claim, it bears clarification that there are three categories of fraud under Wisconsin law: "intentional misrepresentation, negligent misrepresentation, and strict responsibility misrepresentation." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 238 (Wis. 2004). Given that the FAC contained a separate count for negligent misrepresentation (B451) and that there were no allegations of strict liability, the district court correctly analyzed the "fraud" claim under Wisconsin's intentional misrepresentation caselaw. *See Tietsworth*, 677 N.W.2d at 237-38 (analyzing a claim for common-law fraud as one for misrepresentation).

For claims of both intentional and negligent misrepresentation, Wisconsin law requires either (1) affirmative misstatements or (2) omissions that make affirmative statements misleading. *See Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 213 (Wis. 2005) (quoting *Ramsden v. Farm Credit Services of North Central Wisconsin ACA*, 590 N.W.2d 1, 7 (Wis. Ct. App. 1998)) (intentional); *Malzewski v. Rapkin*, 723 N.W.2d 156, 163 (Wis. Ct. App. 2006) (negligent). But as the district court rightly held, the FAC did "not identify any [such] statements . . . or omissions." A034. And it was not enough for the FAC to rely on mere qualitative opinion statements of Houlihan employees and officials, which do not constitute statements of fact that can give rise to misrepresentation liability. *See, e.g.*, *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1085 (W.D. Wis. 2008). Nor were allegations of bare silence at the employee meetings sufficient to support intentional or negligent misrepresentation, because Lyon did not (even attempt to) establish that Houlihan had an independent "duty to disclose" information to Appvion's employees. *See Kaloti Enterprises*, 699 N.W.2d at 212; *see also* A034.

**b.**  Concerning the breach of fiduciary duty claim, the district court held that the FAC contained no allegations "that a formal agreement or commitment between the Houlihan Defendants and the ESOP created a fiduciary relationship or that there were special circumstances from which it can be assumed that a fiduciary obligation exists." A033; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 377 N.W.2d 605 (Wis. 1985). That conclusion was surely correct. The Wisconsin Supreme Court has held that a financial advisor owes no fiduciary duty to a client who retains for himself the ultimate authority over whether or not to invest. *Merrill Lynch*, 377 N.W.2d at 609. Lyon alleged that "the Houlihan Defendants were retained by PDC to advise PDC, not the ESOP," and further that "the ESOP and the Employee Participants were represented by a trustee and a third-party appraiser whose sole purpose was to act on the ESOP's behalf." A033. Although Wisconsin law permits an implied fiduciary relationship in special circumstances such as "inequality, dependence . . . or other conditions giving to one an advantage over the other" (*Noonan v. Northwest Mutual Life Insurance Co.*, 687 N.W.2d 254, 261 (Wis. Ct. App. 2004)), there was nothing like that alleged here.

**c.**  In all events, the state-law claims against Houlihan were untimely. Wisconsin law imposes a three-year statute of limitations on each of Lyon's state-law claims. *See* Wis. Stat. § 893.93(1)(b) (fraud); *Nierengarten v. Lutheran Social Services of Wisconsin*, 580 N.W.2d 320, 324-35 (Wis. 1998) (negligent misrepresentation); *Zastrow v. Journal Communications, Inc.*, 718 N.W.2d 51, 62-63 (Wis. 2006) (breach of fiduciary duty). In Wisconsin, a tort claim "accrue[s] on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Doe v. Archdiocese of Milwaukee*, 700 N.W.2d 180, 188 (Wis. 2005). As the district court explained, the facts alleged in the

FAC made clear that "the ESOP Committee knew about Houlihan's role and compensation at the time of the 2001 Transaction." B024 (quoting A031). Because neither the FAC nor the SAC alleges facts supporting a claim that Lyon (or the ESOP committee before him) was unable to discover Houlihan's supposed wrongdoing until decades later, the state-law claims are time-barred.

* * *

The critical holes in the state-law claims identified by the district court are perhaps sufficiently clear that Lyon opted not to re-allege those claims in the SAC or to challenge the district court's merits determination on appeal. Whatever his reasons, his decision to abandon these claims "dooms" them altogether. *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 644-65 (7th Cir. 2005). The Court need not, and ought not, go further than waiver to dispose of them or the ERISA claims against Houlihan in this appeal.

## CONCLUSION

The Court should affirm the dismissal with prejudice of all of the claims (in both the FAC and SAC) against Houlihan.

AUGUST 4, 2023                    Respectfully submitted,

                                 /s/ *Michael B. Kimberly*

                                 MICHAEL B. KIMBERLY
                                 CHARLES SEIDELL
                                 EMMETT WITKOVSKY-ELDRED
                                   *McDermott Will & Emery LLP*
                                   *500 N. Capitol Street NW*
                                   *Washington, DC 20001*
                                   *(202) 756-8000*

                                 THEODORE M. BECKER
                                 J. CHRISTIAN NEMETH
                                   *McDermott Will & Emery LLP*
                                   *444 W. Lake Street, Suite 4000*
                                   *Chicago, IL 60606*
                                   *312-984-6934*

                                 *Counsel for Houlihan Lokey*
                                 *Capital and Houlihan Lokey*
                                 *Financial Advisors*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Federal Rule 32(a)(7)(B)(i) and Circuit Rule 32(c) because it contains 10,044 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Circuit Rule 32(a)(5) and the type style requirements of Circuit Rule 32(a)(6).

AUGUST 4, 2023                    /s/ *Michael B. Kimberly*


**CERTIFICATE OF SERVICE**

I hereby certify that that on August 4, 2023, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

AUGUST 4, 2023                    /s/ *Michael B. Kimberly*