No. 23-1073

———————————

# United States Court of Appeals for the Seventh Circuit

———————————

APPVION, INC. RETIREMENT SAVINGS AND EMPLOYEE STOCK
OWNERSHIP PLAN, by and through Grant Lyon in his capacity as the ESOP
Administrative Committee of Appvion, Inc.,

*Plaintiff – Appellant*

v.

DOUGLAS P. BUTH, et al.,

*Defendants – Appellees*

———————————

On Appeal from the United States District Court for the Eastern District of
Wisconsin Civil Action No. 1:18-cv-01861, The Honorable William C. Griesbach

**BRIEF OF APPELLEE RELIANCE TRUST COMPANY**

Barbara A. Smith
Jeffrey S. Russell
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63012
Tel: (314) 259-2000
barbara.smith@bclplaw.com
jsrussell@bclplaw.com

Matthew J. Stanford
Bryan Cave Leighton Paisner LLP
Two N. Central Ave., Suite 2100
Phoenix, AZ 85004
matt.stanford@bclplaw.com
*Attorneys for Reliance Trust Company*

i

### APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, etc. v. Douglas P. Buth, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Reliance Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bryan Cave Leighton Paisner, LLP; Davis Kuelthau, s.c.; Amundsen Davis, LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Fidelity National Information Services, Inc.; Fidelity Information Services, LLC; Reliance Financial Corp.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Fidelity National Information Services, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Barbara A. Smith    Date: 1/26/2023

Attorney's Printed Name: Barbara A. Smith

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: Bryan Cave Leighton Paisner, LLP, 211 N. Broadway, Ste. 3600, St. Louis, MO 63102

Phone Number: 314-259-2000    Fax Number: 314-259-2020

E-Mail Address: barbara.smith@bclplaw.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-1073</u>

Short Caption: <u>Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan v. Douglas Buth, et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Reliance Trust Company</u>

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Bryan Cave Leighton Paisner, LLP; Davis Kuelthau, s.c.; Amundsen Davis, LLC</u>

(3)   If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

          <u>Fidelity National Information Services, Inc.; Fidelity Information Services, LLC; Reliance Financial Corp.</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          <u>Fidelity National Information Services, Inc.</u>

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>n/a</u>

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>n/a</u>

Attorney's Signature: <u>/s/ Jeffrey S. Russell</u>      Date: <u>8/4/2023</u>

Attorney's Printed Name: <u>Jeffrey S. Russell</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: <u>Bryan Cave Leighton Paisner, LLP, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO 63102</u>

Phone Number: <u>(314) 259-2725</u>      Fax Number: <u>(314) 552-8367</u>

E-Mail Address: <u>jeffrey.russell@bclplaw.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1073

Short Caption: Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan v. Douglas Buth, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Reliance Trust Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bryan Cave Leighton Paisner, LLP; Davis Kuelthau, s.c.; Amundsen Davis, LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Fidelity National Information Services, Inc.; Fidelity Information Services, LLC; Reliance Financial Corp.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Fidelity National Information Services, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Matthew J. Stanford     Date: 5/18/2023

Attorney's Printed Name: Matthew J. Stanford

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✔]

Address: Bryan Cave Leighton Paisner, LLP, 2 N. Central Ave., Ste. 2100, Phoenix, AZ 85004

Phone Number: 602-364-7068     Fax Number: 602-364-7070

E-Mail Address: matt.stanford@bclplaw.com

rev. 12/19 AK

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Circuit Rule 26.1, Appellee Reliance Trust Company discloses that it is a publicly held corporation and its parent corporations are Fidelity National Information Services, Inc.; Fidelity Information Services, LLC; and Reliance Financial Corp. Fidelity National Information Services, Inc. owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ vi

**STATEMENT OF JURISDICTION** ................................................ 1

**STATEMENT OF THE CASE** ....................................................... 1

**I.    FACTUAL BACKGROUND** .................................................. 2

    **A.    The Complaint Is A Mess Of Claims And Parties** ......................... 2

    **B.    The Complaint's Allegations Against Reliance Concern Just Two Valuations That Occurred During Its Short Tenure As Trustee, More Than A Decade After The 2001 Buyout** ....................................................... 3

**II.    PROCEDURAL HISTORY** .................................................... 4

    **A.    The District Court Dismissed The Previous Complaint In Its Entirety Because Lyon Failed To State A Single Viable Claim Against Any Defendant** ............................ 4

    **B.    The Operative Complaint Fails To Correct Any Deficiencies Identified By The First Dismissal, And This Complaint Is Also Dismissed In Another Long And Detailed Order** ....................................................... 8

**SUMMARY OF THE ARGUMENT** ............................................ 12

**STANDARD OF REVIEW** ............................................................ 15

**I.    All Claims Must Be Facially Plausible Under Rule 12(b)(6)** ............... 15

**II.    The Securities Fraud Claim Is Subject To The Heightened Pleading Requirement Of Rule 9(b) And The Private Securities Litigation Reform Act** ............................................... 16

**III.    This Court Reviews The Complaint's Dismissal De Novo** ................. 16

**ARGUMENT** ................................................................................. 17

**I.    THE COURT SHOULD AFFIRM DISMISSAL OF THE ERISA FIDUCIARY DUTY CLAIMS (COUNT I) BECAUSE THEY FAIL AS A MATTER OF A LAW OR INCLUDE NO PLAUSIBLE FACTS FROM WHICH LIABILITY COULD BE INFERRED** ............... 17

A.    The Complaint Contains No Plausible Allegations That Reliance Breached Its Duty of Prudence ..................................... 17

B.    The Complaint Contains No Plausible Allegations That Reliance Breached Its Duty Of Loyalty ........................................ 23

C.    The Complaint Contains No Allegations That Reliance Breached Any Duty Of Disclosure ................................................. 24

D.    Lyon's Argument On Appeal Fail To Identify Any Error In The District Court's Dismissal Of This Claim ............................ 26

II.    THIS COURT SHOULD AFFIRM DISMISSAL OF LYON'S CO-FIDUCIARY LIABILITY CLAIM (COUNT XXIX) BECAUSE IT FAILS TO MAKE PLAUSIBLE ALLEGATIONS THAT RELIANCE EITHER BREACHED ONE OF ITS FIDUCIARY DUTIES OR HAD ACTUAL KNOWLEDGE OF ANOTHER FIDUCIARY'S BREACH ...... 30

A.    The District Court Correctly Dismissed The Co-Fiduciary Liability Claim For Failure To Plead An Underlying Breach Or Actual Knowledge .......................................... 30

B.    Lyon's Argument On Appeal Fail To Identify Any Error In The District Court's Dismissal Of The Co-Fiduciary Liability Claim ................................................................. 33

III.    LYON'S FEDERAL SECURITIES FRAUD CLAIM (COUNT XXXI) FAILS BECAUSE IT DOES NOT PLAUSIBLY AND PARTICULARLY ALLEGE THAT RELIANCE HAD THE NECESSARY INTENT TO DECEIVE WHEN IT USED SRR'S VALUATIONS ............................................................. 34

A.    The District Court Correctly Dismissed The Complaint's Federal Securities Fraud Claim For Failure To Plausibly Plead That Reliance Had The Required Intent to Deceive ...... 35

B.    Lyon's Argument On Appeal Fails To Identify Any Error In The District Court's Dismissal Of The Federal Securities Fraud Claim ................................................................. 38

C.    Other Grounds Supported By The Record Called For The Dismissal Of The SAC's Federal Securities Fraud Claim ......... 41

1.    The Securities Fraud Claim Fails To Plausibly And Particularly Allege Any Material Misstatement Or Omission By Reliance ......................................................... 442

2.    The Federal Securities Fraud Claim Fails Plausibly And Particularly To Allege Loss Causation Attributable To Any Misstatement Or Omission By Reliance .................................................................... 44

3.    At A Minimum, The Five-Year Statute Of Repose Bars Lyon's Federal Securities Fraud Claims Related To SRR's June 30, 2013 Valuation ...................... 45

**CONCLUSION** ............................................................................. 47

**CERTIFICATE OF COMPLIANCE** .................................................. 48

**CERTIFICATE OF SERVICE** ......................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Albert v. Oshkosh Corp.*,
　47 F.4th 570 (7th Cir. 2022) ........................................................ 12, 17, 18, 24

*AnchorBank, FSB v. Hofer*,
　649 F.3d 610 (7th Cir. 2011) ........................................................................ 16

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..............................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................... 15, 17, 32, 33

*Brieger v. Tellabs, Inc.*,
　629 F. Supp. 2d 848 (N.D. Ill. 2009) ............................................ 12, 18, 21, 28

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*,
　241 F. Supp. 3d 610 (E.D. Va. 2017),
　*aff'd*, 919 F.3d 763 (4th Cir. 2019) ................................................................. 21

*Burke v. Boeing Co.*,
　42 F.4th 716 (7th Cir. 2022) .................................................................... 13, 25

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
　394 F.3d 126 (3d Cir. 2004) ......................................................................... 16

*Chesemore v. Alliance Holdings Inc.*,
　886 F. Supp. 2d 1007 (W.D. Wis. 2012),
　*aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) ......... 12, 23

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
　916 F.3d 589 (7th Cir. 2019) ..................................................................*passim*

*Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*,
　20 F.4th 303 (7th Cir. 2021) .................................................................... 15, 16

*Dale v. NFP Corp.*,
　___ F. Supp. 3d ___, No. 20-cv-02942,
　2023 WL 2306825 (N.D. Ill. Mar. 1, 2023) .................................................... 24

*DiLeo v. Ernst & Young*,
　901 F.2d 624 (7th Cir. 1990) ........................................................................ 37

*Donovan v. Cunningham*,
    716 F.2d 1455 (5th Cir. 1983) .......................................................... 31

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ....................................................................... 45

*Free v. Briody*,
    732 F.2d 1331 (7th Cir. 1984) .......................................................... 31

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004) ............................................................ 37

*Haywood v. Massage Envy Franchising, LLC*,
    887 F.3d 329 (7th Cir. 2018) ..................................................... 14, 41

*Herrington v. Household Int'l, Inc.*,
    No. 02 C 8257, 2004 WL 719355 (N.D. Ill. Mar. 31, 2004) ............................ 25

*Higginbotham v. Baxter Int'l Inc.*,
    495 F.3d 753 (7th Cir. 2007) ............................................... 36, 37, 41

*Hill v. The Tribune Co.*,
    No. 05 C 2602, 2006 WL 2861016, at *20 (N.D. Ill. Sept. 29, 2006),
    *aff'd sub nom. Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) ................. 25

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ........................................................... 25

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189 (3d Cir. 2007), *as amended* (Nov. 20, 2007) .......................... 46

*In re K-Tel Int'l, Inc. Secs. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ........................................................... 37

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
    No. 08–C–797, 2010 WL 1287058 (E.D. Wisc. Mar. 30, 2010) ......................... 44

*Keach v. U.S. Trust Co.*,
    240 F. Supp. 840 (C.D. Ill. 2002) ..................................................... 31

*Kenseth v. Dean Health Plan, Inc.*,
    610 F.3d 452 (7th Cir. 2010) ........................................................... 24

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ........................................................... 43

*McCann v. Hy-Vee, Inc.*,
   663 F.3d 926 (7th Cir. 2011) .......................................................... 46

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ............................................... 13, 32, 34

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) .......................................................... 37

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
   266 F. Supp. 3d 1154 (E.D. Wis. 2017),
   *aff'd*, 895 F.3d 933 (7th Cir. 2018) .................................................. 43

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) .......................................................... 23

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   673 F. Supp. 2d 718 (S.D. Ind. 2009),
   aff'd, 679 F.3d 952 (7th Cir. 2012) .................................................. 36

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) .................................................... 35, 36

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ...................................................... 30, 31

*Silverman v. Motorola, Inc.*,
   772 F. Supp. 2d 923 (N.D. Ill. 2011) .......................................... 36, 41

*Smith v. Williams*,
   819 F. Supp. 2d 1264 (M.D. Fla. 2011) .......................................... 30

*Stanard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) ...................................................... 15, 16

*Stein v. Smith*,
   270 F. Supp. 2d 157 (D. Mass. 2003) .............................................. 31

*Su v. Johnson*,
   68 F.4th 345 (7th Cir. 2023) .......................................................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................*passim*

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007) ....................................................*passim*

*United States ex. rel. Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374 (7th Cir. 2003) ............................................................. 16

*United States v. Harris*,
    394 F.3d 543 (7th Cir. 2005) ............................................................... 9

*White v. Marshall & Ilsley Corp.*,
    N. 10-CV-311, 2011 WL 2471736 (E.D. Wis. June 21, 2011),
    *aff'd*, 714 F.3d 980 (7th Cir. 2013)................................................. 31

*Wyninger v. New Venture Gear, Inc.*,
    361 F.3d 965 (7th Cir. 2004) ...................................................... 18, 19

**STATUTES**

15 U.S.C. § 78u4(b)(1).......................................................................... 44

15 U.S.C. § 78u4(b)(1)(B).................................................................... 42

15 U.S.C. § 78u4(b)(2)(A).................................................................... 35

26 U.S.C. § 401(a)(28)(c) ...................................................................... 2

26 U.S.C. § 409(l)(1) .............................................................................. 2

26 U.S.C. § 4975(e)(7) ............................................................................ 2

28 U.S.C. § 1658(b)(2) ................................................................... 46, 47

29 U.S.C. § 1103(a) ................................................................................ 2

29 U.S.C. § 1104(a)(1)(A)(i) ............................................................... 23

29 U.S.C. § 1104(a)(1)(B) ................................................................... 17

29 U.S.C. § 1105(a) .............................................................................. 13

29 U.S.C. § 1105(a)(1) .................................................................... 30, 31

29 U.S.C. § 1105(a)(1)-(3) ................................................................... 30

29 U.S.C. § 1105(a)(2) .................................................................... 30, 31

29 U.S.C. § 1105(a)(3) .............................................................. 22, 30, 31

29 U.S.C. § 1106(a)(1) ............................................................................ 6

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................ 13, 35

Fed. R. Civ. P. 12(b)(6) ................................................................................ 15

Fed. R. Civ. P. 54(b) ................................................................................ 11

Fed. R. App. P. 32(a)(5) ................................................................................ 49

Fed. R. App. P. 32(a)(6) ................................................................................ 49

Fed. R. App. P. 32(a)(7)(B)(i) ................................................................................ 49

Fed. R. App. P. 32(f) ................................................................................ 49

Fed. R. App. P. 32(g) ................................................................................ 49

**OTHER AUTHORITIES**

70 C.J.S. *Pensions* § 44 (2023) ................................................................................ 23

Black's Law Dictionary (11th ed. 2019) ................................................................................ 27

## STATEMENT OF JURISDICTION

Appellee Reliance Trust Company ("Reliance") agrees that the jurisdictional summary in Appellant's brief is complete and correct.

## STATEMENT OF THE CASE

The district court has *twice* dismissed the claims at issue in this complaint for failure to meet basic pleading requirements. This appeal arises from that second dismissal. All of the claims against Reliance fail as a matter of law, including because the plaintiff, despite two attempts, still cannot allege any facts against this defendant necessary to support his allegations. The Court should affirm.

The plaintiff is Grant Lyon—on behalf of an ERISA-regulated employee stock ownership plan entitled the Appvion, Inc. Employee Stock Ownership Plan (the "ESOP"). The claims arise from the ESOP's formation in November 2001—that is, its purchase of stock in paper company Appvion, Inc.'s holding company, the Paperweight Development Corporation ("PDC"). The locus of the allegations is that at the time the sale occurred (more than 20 years ago), Appvion's corporate managers, ESOP Committee members, and financial advisors breached their fiduciary duties by inducing the buyout at fraudulently inflated stock prices without disclosing conflicts of interest. Reliance, an independent trustee who inherited its role years after the transaction, played no part in the ESOP's creation, only coming onto the scene as a successor-trustee nearly 12 years after the transaction occurred (and for a limited period of time spanning just 15 months). According to Lyon, the buyout plan was just the beginning of a massive fraud in which numerous independent defendants engaged, such that *each time* PDC stock was valued, the ESOP overpaid, eventually

1

leaving employees empty-handed when subsequent market changes drove the company into bankruptcy nearly two decades later. The story is fanciful, and the complaint fails because it lacks plausible facts against each of the many defendants it names in its wide-ranging alleged scheme.

## I.     FACTUAL BACKGROUND

### A.     The Complaint Is A Mess Of Claims And Parties.

Lyon's first complaint levied 19 counts against 59 defendants (and also included 70 additional placeholders for unnamed fictitious entities). It spanned approximately 200 pages and more than 800 numbered paragraphs, but was dismissed for failure to state a claim against any defendant. The second amended complaint (the dismissal of which led to this appeal) literally doubled down, spanning 400 pages and 1432 numbered paragraphs. But the amended complaint added no substance—instead, it replayed the same conclusory allegations found insufficient in round one, but this time spun each allegation as to each defendant.

To provide some context: At the core of this case is an employee stock ownership plan, regulated under 26 U.S.C. § 4975(e)(7), which allows participants to make tax-favorable investments in their employer's stock. *See* 26 U.S.C. § 409(l)(1). When company stock is not publicly traded, ERISA requires an independent appraiser to perform annual valuations of it. *See* 26 U.S.C. § 401(a)(28)(C). ESOP assets are held in a trust established for the plan, and a plan trustee has "exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a).

Appellee Reliance Trust Company was the ESOP's trustee for a limited period of time (well after its November 2001 creation). Reliance retained Stout Risus Ross, Inc. ("SRR") to conduct valuations. The amended complaint also names other defendants who served as trustees during other times, as well other defendants who were officers and directors of the company at the time of the creation of the ESOP.

At bottom, the complaint alleges that the officers and directors conspired with financial advisors, trustees, and valuation firms to over-value company stock and cause employees to overpay for it. This allegedly began at the ESOP's creation, when the officer and director defendants, along with Houlihan, State Street, Willamette, and others, duped Appvion employees into investing in the stock purchase by fraudulently concealing the company's fair market value. Dkt. 191 ¶¶ 6–7, 20–23.

The complaint then alleges that the fraud continued for decades, through multiple other trustees and valuation firms, all of whom allegedly joined in this years-long conspiracy to defraud Appvion employees by consistently overvaluing PDC's stock until the company eventually went bankrupt in 2017. *Id.* ¶¶ 27, 335, 567, 587, 610–13. Each new valuation (it complains) was a new fraud. The complaint offers no explanation why these disparate actors over many years—many of them lacking any incentive to do so—would engage in such a scheme.

## B. The Complaint's Allegations Against Reliance Concern Just Two Valuations That Occurred During Its Short Tenure As Trustee, More Than A Decade After The 2001 Buyout.

Reliance's alleged involvement in this case did not occur until more than a decade after the buyout and lasted only briefly. Reliance served as independent trustee of the ESOP from April 1, 2013 to June 30, 2014, when the successor trustee,

Argent Trust Company, took over. *Id.* ¶¶ 57–58, 161, 573, 579. Reliance's obligations as independent trustee are governed by ERISA and the terms of the trust agreement entered into with the ESOP. Pursuant to these obligations (and in carrying out its fiduciary obligations), Reliance retained SRR to appraise PDC's stock value. *Id.* ¶¶ 56, 579–80. SRR had knowledge of and experience with the ESOP and how to value it, as it had served as advisor to the prior independent trustee. Reliance oversaw and presented two of SRR's stock valuations to Appvion during its short tenure as trustee—one dated June 30, 2013, and the other dated December 31, 2013. *Id.* ¶ 578.

The plaintiff, Lyon, was appointed to replace the entire ESOP Committee in August 2017. *Id.* ¶ 27. Upon assuming that role, Lyon allegedly discovered that all of the valuations since the ESOP's creation, including those that occurred during Reliance's tenure as trustee, fraudulently overstated PDC's stock value and misrepresented Appvion's financial condition, thereby forcing the ESOP to overpay for PDC stock. *Id.* ¶¶ 27–28. Lyon reported his purported findings to Appvion's Board of Directors in September 2017. The paper company subsequently filed for bankruptcy protection. *Id.* ¶¶ 28, 335.

## II.    PROCEDURAL HISTORY

### A.    The District Court Dismissed The Previous Complaint In Its Entirety Because Lyon Failed To State A Single Viable Claim Against Any Defendant.

Despite spanning more than 200 pages (including 825 paragraphs), the shotgun nature of the previous complaint assured its dismissal as to all defendants. Dkt. 186. As relevant here, the previous complaint included six claims against

Reliance: four counts under ERISA—for breach of the fiduciary duties of prudence, loyalty, monitoring, and disclosure under ERISA § 404 (Count I), engaging in a prohibited transaction under ERISA § 406 (Count IV), a declaratory judgment claim seeking to void Appvion's agreement to indemnify Reliance under ERISA § 410 (Count VI), and co-fiduciary liability under ERISA § 405 (Count VII)—and two counts of securities fraud—one under Wisconsin securities law (Count XIII) and the other under federal securities law (Count XIV).  Dkt. 77 ¶¶ 516–39, 573–93, 604–13, 614–19, 701–14, 734–53.

Notably, the first complaint levied all six of these claims against Reliance and the three other independent trustees collectively, without bothering to differentiate them, instead alleging wrongdoing under all counts against the "Trustee Defendants."  *Id.* ¶¶ 215, 269, 273, 280.  Criticizing SRR's valuations as "materially and fraudulently overstated," the complaint alleged that the trustees violated ERISA and committed securities fraud by failing to detect the fraud committed at the ESOP's creation and correct the alleged errors in the valuations before presenting them to Appvion.  *Id.* ¶ 44, 241, 475, 477, 480, 706–08, 711–13, 733, 737, 739, 753.

The district court identified the complaint's deficiencies when it dismissed all six claims.  The court dismissed Count I as to each of the fiduciary duties that Reliance allegedly breached.  As to the duty of prudence, the complaint failed to make any "allegations from which the court can infer that *any* of the Trustee Defendants acted imprudently."  Dkt. 186 at 38 (emphasis added).  As to the duty of loyalty, the complaint failed to assert that Reliance's conduct was disloyal—or, in the court's

words, the complaint contained no allegations that Reliance acted in a "self-interested [way that] . . . resulted in a detriment to the Employee Participants." *Id.* at 39. As to the duty to monitor other fiduciaries, Reliance had "essentially no appointment or removal powers" over the other fiduciaries. Dkt. 186 at 39–40. And as to the duty to disclose conflicts of interest, the complaint contained no allegations that Reliance made any of the alleged misrepresentations or omissions to the employee owners. Instead, the complaint alleged that these statements "were made by Appvion and the ESOP Committee," not by Reliance, which was "not required to continuously disclose information about Appvion's financial condition." *Id.* at 40.

The court also dismissed Count IV, alleging co-fiduciary liability. As the claim applied to SRR, it was dismissed on the basis that Reliance could not be liable under a co-fiduciary theory when SRR was not a fiduciary at all. The court stated that Lyon "cannot assert a [co-fiduciary liability] claim" against Reliance as a matter of law given Lyon's concession that SRR is not an ERISA fiduciary. *Id.* at 41. As to the other defendants, the complaint failed its most basic obligation, because it included only "a conclusory assertion," and "identifie[d] no specific facts from which it can be inferred that [Reliance] had actual knowledge of any breaches by [former ESOP Committee members or former Appvion Board members] or knowingly participated [in] or concealed an act or omission by those individuals that [Reliance] knew to be a breach." *Id.* at 42.

Next, the court dismissed Count VI, the prohibited transaction claim. ERISA specifically prohibits certain types of transactions between a plan and a "party in

interest." 29 U.S.C. § 1106(a)(1). The court held that this claim was deficient because the complaint contained no allegations that Reliance could "cause or require the ESOP to engage in a transaction" because it made no "allegations that [Reliance] had discretionary authority to demand that [any] transaction take place." Dkt. 186 at 43. Nor did the prior complaint allege that Reliance "dealt with the Plan's assets for their own interest or received any consideration from a party dealing with the Plan in connection with a transaction involving the Plan's assets." *Id.*

As to Count VII, the declaratory judgment claim, the court dismissed this count because the indemnification agreement is not barred by ERISA as a matter of law. ERISA's bar on agreements for a plan to indemnify a fiduciary did not apply here because the agreement "was entered into between [Reliance] and Appvion, not the Plan." *Id.* at 44. The indemnification agreement also included all necessary carve-outs, namely, it absolved Appvion of any duty to indemnify "where [Reliance] has breached its fiduciary duties." *Id.*

The court also dismissed Count XIII, Lyon's federal securities fraud claim. Here again, the complaint failed to meet the basic requirements under the federal rules, this time for pleading fraud. Specifically, the allegation that Reliance "directly or indirectly, intentionally and willfully" made material misstatements or omissions (1) failed to "identify the particular fraudulent or untrue statements" that Reliance allegedly made, much less (2) provide "facts from which the court can plausibly infer scienter." *Id.* at 45. Indeed, aside from collecting fees for its work—which "[s]tanding alone" fails to support an inference that Reliance "was motivated to deliberately

engage in a scheme to commit fraud"—the complaint made no allegations supporting a plausible inference of scienter. *Id.*

Finally, the court dismissed Lyon's Wisconsin securities fraud claim in Count XIV as inapplicable to ERISA plans. Such claims are unavailable when "based on interests in a contributory or noncontributory pension or welfare plan subject to ERISA." *Id.* at 46.

**B.    The Operative Complaint Fails To Correct Any Deficiencies Identified By The First Dismissal, And This Complaint Is Also Dismissed In Another Lengthy, Carefully Reasoned Order.**

Following the court's careful and lengthy order dismissing the prior complaint, Lyon filed the second amended (and now operative) complaint. Dkt. 191. Though even more bloated than the first (this one clocked in at nearly 400 pages and 1,342 paragraphs), it likewise fails to meet the basic pleading requirements under the federal rules, and does not correct the errors identified in the court's prior dismissal order.

The current complaint re-alleges four of the six counts alleged previously against Reliance: three under ERISA for breach of fiduciary duties (prudence, loyalty, and disclosure) (Count I), engaging in a prohibited transaction (Count XXIII), and co-fiduciary liability (Count XXIX)—and one for federal securities fraud (Count XXXI).[1] Dkt. 191 ¶¶ 581–93, 1110–19, 1168–73, 1180–1205.

---

[1]    The Second Amended Complaint abandons the claims against Reliance for failure to monitor and for a declaratory judgment voiding the indemnification agreement between Reliance and Appvion. These claims were not addressed on appeal and are no longer at issue. Lyon has also abandoned his prohibited transaction claim on appeal following the district court's second dismissal of the claim in Count XXIII. Therefore, this Court should "consider them waived because they

The operative complaint's fundamental theory simply regurgitates that of the first. Lyon still claims that Reliance failed to detect and correct allegedly inflated stock valuations stemming from a 20-year-old transaction. Thus, except for Lyon's claims against Argent, which survived dismissal the second time around, the district court issued another lengthy, carefully reasoned order dismissing all of the claims, this time with prejudice.[2] Dkt. 233, 235, 262, 281.

The court again dismissed each of the ERISA fiduciary duty claims in Count I. As to the prudence claim, aside from "two fresh factual allegations," the second complaint merely restates the same conclusory allegations that had already been "rejected . . . as insufficient to state a claim." Dkt. 235 at 47. And the first "new" allegation—that Reliance failed to reasonably investigate (and document its investigation of) SRR's valuation process—was "merely a repeat of the same prudence allegations found in the [previous complaint]," which had "already been considered and rejected by this court." *Id.* at 48. As for the other "new" allegation—that Reliance failed to address SRR's alleged rounding errors—SRR's practice of rounding "in both directions—up and down" had caused only a "small deviation" in PDC's stock price

---

were not raised in the opening brief." *United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005).

[2]     The district court's dismissal took the form of an adoption of a report and recommendation authored by a magistrate judge. The court adopted the magistrate's report and recommendation with the "exception of footnote 6 on page 16," Dkt. 262 at 1. For that reason, this brief does not distinguish between the report and recommendation and the district court's order adopting it (which is the legally operative dismissal for purposes of this appeal).

and, thus, could not suffice on its own to "transform [Lyon's] pleading from implausible to plausible." *Id.* at 49.

The court likewise found the complaint's allegation that Reliance should have recognized and addressed the alleged breaches of its predecessor fiduciaries "conclusory and unsupported." *Id.* at 49–50. For the loyalty claim, as before, "gaining a steady stream of administrative fees" (that is, *being paid for its work* as an independent trustee) remained "inadequate to support a claim" that Reliance had a motive to be disloyal. *Id.* at 50. For the disclosure claim, the allegations that Reliance misleadingly remained silent in the face of misinformation that Appvion and the ESOP Committee communicated to its employees "essentially regurgitated the same factual background that [Plaintiff] alleged in the FAC." *Id.* at 51.

Additionally, the court again dismissed the prohibited transaction claim in Count XXIII. Lyon continued to allege that Reliance purchased PDC stock at the ESOP Committee's direction and, thus, did "not allege that Reliance had the requisite level of autonomy or control to cause the transaction." *Id.*; *see also id.* at 41–44.

The court again dismissed the co-fiduciary liability claim in Count XXIX. The latest complaint merely repeated the previous complaint's failure "to plead 'actual knowledge' or that Reliance breached any fiduciary duty to the ESOP." *Id.* at 52. Indeed, the amended complaint added absolutely nothing to the count that was previously found deficient. It was, instead, a "mirror-image" of the allegations that the court had "already rejected . . . as insufficient to support claims of co-fiduciary liability." *Id.* at 45; *see also id.* at 44–46.

As to the federal securities claim in Count XXXI (and its heightened pleading standard), the court again dismissed. As with its predecessor, the latest complaint provided "no cogent or compelling reason to conclude that Reliance possessed the intent to deceive." *Id.* at 53. The mere "allure of ongoing administrative fees," which the court had already rejected as inadequate when made in the first amended complaint, "is the kind of generalized motivation that exists in every case." *Id.* It does not satisfy the heightened pleading standards for fraud under the federal rules or the federal securities statute.

The court accordingly dismissed all of the claims against Reliance for a second time, as it did nearly all of Lyon's other claims against the other defendants. Dkt. 262. However, the court denied dismissal of Lyon's claims against Argent for breach of its fiduciary duty of loyalty (Count II) and for engaging in a prohibited transaction (Count XXIV). *Id.* at 2. When Lyon later conceded "that further amendments to the complaint would not cure the defects in its claims against" the non-Argent defendants, the district court dismissed those claims with prejudice and entered final judgment under Fed. R. Civ. P. 54(b). Dkt. 281 at 2–3, 5. This appeal followed.

## SUMMARY OF THE ARGUMENT

The standard for surviving dismissal is well-known and no complaint—not even a 400-page one—can survive unless it pleads plausible facts against each defendant that, if true, could support liability as a matter of law.  Even with a fresh look at the pleadings, and with the benefit of Lyon's arguments on appeal, this Court should affirm the district court's *second* dismissal of Lyon's claims against Reliance for failure to state a claim.

**I.**     Lyon's claims in Count I that Reliance breached its fiduciary duties of prudence, loyalty, and disclosure under ERISA are textbook "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Count I's imprudence claim consists of a half-hearted recitation of alleged errors in SRR's valuations of PDC's stock—errors that Lyon only discovered years after their use—followed by a threadbare claim that Reliance knew or should have known about them.  Dkt. 191 ¶¶ 581–87.  It includes no plausible factual allegations that permit an inference of imprudence by Reliance "at the time" of those valuations' use, which is when ERISA requires they be judged. *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 863 (N.D. Ill. 2009). The complaint's failure to allege any conflict of interest for Reliance, much less a "substantial" one, *Chesemore v. Alliance Holdings Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016), similarly leaves the complaint devoid of any plausible allegations that Reliance engaged in the kind of "self-dealing" required to infer disloyalty, *Albert v. Oshkosh Corp.,* 47 F.4th 570, 583 (7th Cir. 2022).  And the complaint fails altogether to allege any "intentionally misleading statement" or "material omission" by Reliance to the employee owners

using SRR's allegedly erroneous valuations. *Burke v. Boeing Co.*, 42 F.4th 716, 729 (7th Cir. 2022).

**II.**    Lyon's co-fiduciary claim against Reliance in Count XXIX fails to include any plausible allegation that Reliance either breached one of its fiduciary duties or actually knew of any alleged breaches by another fiduciary (SRR or the ESOP Committee). *See* 29 U.S.C. § 1105(a). Instead, Lyon adopts the familiar, albeit legally inadequate strategy of listing the alleged breaches by others and inviting the Court to credit his say-so as an adequate showing that Reliance knew about them. Dkt. 191 ¶ 1171. But such naked assertions of knowledge, stripped of any plausible factual allegation to support that inference, "are not entitled to [a] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

**III.**    Lyon's federal securities fraud claim against Reliance in Count XXXI falls similarly short. The complaint includes no plausible allegations that Reliance acted with the requisite intent to deceive when it used SRR's allegedly inflated valuations, *certainly* does not "state with particularity" facts that permit a "strong inference" of intent, as required under the Private Securities Litigation Reform Act of 1995 and Fed. R. Civ. P. 9(b) to allege fraud. Once more, the complaint simply asks the Court to infer intent from conclusory allegations that Reliance "reviewed, approved, and adopted" SRR's valuations, which Lyon himself only later determined to be "drastically inflated." Dkt. 191 ¶¶ 1186, 1196. But the law forbids claims of "fraud by hindsight," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (citations omitted), and aside from the promise of collecting fees, which is

inadequate as a matter of law, the complaint omits any facts that "suffice to establish fraudulent intent," *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007).

Count XXXI fails for two additional reasons—namely, that it nowhere plausibly and particularly alleges (1) any material misstatement or omission by Reliance or (2) how that misstatement or omission proximately caused the ESOP's alleged injuries. *Id.* at 843. Although not "relied upon by the district court" below, both reasons for dismissal are "supported by the record" and, therefore, independently support affirmance of Count XXXI's dismissal. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 332–33 (7th Cir. 2018).

## STANDARD OF REVIEW

### I.     All Claims Must Be Facially Plausible Under Rule 12(b)(6).

A complaint that fails to state a claim on which relief may be granted must be dismissed. Fed. R. Civ. P. 12(b)(6). The requirements of Rule 12(b) are well-known: To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy "facial plausibility," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To rise "above the speculative level," a claim must allege "something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Of course, the court must "accept the allegations in the complaint as true" and "draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021). These requirements have some teeth, and their purpose is to ensure that defendants "know what [they are] defending against." *Stanard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011). Thus, dismissal under Rule 8 is required when a complaint fails to include the factual basis that (if true) could render a defendant liable. Stated more colorfully, "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud. *Id.* at 800 (quoting

*United States ex. rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

## II.    The Securities Fraud Claim Is Subject To The Heightened Pleading Requirement Of Rule 9(b) And The Private Securities Litigation Reform Act.

Over and above the requirements of Rule 12(b), claims alleging fraud (including securities fraud) are subject to the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). Fraud claims must be stated with particularity. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). Heightened pleading requirements are "rigorously applied in securities fraud cases." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).

## III.    This Court Reviews The Complaint's Dismissal De Novo.

This Court reviews de novo a district court's grant of a motion to dismiss for failure to state a claim. *Crescent Plaza*, 20 F.4th at 307. In doing so, the Court "may affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court." *Hayhood*, 887 F.3d at 332–33 (citation omitted).

**ARGUMENT**

## I. THE COURT SHOULD AFFIRM DISMISSAL OF THE ERISA FIDUCIARY DUTY CLAIMS (COUNT I) BECAUSE THEY FAIL AS A MATTER OF LAW OR INCLUDE NO PLAUSIBLE FACTS FROM WHICH LIABILITY COULD BE INFERRED.

Count I alleges that Reliance breached its duties of prudence, loyalty, and disclosure under ERISA. Dkt. 191 ¶¶ 572–600. The factual basis for this claim is that Reliance improperly relied on SRR's allegedly inflated stock valuations. *Id*. On appeal (as below), Plaintiff opines that the complaint includes the necessary factual allegations from which a court could infer liability. But *ipse dixit* does not make it so: examining this count for factual allegations against Reliance reveals that the second amended complaint, like the complaint before it, alleges "mere conclusory statements," *Iqbal*, 556 U.S. at 678, which fail to provide "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

### A. The Complaint Contains No Plausible Allegations That Reliance Breached Its Duty of Prudence.

Count I includes no plausible allegations of imprudence on the part of Reliance, and the Court should affirm dismissal on that ground. The duty of prudence requires a plan fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Yet plan fiduciaries need not "act as personal investment advisers to plan participants." *Albert,* 47 F.4th at 578–79 (citation omitted). "And the ultimate outcome of an investment is not proof

of imprudence." *Id.* (citations and quotation marks omitted). "Rather, it is necessary to examine what reasonably prudent fiduciaries would have done based on the information available *at the time*." *Brieger*, 629 F. Supp. 2d at 863 (emphasis added).

Count I contains only legal conclusions and lacks plausible facts. It claims that Reliance acted imprudently by relying on valuations by SRR that were "not reasonably justified" due to the alleged errors those valuations contained. Dkt. 191 ¶ 581. The supposed errors include: (1) using inflated projections; (2) ignoring the conflict of interest created by the compensation plans for the executives who made those projections; (3) improperly accounting for PDC's debts; (4) including a control premium; and (5) using rounded numbers. *Id.* ¶¶ 582–87. (The Opening Brief ("Op. Br.") summarizes these complaints on appeal at pages 43–44.) But that is not enough.

Proof of occurrence is not evidence of knowledge. That is, even assuming the veracity of these later-discovered errors in SRR's valuations, simply listing them and asserting that Reliance knew or should have known about them does nothing to support an inference that Reliance acted imprudently by using those valuations at the time. Lyon's alleged discovery of valuation errors years later, only after learning the "ultimate outcome" of the ESOP's investment in PDC stock, "is not proof of imprudence." *Albert,* 47 F.4th at 579. To hold otherwise would be just as baseless as finding that an employer knew about a coworker's harassment of an employee solely because a subsequent investigation into the employee's complaint confirms that the alleged harassment occurred. *Cf. Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) ("An employer can be held responsible for the conduct of coworkers

[under Title VII] only if it knew or should have known about the harassment and failed to take reasonable steps to remedy the harassment once it was on notice.") (quotations and citation omitted). The law demands more.

The allegations in Count I, however, do not deliver. They do not include any facts suggesting that *Reliance* acted imprudently under the circumstances *at that time*. Lyon does not allege what Reliance did, how that conduct was imprudent at the time it relied on SRR's valuations, or how relying on those valuations was unreasonable. On appeal, Lyon argues that "it [i]s impossible" to provide specific facts without discovery, and "[a]llegations that Reliance knew or should have known of specific errors in the valuations that it reviewed and approved state underlying facts from which the district court could infer that Reliance employed an imprudent process in reviewing the valuations." Op. Br. at 44. This is a textbook conclusory allegation: the Court should infer liability at the time the valuations were presented because the company ultimately failed. Absolutely no facts support any such inference that Reliance acted imprudently. Lyon's say-so is no substitute. Under Lyon's theory of liability, all valuations plausibly may be called imprudent if there is some future bad outcome for the company being valued. In which case any fiduciary who relies in good faith on a valuation can be second-guessed after the fact, subjecting that fiduciary to costly discovery and trial. That outcome may benefit plaintiff's lawyers, but it's not faithful to the plausibility standard the law requires.

In fact, Count I is little more than a disaggregated duplicate of the imprudence claim that Lyon previously levied against all of the trustees collectively. But while

the previous complaint failed because it improperly proceeded on the basis of group liability (all the "Trustee Defendants" were lumped together under generalized grievances), the second amended complaint made no *substantive* change, instead merely disaggregating inadequate allegations he had previously levied en mass. What Lyon attempted to hide by improper group pleading cannot be cured by separating his conclusory group allegations into a lengthier but no less conclusory amended complaint. This superficial change was not lost on the district court when it dismissed this claim for the second time. *See* Dtk. 235 at 47 ("The court has already rejected these factual allegations as insufficient to state a claim."). The court had already rejected the same allegations about inflated projections and executive conflicts of interest. *See* Dkt. 77 ¶¶ 269–74, 133–48; Dkt. 186 at 38–39. It had already rejected the same allegations about unaccounted-for debt. *See* Dkt. 77 ¶¶ 241, 247–62; Dkt. 186 at 38. And it had already rejected the same allegations about a control premium. *See* Dkt. 77 ¶¶ 207–14, 241, 311–16; Dkt. 186 at 38. In other words, the operative complaint simply takes the same inadequate allegations initially made against the Trustee Defendants "as a group" in the previous complaint and reasserts them against Reliance individually. Dkt. 186 at 38. It does nothing to correct the previous complaint's reliance on "conclusory allegations," nor does it try to "explain how [Reliance] engaged in conduct that would have been imprudent at the time of the valuation or how [Reliance's] reliance on a particular assessment was unreasonable." *Id.*

The allegation about SRR's use of rounded numbers in its valuations repeats the same fatal mistakes. Specifically, Lyon asserts that "Reliance adopted the valuations despite [SRR]'s practice of rounding numbers up or down throughout the valuation process," yet it omits any facts showing that Reliance knew about this practice, much less about any allegedly deleterious impact on SRR's valuations. Dkt. 191 ¶ 587. The operative complaint (like its predecessor) also fails to explain how Reliance's use of those valuations was imprudent "at the time" (as opposed to with the benefit of hindsight). *Brieger*, 629 F. Supp. 2d at 863. Moreover, the valuations' use of rounded numbers, standing alone, is not inherently imprudent. *Cf. Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 640 (E.D. Va. 2017) (unexplained rounding up "compounds [trustee's] other oversights"), *aff'd*, 919 F.3d 763 (4th Cir. 2019). This is especially true where, as here, such rounding occurs in both directions ("up and down"). *Cf. id.* at 639 ("[T]he fiduciary should be concerned if the valuation experts are *consistently rounding up* when approximating values.") (emphasis added). Dkt. 191 ¶ 587.

The complaint's failure plausibly to allege that Reliance acted imprudently by using SRR's allegedly erroneous valuations in turn forecloses its procedural imprudence allegations with respect to those same supposed errors. Like its allegations about the errors themselves, the complaint's claim that Reliance imprudently failed to investigate, document, and notify the ESOP about those errors omits any factual allegations supporting that conclusion. *Id.* ¶¶ 590, 592. The Court

need not credit these "mere conclusory statements" as true; therefore, Count I's procedural imprudence allegations also must fail.[3] *Iqbal*, 556 U.S. at 678.

Lyon's remaining imprudence allegations focus on Reliance's failure to remedy the alleged breaches of its predecessor trustee, State Street.[4] Dkt. 191 ¶¶ 594–99. But Lyon's imprudence claim against State Street in Count III duplicates Count I's imprudence claim against Reliance—namely, by alleging that State Street failed to detect and correct SRR's same alleged valuation errors—and, thus, fails for the same reasons as Count I. *See id.* ¶¶ 663–68.

Like the other imprudence claims, Lyon's allegations that Reliance failed to remedy State Street's breaches are themselves conclusory and, therefore, subject to dismissal. To be liable under ERISA, Reliance must have *known* about State Street's past breaches and failed to remedy them. *See* 29 U.S.C. § 1105(a)(3) (imposing co-fiduciary liability "if [the defendant] has knowledge of a breach by such other fiduciary"). The complaint contains no facts supporting any inference that Reliance had such knowledge at the time it served as trustee. The mere fact that Reliance used an allegedly inflated valuation that occurred on State Street's watch does not, on its own, suggest that Reliance "was aware that its predecessor fiduciaries . . . had

---

[3]     The complaint suffers still another defect. It is self-defeating by alleging that Reliance failed to document anything while elsewhere alleging that Reliance kept "minutes of [a] meeting" during which Reliance "discussed [the valuation] with Stout" before approving it. Dkt. 191 ¶ 584.

[4]     The Opening Brief only challenges the dismissal of this claim as to the alleged breaches of State Street. Op. Br. at 48. Lyon has therefore abandoned the SAC's allegations that Reliance is also liable for failing to remedy the alleged breaches of previous ESOP Committee members. *See* Dkt. 191 ¶ 596.

breached their fiduciary duties in connection with those prior valuations." Dkt. 191 ¶ 596. Yet these "mere conclusory statements" are all that Count I alleges. *See Iqbal*, 556 U.S. at 678. The Court should affirm Count I's dismissal.

### B. The Complaint Contains No Plausible Allegations That Reliance Breached Its Duty of Loyalty.

Count I also omits any plausible allegations that Reliance was disloyal. The duty of loyalty requires a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). "The duty protects beneficiaries by barring any conflict of interest that might put the fiduciary in a position to engage in self-serving behavior at the expense of beneficiaries." *Su v. Johnson*, 68 F.4th 345, 352 (7th Cir. 2023) (quotations and citation omitted); *see also* 70 C.J.S. *Pensions* § 44 (2023) ("The duty of loyalty requires ERISA plan fiduciaries to keep the interests of beneficiaries foremost in their minds, taking all steps necessary to prevent conflicting interests from entering into the decision-making process."). In the simplest terms, "conflicts of interest must be shunned." *Perez v. Bruister*, 823 F.3d 250, 261 (5th Cir. 2016). Where there is no conflict of interest, by contrast, there is no disloyalty. "[T]he critical question is whether there was a conflict of interest." *Id.* at 262.

Count I fails to allege any conflict of interest for Reliance, much less a sufficiently "substantial" one making it liable under ERISA. *Chesemore*, 886 F. Supp. 2d at 1041. It does not include any facts from which a court could infer why Reliance would be disloyal or how its adoption of SRR's allegedly inflated valuations inhered

to Reliance's benefit at the ESOP's expense.  This makes sense, given that Reliance acted as a successor (and directed) trustee.  Simply put, the operative complaint makes "no allegations that [Reliance] engaged in self-dealing at the expense of the Plan."  *Albert*, 47 F.4th at 583.

The district court dismissed the previous complaint's disloyalty claim for the same defect.  Dkt. 186 at 39 ("The FAC fails to assert any action taken by the Trustee Defendants that was self-interested and resulted in a detriment to the Employee Participants.").  Apart from disaggregating its single, consolidated disloyalty claim against all of the trustees into cookie-cutter claims against each one, the current complaint repeats its predecessor's fundamental failure to make any factual allegations that plausibly show the existence of a conflict of interest.  Therefore, the district court correctly dismissed Lyon's disloyalty claim against Reliance the second time around.  This Court should affirm.

### C.    The Complaint Contains No Allegations That Reliance Breached Any Duty of Disclosure.

Count I also omits any plausible allegations of an actionable nondisclosure by Reliance.  The duty to disclose "requires a plan fiduciary 'not to mislead a plan participant or to misrepresent the terms or administration of an employee benefit plan.'"  *Dale v. NFP Corp.*, ___ F. Supp. 3d ___, No. 20-cv-02942, 2023 WL 2306825, at *7 (N.D. Ill. Mar. 1, 2023) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010)).  To be actionable in this Circuit, the alleged nondisclosure must be "either an intentionally misleading statement, or a material omission where the fiduciary's silence can be construed as misleading."  *Burke*, 42 F.4th at 729

(citation omitted); *accord Howell v. Motorola, Inc.*, 633 F.3d 552, 571 (7th Cir. 2011) ("Contrary to the plaintiffs' position (and to the position of other circuits), this court has required some deliberate misstatement before it finds a violation of the ERISA duty to disclose material information.") (citations omitted).

The allegations in Count I identify neither an intentionally misleading statement nor a misleading material omission by Reliance. Instead, the complaint alleges in conclusory fashion that Reliance failed to "disclose and inform" the employee owners about the same supposed errors in SRR's valuations that Reliance was allegedly imprudent and disloyal in failing to detect and correct. Dkt. 191 ¶ 592. But as the district court observed in dismissing the prior complaint's nondisclosure allegations, the relevant communications that supposedly constitute misstatements came from the ESOP Committee and Appvion—not from Reliance, which had "no general duty to continuously disclose information about the financial condition of the employer." *Hill v. The Tribune Co.*, No. 05 C 2602, 2006 WL 2861016, at *20 (N.D. Ill. Sept. 29, 2006), *aff'd sub nom. Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008). Dkt. 186 at 40. Indeed, this Court has never endorsed such a "burdensome and unprecedented level of disclosure." *Herrington v. Household Int'l, Inc.*, No. 02 C 8257, 2004 WL 719355, at *8 (N.D. Ill. Mar. 31, 2004).

Moreover, the operative complaint includes no factual allegations that plausibly show how Reliance's alleged silence was misleading. It is unclear exactly what new information the employee owners might have gleaned if Reliance had simply spoken up. It is not as though Reliance and the ESOP Committee disagreed

about PDC's stock value.  Exactly the opposite.  Ergo, if Reliance was imprudent for failing to detect the alleged errors in the first place, Reliance did not know about them and, thus, could not have acted misleadingly by not disclosing them.  Conversely, if Reliance colluded with the ESOP Committee to defraud the employee owners about PDC's stock value, the complaint fails plausibly (much less particularly) to state facts to support the existence of such a scheme.  The district court rightly dismissed the nondisclosure claim against Reliance, and this Court should affirm.

### D.     Lyon's Arguments On Appeal Fail To Identify Any Error In The District Court's Dismissal Of This Claim.

Lyon's arguments for reversal lack merit.  At the outset, the Opening Brief (at 35–36) misstates the district court's reasons for dismissing the previous complaint's breach of fiduciary duty claim by suggesting that "the court did not address their substance" but simply found their "group-pled allegations" inadequate to survive dismissal.  Not quite.  Although the district court did reject the Lyon's initial attempt to assert his fiduciary duty claims against the so-called Trustee Defendants "as a group," the court did not stop there.  Dkt. 186 at 38.  It also found that the prior complaint "fail[ed] to explain how each trustee engaged in conduct that would have been imprudent at the time of the valuation or how each trustee's reliance on a particular assessment was unreasonable."  *Id.*  These same shortcomings beset the current complaint.   By asserting near-identical claims against each individual trustee, the operative complaint offers nothing more than a superficial fix for its predecessor's deeper substantive flaws.  Lyon simply disaggregates the improperly group-pled *and substantively deficient* claims that failed the last time.  As the district

court recognized below, Lyon's latest breach of fiduciary duty claim against Reliance is all but indistinguishable from the one he previously asserted against the trustees collectively.  *See* Dkt. 235 at 47–51.  And as shown above, its conclusory allegations fall far short of stating a plausible claim against Reliance.

The Opening Brief's footnote (at 35 n.8) fixating on the district court's purported reliance on Rule 9(b) to dismiss Lyon's ERISA claims falls similarly short.  The district court never said that it was applying Rule 9(b) to anything other than the fraud allegations in those claims.  Lyon admits as much.  *See* Op. Br. at 35 n.8 ("The district court did not mention which standard it applied to the allegations against Reliance. . . . [I]t is unclear whether the district court applied either Rule 9(b) or a heightened plausibility standard to claims that State Street and Reliance breached their duty of prudence.").  But that is beside the point.  Even an erroneous application of Rule 9(b) is not grounds for reversal where, as here, the allegations fail even to satisfy Rule 8.  As shown above, Count I's conclusory allegations fall far short of even this less demanding standard.

The Opening Brief's attempt (at 44) to challenge the district court's characterization of Count I's allegations as conclusory is equally unavailing.  Again, simply reciting a list of alleged errors in SRR's valuations then asserting that Reliance knew or should have known about them is the epitome of conclusory.  Regardless whether SRR's valuations contained any errors, Count I omits "the underlying facts on which the inference [of Reliance's knowledge of those errors] is based."  *Conclusory*, Black's Law Dictionary (11th ed. 2019).  A contrary conclusion

would errantly shift the imprudence standard from what Reliance knew "based on the information available at the time," *Brieger*, 629 F. Supp. 2d at 863, to what Lyon knew years later. This argument accordingly fails.

The same goes for the Opening Brief's argument (at 45–46) that the district court made inappropriate factual determinations in dismissing Count I. The district court's comment about the relatively de minimus impact of SRR's use of rounding on PDC's stock valuation occurred only after the district court had already (correctly) found both that the SAC's rounding allegations were not "*ipso facto* indicative of imprudence" given that SRR "rounded in both directions—up and down" and that Count I omits any other non-conclusory factual allegations suggestive of imprudence. Dkt. 235 at 49. The court did not, as Lyon suggests, examine each allegation in isolation then reject Lyon's imprudence claim only because no single factual allegation on its own sufficed to show imprudence. It simply (and rightly) refused to credit Count I's conclusory allegations, which in turn left nothing for the court to credit in addition to SRR's use of rounding, which alone could not support an inference of imprudence. The court's observation about the limited effect that such rounding ultimately had on PDC's stock price was not just apparent from the face of Count I's allegations (and, thus, was not an improper factual determination). But more importantly, it was inconsequential to the court's ultimate conclusion that rounding in both directions is not enough to show imprudence. The Court should reject this argument as well.

The district court's comment casting doubt on the Count I's allegations about Reliance's failure to investigate SRR's valuation process also made no difference to its dismissal. Contrary to the Opening Brief's argument (at 47), the district court's observation—that the separate allegation that Reliance kept meeting minutes showing that Reliance and SRR discussed the valuation before its adoption rendered "questionable" its allegations that Reliance did not document anything about its assessment of SRR's valuation—did not secure Count I's dismissal. By then, the court had already rejected these conclusory allegations as "merely a repeat of the same prudence allegations" in the previous complaint. Dkt. 235 at 47–48. In fact, the court itself noted that "[r]egardless" of the dubiousness of its allegations about documentation, the imprudence claim in Count I "is a re-hash of what has already been found lacking" the first time around. *Id.* at 48. As shown above, the operative complaint's cosmetic fix of its predecessor's group-pled breach of fiduciary duty claims did nothing to fix its failure "to explain how each trustee engaged in conduct that would have been imprudent at the time of the valuation or how each trustee's reliance on a particular assessment was unreasonable." Dkt. 186 at 38. Irrespective of the district court's commentary on the allegations, Count I's dismissal was correct as a matter of law, and this Court should affirm.

II.  **THIS COURT SHOULD AFFIRM DISMISSAL OF LYON'S CO-FIDUCIARY LIABILITY CLAIM (COUNT XXIX) BECAUSE IT FAILS TO MAKE PLAUSIBLE ALLEGATIONS THAT RELIANCE EITHER BREACHED ONE OF ITS FIDUCIARY DUTIES OR HAD ACTUAL KNOWLEDGE OF ANOTHER FIDUCIARY'S BREACH.**

Count XXIX asserts an ERISA claim against Reliance for co-fiduciary liability. Dkt. 191 ¶¶ 1168–73. This claim requires plausible allegations that Reliance either (1) participated knowingly in, or undertook knowingly to conceal, an act or omission that it knew to be a breach; (2) failed to follow its fiduciary duties, thereby enabling another fiduciary to commit a breach; or (3) had knowledge of the breach committed by another fiduciary and made no reasonable efforts to remedy that breach. 29 U.S.C. § 1105(a)(1)–(3). The district court correctly dismissed Count XXIX (twice) for failing to allege that Reliance either breached one of its fiduciary duties or had "actual knowledge" of another fiduciary's breach. Dkt. 235 at 52. This Court should affirm.

A.  **The District Court Correctly Dismissed The Co-Fiduciary Liability Claim for Failure to Plead an Underlying Breach or Actual Knowledge.**

ERISA does not impose co-fiduciary liability vicariously. Section 1105(a)(2) requires as a predicate to liability that a complaint first plausibly allege that the defendant trustee breached its own fiduciary duties. 29 U.S.C. § 1105(a)(2); *accord Smith v. Williams*, 819 F. Supp. 2d 1264, 1283 (M.D. Fla. 2011) ("Plaintiffs must first state a claim for imprudence by one fiduciary before stating a claim for co-fiduciary liability."). Meanwhile, "sections 1105(a)(1) and (3) require actual knowledge of the [co-fiduciary's] breach." *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011); *accord Keach v. U.S. Trust Co.*, 240 F. Supp. 840, 844 (C.D. Ill. 2002) ("It is well-

established that actual knowledge by a fiduciary is required in order for co-fiduciary liability to attach . . . ."). Specifically, "the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach." *Renfro*, 671 F.3d at 324 (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983)); *accord Stein v. Smith*, 270 F. Supp. 2d 157, 175 (D. Mass. 2003) (rejecting allegation that co-fiduciaries "knew, or should have known" of alleged breaches as "inadequately pleaded" under ERISA, which "requires an allegation of *knowing* participation in or facilitation of the underlying breach."). The complaint does not plausibly allege that Reliance knew any of this.

Count XXIX fails to state a claim under § 1105(a)(2) because Count I fails plausibly to allege that Reliance breached its fiduciary duties under ERISA. Because "this claim is predicated on the existence of underlying breaches of fiduciary duty," Lyon's failure to state a claim for breach of fiduciary duty means he "cannot state a claim for co-fiduciary breach" under § 1105(a)(2). *White v. Marshall & Ilsley Corp.*, No. 10-CV-311, 2011 WL 2471736, at *12 (E.D. Wis. June 21, 2011), *aff'd*, 714 F.3d 980 (7th Cir. 2013); *cf. Free v. Briody*, 732 F.2d 1331, 1335–36 (7th Cir. 1984) (finding co-fiduciary liability under § 1105(a)(2) *only after* finding breach of fiduciary duty).

Count XXIX also fails because it does not plausibly allege that Reliance had "actual knowledge." *See* 29 U.S.C. § 1105(a)(1), (3). Its allegations do not permit an inference that Reliance knew of any breach—either by SRR, which had prepared the allegedly inflated valuations, or by the ESOP Committee, which had prepared the

allegedly excessive projections upon which those valuations were based.  Instead, the complaint falls back on familiar habits by conclusorily alleging that Reliance "was aware of . . . the ESOP Committee members' . . . breaches," followed by a pithy list of purported breaches—namely, that Reliance (1) "approved and adopted inflated valuations;" (2) "allowed [SRR] to base its valuations on inflated projections prepared by ESOP Committee members" (3) "allowed the ESOP Committee to control communications to the Employee Owners;" (4) "purchased stock from PDC and repurchasing [sic] stock from current and former employees at inflated prices;" and (5) "failed to remedy the breaches of its prior fiduciaries"—that the district court was apparently expected to accept at face value.[5]  Dkt. 191 ¶ 1171.  But, as explained above, such "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth."  *McCauley*, 671 F.3d at 616.  Nor does the allegation that "the ESOP Committee . . . met with [SRR] and Reliance to discuss the valuation," Dkt. 191 ¶ 1237, tend to "raise a right to relief above the speculative level" Lyon's claim that Reliance *actually knew* that the ESOP Committee was breaching its fiduciary duties, *Twombly*, 550 U.S. at 555.  "After excising the allegations not entitled to the presumption," there is simply nothing left of Count XXIX to consider.  *McCauley*, 671 F.3d at 616.

The district court highlighted these same deficiencies when it dismissed the Lyon's prior co-fiduciary liability claim.  Stripped of its "conclusory assertion that

---

[5]    Lyon's opposition to Count XXIX's dismissal below reinforces this understanding with its insistence that "Reliance knew, *from the face of the valuations*, that they were inflated."  Dkt. 209 at 23 (emphasis added).

[Reliance] knew of the [ESOP Committee members'] breaches and failed to remedy those breaches," the previous complaint "identifie[d] no specific facts from which it can be inferred that [Reliance] had actual knowledge of any breaches by the [ESOP Committee members] or knowingly participated [in] or concealed an act or omission by those individuals that [it] knew to be a breach."  Dkt. 186 at 42.  The operative complaint repeats the same shortcomings.  Apart from remedying its predecessor's original attempt to levy its claims against all three trustees collectively, its allegations are substantively identical to those that the district court rightly found lacking the first time around.  The district court did not err by dismissing Count XXIX on the same basis.  This Court should affirm.

### B.     Lyon's Arguments On Appeal Fail To Identify Any Error In The District Court's Dismissal Of The Co-Fiduciary Liability Claim.

The Opening Brief (at 51) offers only a perfunctory assertion that Count XXIX alleges a co-fiduciary liability claim by stating a breach of fiduciary duty claim in Count I and by asserting "non-conclusory facts that allow an inference of actual knowledge."  It does not identify what those facts are, never mind where they appear in the operative complaint or how they support an inference of actual knowledge.  Nor does Lyon offer any authority suggesting that allegations like those in Count XXIX constitute "something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  Instead, Lyon's argument—namely, that "State Street and Reliance necessarily knew the financial projections formed the basis of the valuations, knew they were prepared by the ESOP Committee Defendants, knew that the ESOP

Committee Defendants had conflicts of interest, and knew that the projections were consistently inflated, supports a finding of actual knowledge that the ESOP Committee Defendants were breaching their fiduciary duties"—merely repeats the same assertions that the district court rightly rejected (twice) below.[6]  Because such conclusory assertions "are not entitled to [a] presumption of truth," Lyon's arguments for reversal fail, and this Court should affirm.  *McCauley*, 671 F.3d at 616.

## III.    LYON'S FEDERAL SECURITIES FRAUD CLAIM (COUNT XXXI) FAILS BECAUSE IT DOES NOT PLAUSIBLY AND PARTRICULARLY ALLEGE THAT RELIANCE HAD THE NECESSARY INTENT TO DECEIVE WHEN IT USED SRR'S VALUATIONS.

Count XXXI alleges that Reliance committed federal securities fraud.  Dkt. 191 ¶¶ 1180–1205.  "To state a claim for federal securities fraud, [Lyon] must allege (1) a material misrepresentation or omission by [Reliance]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Cornielsen*, 916 F.3d at 598 (quotations and citations omitted).  Federal securities fraud claims also must meet the particularity requirements of PSLRA and the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *Id.*  The district court correctly dismissed Lyon's federal securities fraud claim against Reliance (twice) for

---

[6]    The Opening Brief's argument (at 51) about the "[t]he facts relating to BemroseBooth" refers only to its assertion that "*State Street* knew the valuations should be subtracting Appvion's pension liability" and, thus, has no bearing on the district court's dismissal of Count XXIX, which omits any reference to BemroseBooth (emphasis added).

failure to plausibly and particularly plead that Reliance possessed the required intent to deceive.  Dkt. 235 at 52.  This Court should affirm.

**A.     The District Court Correctly Dismissed The Complaint's Federal Securities Fraud Claim For Failure To Plausibly Plead That Reliance Had The Required Intent To Deceive.**

To meet PSLRA's "[e]xacting pleading requirements" for scienter, *Tellabs*, 551 U.S. at 313, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A).  "That 'required state of mind' is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756 (7th Cir. 2007).  Accordingly, the Supreme Court has instructed courts "to dismiss the complaint unless 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (quoting *Tellabs*, 551 U.S. at 310).

Count XXXI falls far short of this standard.  For starters, it includes no plausible, much less particularized allegations supporting an inference that Reliance actually knew about or recklessly disregarded the alleged falsity of SRR's valuations. Instead, its scienter allegations consist entirely of conclusory assertions that Reliance knew about SRR's "drastically inflated" valuations because Reliance had "reviewed, approved, and adopted" them.  Dkt. 191 ¶¶ 1186, 1189, 1196–98.  But "there is a big difference between knowing about the [valuations] from [SRR] and knowing that the

[valuations] are false." *Higginbotham*, 495 F.3d at 758; *accord Pugh*, 521 F.3d at 694 (same); *see also Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 747 (S.D. Ind. 2009) ("[N]o inference of scienter may be permissibly drawn from Defendants' positions in the company."), *aff'd*, 679 F.3d 952 (7th Cir. 2012).

This is especially true where, as here, "[h]indsight is the only basis of the proposed inference." *Higginbotham*, 495 F.3d at 759.  Indeed, PSLRA demands a "strong inference" precisely "to ward off allegations of fraud by hindsight." *Tellabs*, 551 U.S. at 320 (quotations and citation omitted).  For this reason alone, Lyon's "conclusory allegations of scienter derived from [Reliance's] mere access to information"—information Lyon only later purportedly determined to be false— cannot satisfy PSLRA's particularity requirement.  *Cornielsen*, 916 F.3d at 602; *see also Silverman v. Motorola, Inc.*, 772 F. Supp. 2d 923, 937 (N.D. Ill. 2011) (finding no scienter absent evidence that stock transaction was "unusual or suspicious or dramatically out of line with prior trading practices.") (quotations and citations omitted).

Moreover, Count XXXI fails because it does not allege any facts to support an inference of fraudulent intent.  Aside from the promise of ongoing administrative fees which, "standing alone, will not suffice to establish fraudulent intent," Count XXXI omits—and on appeal, Lyon still cannot identify—any basis for intent, not to mention a plausible and particularized one.  *Tricontinental*, 475 F.3d at 841; *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) (rejecting

incentive "to receive underwriting and financial advisory fees" as "unavailing" to show fraudulent intent).

To suggest that Reliance would risk its professional reputation simply to collect fees from a single client for one year is the opposite of plausible—it is absurd. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990), ("Fees for two years' audits could not approach the losses [the defendant] would suffer from a perception that it would muffle a client's fraud."); *Melder v. Morris*, 27 F.3d 1097, 1104 n.10 (5th Cir. 1994) ("[T]o think that the underwriters would put their valuable professional reputation at risk to ostensibly 'profit' from two relatively minor securities offerings presents an inference of irrationality we refuse to indulge.").  It reduces PSLRA's "strong inference" requirement to a mere shibboleth capable of being uttered against any trustee that deigns to collect compensation for its services. *See In re K-Tel Int'l, Inc. Secs. Litig.*, 300 F.3d 881, 894 (8th Cir. 2002) ("[U]nsupported allegations with regard to motives generally possessed by all corporate directors and officers are insufficient as a matter of law."); *GSC Partners*, 368 F.3d at 237 ("[M]otives that are generally possessed by most corporate directors and officers do not suffice.").  The complaint's failure to state with particularity any plausible reason that *Reliance* would willingly enable this alleged fraud further forecloses any inference that Reliance had the requisite "intent to deceive" here. *Higginbotham*, 495 F.3d at 756.

The district court agreed—and rightly so.  It said as much in dismissing the first complaint. *See* Dkt. 186 at 45 ("The FAC fails to plead what Reliance . . . stood to gain from their alleged actions, beyond the collection of fees associated with their

work.  Standing alone, the court cannot plausibly infer that Reliance . . . was motivated to deliberately engage in a scheme to commit fraud.").  The current complaint does not correct this problem.  *Compare* Dkt. 77 ¶¶ 735–36, *with* Dkt. 191 ¶ 1186.  The district court recognized this lingering defect the second time around and found that Count XXXI still includes "no cogent or compelling reason to conclude that Reliance possessed the intent to deceive."  Dkt. 235 at 53.

In sum, Lyon's federal securities fraud claim against Reliance does not fail because its allegations only permit an inference of scienter that is "merely reasonable or permissible" instead of "cogent and compelling."  *Tellabs, Inc.*, 551 U.S. at 324 (quotations omitted).  It fails because it omits any allegations that explain how Reliance knew of this decades-old fraud, much less why Reliance would agree to enable its continuation.  The district court identified this defect in dismissing Lyon's previous claim, yet he failed to correct it the second time around.  Thus, the Court should affirm the district court's dismissal of Count XXXI for failure to plead scienter.

## B.  Lyon's Argument On Appeal Fails To Identify Any Error In The District Court's Dismissal Of The Federal Securities Fraud Claim.

In the Opening Brief (at 71), Lyon insists that the district court erred by relying on this Court's decision in *Tricontinental* instead of the Supreme Court's subsequent decision in *Tellabs* which, at least according to Lyon, held "that lack of pecuniary motive is not dispositive."  Lyon is mistaken.

First, Lyon is wrong as a matter of law on the scienter standard.  *Tellabs* holds that plausibly and particularly pleading a "strong" inference of scienter entails a

"comparative inquiry" whereby "the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." 551 U.S. at 323–24. To be sure, the Supreme Court also stated "that the absence of a motive *allegation* is not fatal." *Id.* at 325 (emphasis added). But the Court's uncontroversial rejection of a technical pleading requirement for motive is not tantamount to holding "that lack of pecuniary motive is not dispositive." *See* Op. Br. at 71. Rather, *Tellabs* instructs that dismissal for failure to plead scienter can be avoided "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Or, put another way, although failure to include a separate motive allegation is not *necessarily* dispositive, failure to allege facts that permit an inference of not only an intent to deceive, but one "at least as compelling" as competing inferences, most certainly is. *Id.*

The district court correctly applied that standard below. *See* Dkt. 235 at 52–53 (reciting comparative analysis standard). The court's focus on motive was not based on some nonexistent rule that pecuniary motive be separately alleged, but rather a function of the Lyon's failure to make any other (non-conclusory) allegations suggesting that Reliance acted with the requisite scienter for its brief part in this alleged decades-long fraud. *See id.* at 53 ("We are simply told that Reliance participated in a fraud but not given any plausible reason for it to have done so.").

Second, Lyon's argument mischaracterizes the district court's decision, which includes no citation to *Tricontinental* in its dismissal of Count XXXI. *See id.* at 52–

53.  In fact, the court rightly relied on *Tellabs*—and this Court's subsequent decisions applying it—in finding that Count XXXI offers "no cogent or compelling reason to conclude that Reliance possessed the intent to deceive."  *Id.* at 53.  Instead, Lyon simply asserts "that Reliance participated in a fraud" without providing "any plausible reason for it to have done so."  *Id.*  The law demands more.

Regardless of its absence from the court's analysis of Count XXXI, it still would have been appropriate even if the court had relied on *Tricontinental*.  There, this Court held that the defendant's "interest in fees, standing alone, will not suffice to establish fraudulent intent."[7]  *Tricontinental*, 475 F.3d at 841.  This rule remains good law.  *Tellabs* did not overrule *Tricontinental*, nor is *Tellabs*'s requirement that courts employ a holistic, comparative analysis for scienter at odds with such a rule.  Indeed, this Court's inclusion of the phrase "standing alone" necessarily presupposes a broader, *Tellabs*-like analysis—that is, where the complaint includes allegations that make such an analysis possible.  *See id.*  But adding nothing to nothing is still nothing.  And where there is nothing to infer, there is nothing to compare.

Regardless, even putting aside its failure to plausibly allege motive, Count XXXI still fails to satisfy the scienter standard in *Tellabs*.  As explained above, *see infra* at __, the complaint's allegations of scienter consist entirely of conclusory assertions that Reliance knew about SRR's "drastically inflated" valuations simply because Reliance had "reviewed, approved, and adopted" them.  Dkt. 191 ¶¶ 1186,

---

[7]    This is precisely the purpose of the court's lone citation to *Tricontinental* in its analysis of Lyon's federal securities fraud claim *against SRR*.  *See* Dkt. 235 at 66.

1189, 1196–98.   Again, "there is a big difference between knowing about the [valuations] from [SRR] and knowing that the [valuations] are false," *Higginbotham*, 495 F.3d at 758, especially where, as here, "[h]indsight is the only basis of the proposed inference." *Id.* at 759.

The Opening Brief (at 72–73) does nothing to rebut this shortcoming.   Instead, it repeats the failures of Lyon's complaints by providing a laundry list of the alleged "red flags" in SRR's valuation reports then inviting this Court simply to take Lyon at his word that Reliance "knew about" them.   But such "generalized allegations" are not enough.   *Zimmer*, 673 F. Supp. 2d at 747 (citation omitted); *see also Silverman*, 772 F. Supp. 2d at 936 (finding sale of recently vested stock insufficient to prove scienter for insider trading where sale "was not out of line with [defendant's] prior trading practices").   Lyon's arguments for reversal accordingly fail, and this Court should affirm.

## C.     Other Grounds Supported by the Record Called for the Dismissal of the SAC's Federal Securities Fraud Claim.

Count XXXI fails for three additional, independent reasons which, though not "relied upon by the district court," are nevertheless "supported by the record." *Haywood*, 887 F.3d at 332–33.   First, it fails to plausibly and particularly allege any material misstatement or omission.   Second, it fails to plausibly and particularly allege loss causation.   Third, at a minimum, the five-year statute of repose bars Lyon's federal securities fraud claims related to SRR's June 30, 2013 valuation.   Therefore, even if the Court disagrees with the district court's finding on the scienter element, it should still affirm Count XXXI's dismissal—at least insofar as it relates to

Reliance's alleged misrepresentations or omissions on June 30, 2013 (or July 17, 2013) when it used SRR's valuations.

### 1. The Securities Fraud Claim Fails Plausibly And Particularly To Allege Any Material Misstatement Or Omission By Reliance.

PSLRA requires allegations of material misstatements or omissions to "specify each statement alleged to have been misleading" and the "reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Accordingly, this Court has long held that to adequately plead a material misstatement or omission under PSLRA and Rule 9(b), "a complaint must state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Cornielsen*, 916 F.3d at 599 (quotations and citations omitted). The operative complaint does not.

To begin, Count XXXI fails to specify any allegedly misleading statements *by Reliance*. It simply alleges that Reliance "falsely represented" PDC's stock valuations in June and December 2013 by omitting details about SRR's purportedly flawed methodology. Dkt. 191 ¶¶ 1181–84. Among those details: the methodology's use of inflated future earnings projections; its exclusion of certain liabilities, including interest-bearing debt; its application of a control premium; its use of rounded numbers; its omission of unspecified overhead costs; its failure to consider the impact of discounted cash flow; and its improper application of the selected guideline approach. *Id.* ¶¶ 1186–94. Yet none identifies a material misrepresentation or

omission *by Reliance*, never mind "the person [at Reliance] who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [ESOP]." *Cornielsen*, 916 F.3d at 599 (quotations and citations omitted).

The complaint's failure to differentiate among nearly two decades' worth of alleged valuation flaws further thwarts its identification of misrepresentations or omissions attributable to Reliance. *See* Dkt. 191 ¶¶ 1181–84. Just as "it is not enough to allege that the company in general, as opposed to any particular defendant, made statements to the public that were false and misleading," it is equally inadequate to impute SRR's supposed methodological flaws to Reliance simply by alleging that Reliance certified or approved valuations that only later "turned out to be false." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1166–67 (E.D. Wis. 2017), *aff'd* 895 F.3d 933 (7th Cir. 2018). Indeed, this Court has long rejected such "group pleading" as "inconsistent with the 'strong inference' requirement." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008).

This lack of differentiation is fatal for another reason. "Under the PSLRA an allegation of fraud cannot be 'one size fits all'—each allegation must be tied to an explanation for *why* the statement was untrue and why the speaker had reason to know it was untrue." *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, No. 08–C–797, 2010 WL 1287058, at *14 (E.D. Wisc. Mar. 30, 2010). Yet "one size fits all" perfectly describes Lyon's approach here. He merely "bundle[s] together as a

pattern of fraud" each of SRR's valuations and their subsequent conveyance by three trustees over nearly two decades, then invites the Court "simply to believe that *everything*" SRR and, by extension, the trustees conveyed in those valuations "was a lie, when in fact the situation each [valuation] was highly volatile." *Id.* Lyon does not specify what alleged misinformation *Reliance* knew about—indeed, many allegations make no mention of Reliance at all, much less *why* Reliance should have known of any information's falsity. 15 U.S.C. § 78u-4(b)(1). *See* Dkt. 191 ¶¶ 1186–99. And it is "inconceivable" that these alleged misstatements and omissions "applied in blanket fashion to each and every one of the[se valuations and conveyances] over the course of [nearly two decades]." *Oshkosh*, 2010 WL 1287058, at *16.

The first time around, the district court found that Lyon failed to "identify the particular fraudulent or untrue statements each defendant made." Dkt. 186 at 45. Although the court did not reach the issue the second time around, the foregoing confirms that Lyon likewise failed to allege any additional facts identifying any material misrepresentations or omissions. *Compare* Dkt. 77 ¶¶ 706–08, 735, *with* Dkt. 191 ¶¶ 1181–84. Count XXXI accordingly fails for the separate and independent reason that it fails to plausibly and particularly allege that Reliance made a material misstatement or omission to the ESOP.

**2.    The Federal Securities Fraud Claim Fails Plausibly And Particularly To Allege Loss Causation Attributable To Any Misstatement Or Omission By Reliance.**

Count XXXI fails to state a claim for federal securities fraud for the additional, independent reason that it fails to allege any "economic loss and proximate cause" for

which Lyon seeks recovery. *Tricontinental*, 475 F.3d at 843. To plead loss causation, the complaint "must allege that it would not have invested in the [plan] if [Reliance] had stated truthfully the material facts at the time of the [transaction]." *Id.* at 842 (quotations and citations omitted). This includes alleging "the very facts about which [Reliance] lied which caused [the ESOP's] injuries." *Id.*

Its separate failure to specify any misstatement or omission by Reliance notwithstanding, Count XXXI fails to tie any such statement or omission to a particular loss. Lyon claims that the ESOP relied on and was damaged by Reliance's conveyances of SRR's valuations. Dkt. 191 ¶ 1202. However, that assertion relies on allegations regarding misrepresentations of PDC's stock value made by dozens of defendants over nearly two decades. *Id.* ¶¶ 336–39. This does not suffice. Of course, higher stock prices "will *sometimes* play a role in bringing about a future loss," but "[t]o touch upon a loss is not to *cause* a loss, and it is the latter that the law requires." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (quotations omitted). Lyon accordingly fails to plead loss causation for his federal securities fraud claim against Reliance, thus providing a separate and independent basis to affirm Count XXXI's dismissal.

### 3.   At A Minimum, The Five-Year Statute Of Repose Bars Lyon's Federal Securities Fraud Claims Related To SRR's June 30, 2013 Valuation.

Even if the Court concludes that Count XXXI's allegations otherwise clear the exceedingly high bar set by PSLRA and Rule 9(b), the five-year statute of repose still bars its claims related to SRR's June 30, 2013 valuation. The five-year repose period commences on the date of the alleged "violation." 28 U.S.C. § 1658(b)(2). For

securities fraud claims, that date is the date of the alleged misrepresentation—*i.e.*, the date of the allegedly fraudulent misstatement or omission—*not* the date of the allegedly injurious transaction it causes. *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 932 (7th Cir. 2011); *accord In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200 (3d Cir. 2007), *as amended* (Nov. 20, 2007) (holding that repose period for federal securities fraud claims "begins to run on the date of the alleged misrepresentation").

It follows that for Count XXXI's claims related to the June 30, 2013 valuation, the repose period started to run no later than July 17, 2013, when Reliance allegedly misrepresented PDC's stock value to the ESOP. *See* Dkt. 191 ¶¶ 558, 1181–99, 1291. This means that the repose period expired no later than July 17, 2018, nearly five months *before* Lyon filed this lawsuit. The fact that the stock purchases based on that valuation did not occur "until approximately January 2014," *Id.* 191 ¶ 1205, makes no difference, *McCann*, 663 F.3d at 930–32. Thus, even if the Court finds that the allegations in Count XXXI otherwise satisfy PSLRA's and Rule 9(b)'s demanding pleading standards, its claims related to the June 30, 2013 valuation are nevertheless time-barred under 28 U.S.C. § 1658(b)(2), and the Court should affirm their dismissal on that basis.

**CONCLUSION**

This Court should affirm the district court's order dismissing Lyon's claims against Reliance in Counts I, XXIII, XXIX, and XXXI of the Second Amended Complaint for failure to state a claim.

By: */s/ Barbara A. Smith*
Barbara A. Smith
Jeffrey S. Russell
Matthew J. Stanford
211 N. Broadway, Ste. 3600
St. Louis, MO 63012
Tel.: (314) 259-2000
barbara.smith@bclplaw.com
jsrussell@bclplaw.com
matt.stanford@bclplaw.com

*Attorneys for Defendant-Appellee*
*Reliance Trust Company*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify:

1.    The attached complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i), as modified by Circuit Rule 32(c).  The attached contains 12,334 words (according to the Microsoft Word 2016 count function), excluding those parts exempted by Federal Rules of Appellate Procedure and 32(f).

2.    The attached complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), as modified by Circuit Rule 32(b).  The attached has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point roman type style.

  */s/ Barbara A. Smith*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of August, 2023, I caused the foregoing answering brief to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system, which will automatically send notification of such filing to counsel of record who are CM/ECF users.

*/s/ Barbara A. Smith*