No. 23-1073

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

APPVION, INC. RETIREMENT SAVINGS
AND EMPLOYEE STOCK OWNERSHIP PLAN,
by and through Grant Lyon in his capacity as
the ESOP Administrative Committee of Appvion, Inc.,

*Plaintiff-Appellant*,

v.

DOUGLAS P. BUTH, et al.,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Wisconsin
Civil Action No. 1:18-cv-01861
The Honorable William C. Griesbach

---

## APPELLANT'S REPLY TO DEFENDANT-APPELLEE
## STATE STREET

---

L. Richard Williams
Abigail Terhune
Jennifer B. Anderson
BEUS GILBERT MCGRODER PLLC
701 N. 44th Street
Phoenix, AZ 85008
Telephone: 480-429-3000
rwilliams@beusgilbert.com
abby.terhune@outlook.com
janderson@beusgilbert.com

*Counsel for Plaintiff - Appellant*

# **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................1

I.      Introduction ........................................................................................1

II.     State Street Breached its Fiduciary Duties. ......................................2

      A.      State Street Attempts to Evade Responsibility for the Valuations. ................................................................................2

      B.      Lyon Stated a Claim for Breach of Fiduciary Duty. ............3

            1.      The valuations inappropriately applied a control premium. ...................................................................5

            2.      The valuations failed to subtract pension debt. .........7

            3.      The valuations were based on unreliable financial projections. ................................................................9

            4.      State Street otherwise acted imprudently..................10

            5.      The June and July 2012 valuations further establish that State Street breached its fiduciary duties. ..........10

            6.      State Street acted imprudently in connection with the 2001 transaction. ................................................11

      C.      Lyon Was Not Required to Plead Facts About State Street's Process...................................................................11

      D.      State Street's Arguments Do Not Establish Prudence. .......14

      E.      State Street Breached its Duties of Loyalty and Disclosure. ........................................................................15

III.    Fraud or Concealment Tolls the Statute of Limitations. ................16

IV.     Claims Relating to the July 2012 Valuation are Timely. ...............25

      A.      Lyon Preserved this Argument.............................................25

      B.      Lyon's Claims Accrued When State Street Purchased PDC's Stock. ...................................................................26

V.      The SAC Pleads Co-Fiduciary Liability............................................28

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022)..................................................................27

*Allen v. GreatBanc Trust Co.*,
  835 F.3d 670 (7th Cir. 2016)............................................................5, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................4

*Brundle v. Wilmington Trust, N.A.*,
  919 F.3d 763 (2019) ............................................................... 4, 6, 7, 9

*Cf. Grove Holding Corp. v. First Wisconsin Nat. Bank of Sheboygan*,
  803 F. Supp. 1486 (E.D. Wis. 1992)....................................................24

*Chao v. Hall Holding Co.*,
  285 F.3d 415 (6th Cir. 2002)................................................................4

*Dean v. National Production Workers Union Severance Trust Plan*,
  46 F.4th 535 (7th Cir. 2022)...............................................................16

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990)........................................................4, 30

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983).............................................................14

*Eckelkamp v. Beste*,
  201 F.Supp.2d 1012 (E.D. Mo. 2002)....................................................6

*Ellis v. Rycenga Homes*,
  484 F.Supp.2d 694 (W.D. Mich. 2007)................................................28

*Estate of Godley v. Comm'r*,
  286 F.3d 210 (4th Cir. 2002)................................................................6

*Fifth Third Bancorp v. Dudenhoeffer,*
  573 U.S. 409 (2014) ............................................................................5

*Fish v. GreatBanc Trust Co*,
749 F.3d 671 (7th Cir. 2014)..................................................................... 2, 3, 26

*Foltz v. U.S. News & World Report, Inc*.,
865 F.2d 364 (D.C.Cir. 1989) ...............................................................6

*Halperin v. Richards*,
7 F.4th 534 (7th Cir. 2021).................................................................15

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996)...........................................................3, 4

*Hughes v. Northwestern University,*
595 U.S. 170 (2022) ..............................................................................5

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)............................................19

*Keach v. U.S. Trust Co.,*
419 F.3d 626 (7th Cir. 2005)..............................................................4, 9

*Martin v. Consultants & Administrators, Inc.*,
966 F.2d 1078 (7th Cir. 1992)................................................... 20, 22, 23

*Neil v. Zell*,
767 F. Supp. 2d 933 (N.D. Ill. 2011) ....................................................27

*Sacerdote v. New York Univ*.,
9 F.4th 95 (2d Cir. 2021)....................................................................12

*W. Bend Mut. Ins. Co. v. Schumacher*,
844 F.3d 670 (7th Cir. 2016)...................................................................4

*Walsh v. Maine Oxy-Acetylene Supply Co*.,
No. 2:20-CV-00326-NT, 2021 WL 2535942, at *5 (D. Me. June 21,
2021).....................................................................................................27

*Wolin v. Smith Barney Inc.*,
83 F.3d 847 (7th Cir. 1996)................................................................22

*Wood v. Carpenter*,
101 U.S. 135 (1879) ...........................................................................23

## **Statutes**

29 U.S.C. § 1104 .............................................................................. 16, 26

29 U.S.C. § 1104(a)(1).......................................................................16

29 U.S.C. § 1105(a) ...................................................................................24

29 U.S.C. § 1106(a)(1) ..............................................................................26

29 U.S.C. § 1113 ........................................................................ 17, 22, 25

29 U.S.C. § 1113(1) ...................................................................................25

29 U.S.C. § 1113(1)(A) .............................................................................25

29 U.S.C. § 1113(1)(B) .............................................................................25

**Other Authorities**

Restatement (Second) of Torts § 525, cmt. B ........................................19

Restatement (Second) of Torts § 533....................................................22

**Rules**

Circuit Rule 50 ......................................................................................4, 25

Fed. R. Civ. P. 9(b) ............................................................................ 24, 29

# ARGUMENT

## I.     INTRODUCTION

The Second Amended Complaint ("SAC") alleges that State Street, as the ESOP's trustee from 2001 to 2012, breached its fiduciary duties to the ESOP (1) in connection with the 2001 Transaction and (2) in valuing and purchasing PDC's stock twice per year. Lyon's claims based on these breaches prior to 2012 were tolled due to fraud or concealment; the ESOP's claims relating to the two valuations in 2012 are timely without regard to fraud or concealment.

State Street attempts to minimize its role in the valuations, relying on the fact that it hired an investment advisor. However, that is not sufficient under ERISA. State Street had to prudently review the valuations and determine that reliance on them was justifiable; the many "red flags" demonstrate that State Street failed to do so.

For the 2001 to 2011 claims, State Street argues that Plaintiff-Appellant Grant Lyon fails to identify any acts of concealment attributable to State Street. However, the SAC identifies numerous actions by State Street that concealed its breaches of fiduciary duty; in addition, each subsequent publication of the stock price served to conceal the prior wrongs.

The district court's decision should be reversed for these and the other reasons discussed herein and in Appellant's Opening Brief.

II.     **STATE STREET BREACHED ITS FIDUCIARY DUTIES.**

A.     **State Street Attempts to Evade Responsibility for the Valuations.**

State Street depicts its role as "limited," omitting the fact that it was responsible for the final stock price and pointing only to its obligation to retain an independent advisor. [Brief of Appellee State Street Bank and Trust Company ("SSAB") 4-5; B128 ¶ 161, B272 ¶ 650.] This is misleading. For the 2001 Transaction, State Street's acted on behalf of the ESOP in the negotiations and had to determine if the purchase price was fair. [Appellant's Supplemental Appendix ("ASA") ASA149 ¶ 637.] After that, State Street was responsible for determining the price of and purchasing PDC's stock. [B272 ¶ 647-50, B281 ¶ 669, B281 ¶ 671, ASA154 ¶ 1119.]

State Street argues that whether State Street complied with the plan document is not irrelevant. [SSAB at 41.] But Lyon's claims are rooted in ERISA, not the plan documents which merely reference ERISA's definition of "adequate consideration:"

> The term "adequate consideration" … means … (B) in the case of an asset other than a security for which there is a generally recognized market, *the fair market value of the asset as determined in good faith by the trustee* or named fiduciary pursuant to the terms of the plan....

29 U.S.C. § 1002(18). [B272 ¶¶ 648-49.] Under this statute, "[w]hether an ERISA fiduciary has acted prudently requires consideration of both the substantive reasonableness of the fiduciary's actions and the procedures by which the fiduciary made its decision." *Fish v. GreatBanc Trust Co*, 749 F.3d 671, 680 (7th Cir. 2014).

For substantive reasonableness, "the value assigned [must] reflect the fair market value of the asset"—which the SAC alleges it did not. *Id.* [*See* B165-66.]

Procedurally, "the fiduciary [must] actually determine the value assigned in good faith." *Fish*, 749 F.3d at 680. State Street "could rely on the fairness analysis of an expert, [but] *it must still demonstrate that its reliance* on the advice from" Stout "was *justifiable*." *Id.* (italics added). "When determining whether a fiduciary's process is sufficient, *the degree to which a fiduciary makes an independent inquiry is critical*. A fiduciary's reliance on a financial advisor is evidence of prudence, but *some inquiry into the advisor's qualifications and methods is still required*." *Id.* at 680-81 (citations omitted, italics added); *see also Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) ("[I]ndependent expert advice is not a 'whitewash.' The fiduciary must (1) investigate the expert's qualifications, (2) provide the expert with complete and accurate information, and (3) *make certain that reliance on the expert's advice is reasonably justified* under the circumstances.") (citations omitted, italics added). State Street's reliance on Stout's valuations was not reasonably justified. [ASA150-152 ¶¶ 643-646, B272-289 ¶¶ 647-669.]

**B.     Lyon Stated a Claim for Breach of Fiduciary Duty.**

The district court failed to consider the SAC's prudence allegations, deciding (incorrectly) that they were a "rehash" of the allegations in the FAC. [B040-41.] The district court also found that it was "less plausible" State Street was imprudent

because "State Street hired reliable independent experts, relied on those experts, and followed the ESOP plan documents." [B040.] This cryptic reasoning and reliance on the court's first ruling was improper and a violation of Circuit Rule 50. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990), *cert. denied*, 898 U.S. 941 (1990) ("A reference to another judge's opinion at an earlier stage of the case … fulfils none of" the functions of Circuit Rule 50).

State Street defends the district court's "less plausible" finding. [SSAB at 40-41.] However, it cannot be squared with *Keach v. U.S. Trust Co.,* 419 F.3d 626, 636-37 (7th Cir. 2005), which held "an independent assessment from a financial advisor ... is not a complete defense against a charge of imprudence." Nor can it be squared with the notice pleading standard, which eschews a probabilistic analysis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable…."); *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675–76 (7th Cir. 2016) ("'Plausibility' is not a synonym for 'probability'…"). There is nothing inherently implausible about a fiduciary failing to act prudently, and courts have on numerous occasions found that trustees breached their fiduciary duties in similar ways. *See, e.g., Chao v. Hall Holding Co.*, 285 F.3d 415, 429-431 (6th Cir. 2002); *Howard*, 100 F.3d at 1488-1490; *Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763, 768 (4th Cir. 2019).

State Street implies that there is a higher standard of review for ERISA complaints, *citing Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409 (2014) and *Hughes v. Northwestern University,* 595 U.S. 170 (2022). That is incorrect. Both cases agreed that ERISA complaints had to be viewed in context of "the range of reasonable judgments a fiduciary may make" but that categorical rules leading to dismissal of ERISA complaints were inconsistent with this principle. *Dudenhoeffer,*[1] 573 U.S. at 414; *Hughes,* 595 U.S. at 172-73. The finding that Lyon's claims were "less plausible" because State Street hired a financial advisor is also inconsistent with this principle, as well as with the "remedial" nature of ERISA. *Allen v. GreatBanc Trust Co.,* 835 F.3d 670, 677 (7th Cir. 2016).

Many of the "red flags" with the valuations are summarized below, along with responses to State Street's related arguments.

### 1.     <u>The valuations inappropriately applied a control premium.</u>

The appraisals applied a control premium of 10-15% while State Street was trustee. [B148-149 ¶ 253, B165-166 ¶ 288, B180-182 ¶ 348, B277-278 ¶ 660.] This premium was added to the enterprise value prior to subtracting debt, increasing shareholder equity by as much as 64% in December 2009. [B148-49 ¶ 253.]

---

[1] The language State Street cites in *Dudenhoeffer* was the trustee's argument that ESOP fiduciaries were entitled to a presumption of prudence—which the Supreme Court rejected. *See* 573 U.S. at 423-25.

A control premium is not just a matter of judgment, as State Street contends. Control is "an interest which allows the shareholder to unilaterally direct corporate action…." *Brundle*, 919 F.3d at 777 (*quoting Estate of Godley v. Comm'r*, 286 F.3d 210, 214 (4th Cir. 2002)). It also includes "the power to appoint a majority of the [] board, a key indicator of control." *Id.* State Street, however, lacked control. [B124-125 ¶¶ 143-44.] Further, only small amounts of PDC stock were sold biannually, not a controlling block of shares. [B157 ¶ 262, B410 ¶ 1299.] A control premium was inappropriate under these circumstances. *See, e.g., Brundle,*, 919 F.3d at 777-78 (control premium inappropriate where ESOP did not have right of control); *Eckelkamp v. Beste*, 201 F.Supp.2d 1012, 1029 (E.D. Mo. 2002), *aff'd*, 315 F.3d 863, 868-69 (8th Cir. 2002) (control premium inappropriate for annual ESOP valuations); *Foltz v. U.S. News & World Report, Inc*., 865 F.2d 364, 373 (D.C. Cir. 1989) (a "control premium is normally realized by sale [of the company], an event that would obviously thwart...perpetuation of employee ownership") (emphasis in original).

In *Brundle*, the district court found (after a bench trial) that an ESOP trustee had breached its fiduciary duties in part by failing to investigate a control premium. *Brundle v. Wilmington Trust, N.A.*, 241 F.Supp.3d 610, 638-39 (E.D. Va. 2017). The Fourth Circuit affirmed. *Brundle*, 919 F.3d at 777-78. State Street tries to distinguish *Brundle*, noting that there, the "appraisers' discussion of the use of a control

premium 'was generic,' devoting 'just one sentence to articulating its decision to apply' a control premium." [SSAB at 46 (*citing Brundle*, 241 F.Supp.3d at 639).[2]] But Stout was also the appraiser in *Brundle*, the valuation in *Brundle* was performed by the same individuals who performed the valuations in this case (Scott Levine and Aziz El-Tahch), and the discussion about the control premium in the *Brundle* valuation is nearly identical to the valuations in this case. [ASA271-276;[3] ASA091-092.] The August 2005 valuation which State Street cites is similarly generic. [SA41-42.] Just as in *Brundle*, the Appvion valuations explain what a control premium is in general terms, but they do not explain what facts would warrant a control premium. *Id.* The fact that Stout explained what a control premium is does not mean it is justified or that State Street acted prudently in agreeing to it.

### 2.    The valuations failed to subtract pension debt.

State Street claims the pension debt was addressed in the valuations, but it can only point to bare mention of the pension liabilities – not actual consideration in the

---

[2] State Street cites 241 F.Supp.3d at 613, but the quoted language is at page 639 of the opinion.

[3] This is an excerpt from the valuation referred to in Plaintiff's Trial Ex. 2 in *Brundle*, 241 F.Supp.3d at 639. Lyon requests the Court take judicial notice of this document, which was a trial exhibit in *Brundle* (Plaintiff's Trial Exhibit 2) and included in the Joint Appendix on appeal to the Fourth Circuit. F.R.E. 201. This document is not presented for the truth of the matter asserted but solely to rebut State Street's argument.

calculation of value. [SSAB 45; B133-150 ¶¶ 197-245; B274-275 ¶ 656.] For example, State Street cites the valuation as of December 31, 2005, while only attaching a few pages of that report. The pension liability was mentioned in a preliminary section titled "Financial Statement Analysis" that discussed Appvion's balance sheet:

> The Company's **stockholders'** equity balance[] decreased approximately $11.7 million between December 31, 2004 and December 31, 2005 **due to a $16.1 million increase in the Company's pension liability** adjustment.

[SA44-45.] The pension liability is not mentioned again in that report, much less used in the calculation of value. [ASA161-161; *see also* SA40, SA48 (only acknowledging the pension liability when discussing the balance sheet).] This establishes that State Street knew about this large pension liability. However, the BemroseBooth facts show that State Street knew the pension liability needed to be accounted for. [B138-143 ¶¶ 209-223, B275 ¶ 657.]

State Street also attacks the merits, claiming (with no support) that only near-term pension payments must be considered. This is unsupported lawyer argument that should be disregarded. However, now that it has been made, in fairness the Court should consider opinions from Lyon's expert Dr. Ed Morrison. Dr. Morrison explained (citing to seven publications) that "[n]umerous textbooks and publications agree that the accepted way to account for unfunded pension obligations and post-

retirement benefits is to treat them like interest-bearing debt and subtract them from the enterprise value of a firm…." [ASA023-024 at 10-11.]

**3.    The valuations were based on unreliable financial projections.**

State Street mischaracterizes the allegations about Appvion's financial projections as a complaint that, with hindsight, the projections were not achieved. This is incorrect. The projections did not have to be perfect, but they had to be *reasonable* – otherwise the valuations were just garbage in, garbage out. Here, the projections were inflated over historical and actual results available to State Street at the time. [B274 ¶ 654.]

The question is whether State Street conducted an adequate and prudent review of the projections. In *Brundle*, the district court and the Fourth Circuit found that the trustee should have been more critical of management-prepared projections because management had an incentive to inflate the purchase price. 241 F.Supp.3d at 636-38; 919 F.3d at 775. In contrast, this Court found the trustee in *Keach* conducted an adequate investigation where, "rather than blindly accept the forecasts," it "probed and challenged a number of assumptions in Valuemetrics' evaluation before developing their own independent evaluation…." 419 F.3d at (7th Cir. 2005).

As in *Brundle*, management here had an incentive to increase the share value. [B274 ¶ 655.] In contrast to *Brundle*, Appvion did not have a history of beating or

even meeting its projections. [B158-159 ¶ 268, B274 ¶ 654.] [*See Brundle*, 241 F.Supp.3d at 620.] That Appvion repeatedly failed to meet the financial projections used in the valuations shows that State Street was not prudently investigating them.

### 4.    <u>State Street otherwise acted imprudently.</u>

The SAC alleges that State Street also breached its fiduciary duties in at least the following ways:

- By not requiring the valuations to subtract all interest-bearing debt, including nearly $70 million as of December 2008, nearly $60 million as of June 2009, and $32.1 million in June 2012. [B151 ¶ 248, B275-277 ¶ 658.]

- By not requiring Stout to deduct the value of phantom stock held by non-employee directors until December 2011. [B279 ¶ 664.]

- By approving valuations that improperly capitalized Appvion's declining income stream into perpetuity. [B279 ¶ 666.]

These allegations collectively demonstrate that State Street acted imprudently.

### 5.    <u>The June and July 2012 valuations further establish that State Street breached its fiduciary duties.</u>

State Street avoids discussing the June and July 2012 valuations, which further demonstrate that State Street was not prudently reviewing the valuations.

While State Street was trustee, Appvion explored a merger with Hicks Acquisition Company in mid-2012; it went to an employee vote and was approved

but fell apart weeks later. [B174-176 ¶¶ 320-327.] The failure of this merger forced State Street to conduct a special valuation because the valuation as of June 2012 prematurely "included some (but not all) of the incremental value of the proposed transaction [with Hicks] in the share price announced on June 30." [B175-176 ¶ 326, B278 ¶ 661.] In a July 2012 special valuation, State Street adjusted the share price down from $18.80 to $16.45. [B174-175 ¶¶ 322, 325, B273 ¶652.] This debacle shows that State Street was not prudently reviewing the valuations. [B278 ¶ 661.]

6.  **State Street acted imprudently in connection with the 2001 transaction.**

Regarding the 2001 Transaction, Lyon alleges that State Street acted imprudently in failing to undertake an adequate and independent valuation of PDC; failing to disclose Houlihan's conflicts of interest; approving a misleading prospectus that concealed Houlihan's conflicts of interest; and causing the ESOP to purchase PDC and Appvion for more than fair market value. [ASA149-151 ¶¶ 640-43.] State Street had "sole discretion" to determine whether the transaction was allowable under ERISA. [B371 ¶ 1083.]

C.  **Lyon Was Not Required to Plead Facts About State Street's Process.**

State Street criticizes Lyon for failing to allege facts about State Street's process as opposed to the valuations. [SSAB 8-9, 38.] However, this Court has explained that those allegations are not required: "Although the plaintiffs could not

describe in detail the process GreatBanc used, no such precision was essential. It was enough to allege facts from which a factfinder could infer that the process was inadequate." *Allen*, 835 F.3d at 678 (internal citations omitted); *see also Sacerdote v. New York Univ.*, 9 F.4th 95, 108 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112, 212 L. Ed. 2d 9 (2022).

State Street argues that Lyon is required to plead more. [SSAB 39.] However, while Lyon has access to certain *ESOP Committee* documents,[4] he does not have access to *State Street's* records which show *State Street's* process of reviewing the 2001 Transaction or the 2002 to 2012 valuations. Beginning in January 2008, the ESOP Committee meeting minutes describe review of the appraisals as follows:

> The first item on the agenda was to review **the December 31, 2007 stock valuation work as prepared by Stout… and approved by State Street**…. Mr. Levine [Stout] **described the process used to arrive at the December 31, 2007 valuation**.
>
> Following a general discussion of the valuation, **a few edits were requested to be made** to SRR's presentation to State Street…. Ms. Tyczkowski requested that SRR **removed references to the insurance litigation settlement as being imminent**…. Mr. Ferree also requested that **Glatfelter and Nekoosa be added to the list of carbonless competitors** on pages 7 and 25 of the presentation documents.

---

[4] Lyon does not have access to the Willamette valuations (2001-2004) or Willamette's fairness opinion from the 2001 Transaction. [ASA145-146 ¶ 196.]

> The ESOP Committee was comfortable with the valuation
> work and there being **no further questions or discussion**,
> Messrs. Levine and Williams and Ms. Marzeotti
> departed...

[B131-132 ¶ 175.] This gives no insight into State Street's fiduciary process—State Street had already approved the valuation work and there are no references to statements by State Street. But contrary to State Street's argument, these minutes *do* show improper pressure by the ESOP Committee (Ferree) in requesting unsupported changes to competitor companies. [B131-132 ¶ 175, B164 ¶ 285, B279 ¶ 666.]

The SAC also identifies a meeting where State Street, the ESOP Committee, and Stout "determined that the stock price needed to be adjusted" but does not explain why or whether the adjustment was up or down. [B132 ¶ 177.] Other meeting minutes just note generic discussion of valuation reports that State Street had already approved, with no insight into State Street's fiduciary process. *See* [B132 ¶ 176, B236 ¶ 500, B239 ¶¶ 513-14, B240-241 ¶ 519, B243 ¶ 531.]

State Street cites to Paragraph 228 of the SAC, which quoted from an email to employees about an Appvion Board meeting. That email does not discuss the valuations at all, only stating that "Syd Marzeotti from State Street joined [the Board]" for a meeting where Appvion's financials and the sale of BemroseBooth was discussed. [B145 ¶ 228]. Similarly, State Street points to Paragraph 403 of the SAC, but that only quotes an email to employees (selectively) describing a valuation that State Street had approved. [B204-205 ¶ 403.]

In contrast to the district court's statement that hiring a valuation advisor made it "less plausible" that State Street acted imprudently, the district court stated with respect to Argent that "[a] single conversation with the valuator does not allow a judge to conclude, as a matter of law, that Argent acted prudently." [B058.] Likewise, State Street's review of the valuations does not establish that State Street conducted a *prudent* review. The "red flags" discussed above show that State Street did not.

### D.     State Street's Arguments Do Not Establish Prudence.

State Street argues implausibility by making jury arguments about the merits and facts not pled in the SAC.  First, State Street argues that it had no motive to merit "an inference of fiduciary malfeasance." [SSAB 37.] However, motive is irrelevant for a prudence-based claim. *See Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("[T]he prudent man rule[] is expressly focused upon the conduct of the fiduciaries.").

Second, State Street argues that third party offers cited by Stout support the valuations. [SSAB 42.] However, the ESOP was created in 2001 because Appvion's previous owner was unable to sell Appvion. [B085 ¶ 2.] Appvion started looking for a buyer by late 2009; those efforts continued (unsuccessfully) until Appvion's bankruptcy filing. [B174 ¶¶ 319-320, B411 ¶ 1303.] The only offer relevant to State Street was a late 2012 letter of intent, which (like other later offers) went nowhere,

14

reinforcing that Stout's valuations were inflated. [*See* ASA047.**]** Again, these facts are not pled in the SAC, do not relate to State Street's fiduciary process, and argue the merits of Stout's valuation practices; regardless, the ESOP retained expert witnesses who refuted these arguments. [ASA013-018; ASA019-045.]

Third, State Street relies on Appvion's ability to operate for 17 years. Lyon adjusted the shareholder's equity value to remove the Excluded Debt and the control premium, which showed that there was negative shareholder equity in 2001 and after 2008. [B165-166 ¶ 288.] Negative equity, however, is not the same as insolvency (an inability to pay debts). Regardless, this does not relate to State Street's fiduciary process.

Finally, State Street relies on valuations conducted by Reliance in 2013. However, the SAC identifies numerous flaws with those valuations, and Appvion's creditors brought a lawsuit based on those valuations. [B257-261 ¶¶ 581-591; *Halperin v. Richards*, 7 F.4th 534 (7th Cir. 2021).] Those later (flawed) valuations do not support an inference that *State Street* conducted a prudent review of the valuations it approved – especially where the district court did find that the SAC stated a claim against Argent for similar valuations. [B054-60.]

### E.     State Street Breached its Duties of Loyalty and Disclosure.

State Street argues in a footnote that Lyon forfeited his loyalty and disclosure-based claims. However, prudence, loyalty, and disclosure all arise under 29 U.S.C.

15

§ 1104 and are pled in Count III. [B271-284 ¶¶ 635-678.] *See Dean v. Nat'l Prod. Workers Union Severance Trust Plan*, 46 F.4th 535, 546 (7th Cir. 2022). Lyon expressly appealed dismissal of that count and the Opening Brief addressed those allegations together. [*See* Appellant's Opening Brief ("AOB") at 37-43.] The loyalty allegations are based on State Street's failure to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). For example, the SAC alleges that State Street was motivated to approve the 2001 Transaction in order to receive ongoing business as the ESOP's trustee. [B089 ¶ 12.] The disclosure allegations are based on (1) State Street's failure to disclose Houlihan's conflicts of interest in connection with the 2001 Transaction; and (2) State Street's failure to disclose its valuation process while allowing the ESOP Committee to misrepresent the valuation process. [*See, e.g.,* B123-124 ¶¶ 134-135, B180-182 ¶ 348, B197 ¶ 383, B283-284 ¶¶ 675, 677.]

## III.   <u>FRAUD OR CONCEALMENT TOLLS THE STATUTE OF LIMITATIONS.</u>

The district court dismissed Lyon's claims against State Street for ERISA violations predating November 26, 2012 because it concluded Lyon had failed to plead fraud or concealment separate from the underlying wrongdoing. [*See* B039.] The dismissal contravened this Court's firmly established case law, as discussed more fully in AOB 54-57 and Appellant's Reply to Defendants-Appellees Douglas Buth, Et Al. ("D&O Reply") at 5-15 (incorporated herein by reference).

16

State Street does not explicitly rely on the court's misinterpretation of 29 U.S.C. § 1113, instead arguing that Lyon's fraud or concealment allegations rely solely on "the simple publication or republication of the valuations themselves" and "statements that were not made by State Street," neither of which (it contends) can serve as the basis for fraudulent-concealment tolling. But State Street's argument mischaracterizes some of Lyon's fraud or concealment allegations while ignoring others that show State Street was directly responsible for the veracity of communications between Appvion management and Employee Owners.

First, State Street ignores the SAC's allegations about its retainer letter with Appvion,[5] which provided that the 2001 Transaction prospectus and "any other disclosure documents or presentation materials to be provided or otherwise communicated to participants, ***shall be subject to the prior review and written approval of State Street***." [B114 (emphasis added); *see also* B113.] State Street received a draft of the proposed communication with a reasonable period to review and revise it prior to disclosure. [B114.] The SAC therefore alleged (with particularity) the following acts of concealment attributable to State Street:

---

[5] This aspect of Lyon's overall argument was not, as State Street contends, forfeited merely because the Opening Brief does not expressly mention it.

17

- State Street approved the July 23, 2001 Prospectus stating Houlihan thought the purchase price was fair. This document misleadingly disclosed Buth's and Karch's conflicts of interest but failed to disclose Houlihan's contingent fee conflict.[6] [B113-18, B123.]

- State Street approved Buth's July 25, 2001 letter, which stated Houlihan would provide "[i]ndependent validation of the deal." This was false because Houlihan was not independent due to its contingent fee. [B121-23, B282.]

- State Street reviewed and approved the November 19, 2001 Prospectus Supplement, which described investment banking fees of $8 million but did not explain those fees were contingent or who they were paid to. [B124, 282.]

The SAC also alleged statements made by State Street in connection with the August 2, 2001 Road Show presentation:

---

[6] *See Enneking v. Schmidt Builders Supply Inc.*, 917 F. Supp. 2d 1200, 1208 (D. Kan. 2013) (disclosure about defendant's public accounting background that concealed his conviction for felony theft and securities fraud and his personal bankruptcy constituted concealment intended to divert investigation).

- State Street reviewed and approved the program for the road show that falsely said Houlihan's Lou Paone would provide "Independent Validation of Deal Terms." [B122-23, B282.]

- State Street's Kelly Driscoll represented at the road show that the ESOP would not be paying more than fair market value and that State Street was "very comfortable" with Willamette's valuation, while concealing that the valuation did not deduct Excluded Debt and included an inappropriate control premium. [B283.]

- Driscoll was present when Karch introduced Paone as independent but failed to correct him, which is equivalent to a misrepresentation. [B123, B282-83.]

*See* Restatement (Second) of Torts § 525, cmt. b ("'Misrepresentation' is used in this Restatement to denote not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth."); *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1218 (W.D. Wash. 2009) (plaintiffs stated fraud claim against officer who was present during misrepresentations but failed to correct them). These affirmative acts and omissions, both individually and together, served to "cover [State Street's] tracks" by concealing that it was breaching its duties under ERISA, that Houlihan had an incentive to inflate the purchase price, and that the ESOP was paying more than fair

market value for PDC. [B282-83.] *See Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095-96 (7th Cir. 1992).

After the 2001 Transaction, State Street continued to engage in additional acts of fraud or concealment, such as by reviewing and approving Stout's inflated semiannual valuations that affirmed the initial transaction and concealed that it was based upon an improper valuation and Houlihan's conflict of interest. [B284.] Although the actual valuation reports were never disclosed to Employee Owners or the public [B096 ¶ 27, B379 ¶1204], the stock prices were conveyed to Employee Owners in communications from the ESOP Committee. [B197, B199, B201-204, B207-208, B211-212, B213-215, B217-218, B220-221, B223-224, B227-228, B230.] In addition, the SAC alleged with particularity that:

- Driscoll authored a September 2003 newsletter to Employee Owners falsely representing that State Street was thoroughly investigating the valuations. [B205-206 ¶ 404-405.]

- State Street approved and authorized a January 2006 edition of the ESOP Newsletter falsely representing to Employee Owners that the ESOP Trustee could replace Appvion's Board such that an Enron-type situation could never happen. [B217 ¶¶ 436-38.]

- Appvion published a book in 2007 quoting Driscoll as saying that State Street was "appointed the fiduciary to make sure the transaction was

fair from a financial perspective to the ESOP. And it was. Employees would not be paying more than fair market value…." [B226 ¶ 465.]

These false and misleading communications were designed to—and did—conceal that: (1) State Street and others were breaching their fiduciary duties in valuing PDC stock; (2) the $10 PDC stock price at the November 9, 2001 ESOP closing had been inflated; (3) semiannual stock prices being reported to Employee Owners did not represent PDC's fair market value, and (2) each of the previously reported semiannual stock prices had been inflated. [B208 ¶ 411, B251 ¶ 557.] This continued concealment was critical for State Street to avoid liability; if it had corrected the stock's value after 2001, it would have revealed its prior breaches of fiduciary duty, including in connection with the 2001 Transaction.

There is accordingly no merit to State Street's contention that it is not responsible for any acts of fraud or concealment, or that such acts were not pled with particularity. State Street is *directly* responsible for the above acts and omissions detailed in the Complaint, either by committing them itself, by approving and ratifying them, or by providing false information in the form of inflated stock prices that were passed on to Employee Owners. Although State Street did not directly communicate the stock price to the Employee Owners—or release Appvion's 10-Ks, 10-Qs, and Form 5500s—State Street knew the ESOP Committee was releasing these while providing limited information about the valuations to employees. [B284

¶ 677.] *See* Restatement (Second) of Torts § 533 ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other….")

Also baseless is State Street's claim that publication of the stock price cannot constitute fraudulent concealment because it is just "the necessary and inherent outcome of the valuation process." [SSAB 25-26.] This is just a backhanded way of arguing that State Street's false statements about the stock price cannot be acts of fraud or concealment because they were not separate from the underlying fiduciary duty breaches. This Court has expressly rejected the view that fraud or concealment under § 1113 "is limited to active concealment that is separate from the underlying wrongdoing." *Martin*, 966 F.2d at 1095; *see also Wolin v. Smith Barney Inc.*, 83 F.3d 847, 851-52 (7th Cir. 1996) ("fraudulent concealment" as incorporated into § 1113 includes both "self-concealing acts" and "active concealment").

Moreover, State Street cites no authority holding that publishing an ESOP stock price, as such, can never constitute a "trick or contrivance" even when the publisher is responsible for calculating that price and knows it is both inflated and misleading to ESOP participants. These were "genuine acts of concealment" because they not only conveyed the new inflated stock price, they repeated and confirmed

the previously reported (and inflated) stock price. [*See, e.g.*, B197, B201-02, B204.] Instead of confirming the previous stock price, State Street could and should have adjusted it downward—but to do so would have exposed its previous breaches of fiduciary duty.

State Street argues "Plaintiff failed to allege with particularity any facts establishing that State Street knew that [the valuations] were inaccurate, much less that State Street communicated them with intent to defraud participants." [SSAB 27.] But Lyon has alleged ample facts with particularity that demonstrate State Street knew its statements about PDC stock value were inaccurate and designed them to "exclude suspicion and prevent inquiry." *See Martin*, 966 F.2d at 1094 (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)). For example, State Street knew the control premium was inappropriate as described above in Section II.B.1. Yet State Street allowed Stout to apply a control premium in valuations from 2001 through 2012 that constituted a material portion of PDC's equity value. [B277-78.] Similarly, State Street knew the valuations should have deducted Appvion's unfunded pension/postretirement liability as described above in Section II.B.2 but did not. Indeed, State Street failed to insist that the valuations include even all interest-bearing debt, even though Driscoll was present at the August 2, 2001 Road Show when Karch and Willamette's Rick Braun explained that all debts must be subtracted from a company's enterprise value to arrive at fair market value. [B133, B275-77.]

In short, State Street has provided much more than conclusory allegations simply asserting that State Street knew the valuations were false. *Cf. Grove Holding Corp. v. First Wisconsin Nat. Bank of Sheboygan*, 803 F. Supp. 1486, 1501–02 (E.D. Wis. 1992) ("Assertions that Thompson knew the representations were false and that Thornton knew investors would rely on those representations are too conclusory to meet the requirements of 9(b).").

State Street's arguments about lack of motive or "intent to defraud" are red herrings. [SSAB 26-27.] State Street does not cite any authority to support its claim that Lyon was required to plead motive or intent to defraud someone, as opposed to simply an intent to conceal.

State Street erroneously relies on plain fraud cases rather than cases interpreting fraud or concealment under § 1113. [SSAB 26-27.] Regardless, even if motive is required, Houlihan was an ongoing source of business referrals for State Street. [B112.] State Street was therefore conflicted and motivated to make sure the 2001 Transaction closed, then keep silent concerning Houlihan's conduct. [B113.] Afterwards, of course, State Street was motivated to conceal its own wrongdoing. [B282-84.]

Finally, State Street's arguments ignore that it is liable for the breaches of the ESOP Committee Members under 29 U.S.C. § 1105(a). [ASA SAC ¶¶ 1160-1167.] Because Lyon's ERISA claims against these Defendants are tolled for the reasons

discussed in his opening brief and reply brief to the Ds&Os, so too are Lyon's co-fiduciary claims against State Street. [*See* AOB 57-69, Ds&Os Reply 5-15.]

## IV.   CLAIMS RELATING TO THE JULY 2012 VALUATION ARE TIMELY.

Lyon's argued that claims related to the July 2012 valuation were timely because State Street used that stock value to purchase stock in December 2012. The district court addressed this in a footnote; the only analysis was that the magistrate "disagree[d] with this line of reasoning." [App. B040.] This does not comply with Circuit Rule 50.

### A.   Lyon Preserved this Argument.

State Street argues that Lyon failed to raise arguments relating to the July 2012 in the motion to dismiss briefing—while citing Lyon's arguments addressing that exact issue in its opposition to State Street's Motion to dismiss. [SSAB at 32.] Undaunted, State Street insists Lyon only made an "unreasoned assertion" that the claim was timely. However, the plain language of the statute—which Lyon cited—supported that position. 29 U.S.C. § 1113(1)(A)-(B); [ASA083-084.]

Lyon also objected to the R&R on this point. [ASA001-003.] At that time, Lyon was able to cite a new district court opinion which supported his interpretation of § 1113(1). [*Id.*]

State Street's argument that this was not preserved has no merit.

## B.    Lyon's Claims Accrued When State Street Purchased PDC's Stock.

State Street argues that Lyon's claim is only directed to the valuation process, not the purchases of PDC stock. This is incorrect. The sole purpose of the valuation was to set the price of PDC stock, which State Street then used to purchase PDC's stock. Count III is directed to State Street's breaches of the duties of prudence, loyalty, and disclosure under 29 U.S.C. § 1104 in valuing and then overpaying for PDC's stock. [B272-281 ¶¶ 647-669.] Paragraph 671 of the SAC alleges:

> **State Street approved the use of the 16 July 2012 valuation to purchase shares** … in December 2012. Accordingly, **the last actions which constituted a breach of State Street's fiduciary duties in connection with that valuation occurred within the six-year statute** … and Plaintiff's claims relating to that valuation are timely….

[B281 ¶ 671 (emphasis added).] This act of purchasing stock for more than fair market value was a breach of State Street's fiduciary duties—and violated the trust documents. [*See Fish*, 749 F.3d at 680.] [B272 ¶ 649, ASA153 ¶ 1103.]

The district court did not, as State Street contends, find that State Street's stock purchases "were not fiduciary acts by State Street." [SSAB at 33.] The portion of the R&R which State Street cites relates to whether State Street "caused" the purchase of PDC's stock within the meaning of 29 U.S.C. § 1106(a)(1). [B041-44.] The magistrate judge held that "but for" causation was not sufficient, and § 1106(a)(1) required full discretionary authority over the decision to purchase or not

purchase PDC's stock. [B043-44.] The magistrate judge's reasoning with respect to the prohibited transaction claim does not change the fact that State Street *actually* purchased PDC's stock on behalf of the ESOP, which it did in its role as the ESOP's fiduciary.

Further, State Street's role also as a fiduciary did not end when it issued the valuation—it had continuing duties under ERISA and under the ESOP Trust Agreement to ensure that the ESOP was paying no more than fair market value for stock. [B129.] *See Walsh v. Maine Oxy-Acetylene Supply Co*., No. 2:20-CV-00326-NT, 2021 WL 2535942, at *5 (D. Me. June 21, 2021) (ESOP trustee owed a continuing duty to ensure the Plan was valued at fair market value, so claims based on valuation which occurred outside of six-year statute of limitations were timely where the valuation was used to purchase within the six-year period). The harm occurred (and the breaches of fiduciary duty were therefore complete) when the stock price was used to purchase stock. *See Albert v. Oshkosh Corp*., 47 F.4th 570, 579 (7th Cir. 2022) (harm is an element of breach of fiduciary duty); *Neil v. Zell*, 767 F. Supp. 2d 933, 944 (N.D. Ill. 2011) (damages for ESOP overpayment included the difference between fair market value and the price paid).

State Street accuses Lyon of trying to recharacterize the allegations in the SAC as omissions, relying on various district court opinions. However, even State Street's cases look at the substance of the allegations, not the terminology, in determining

action or omission. For example, in *Ellis v. Rycenga Homes*, 484 F.Supp.2d 694, 714 (W.D. Mich. 2007), the court rejected most allegations as affirmative acts but considered the "fail[ure] to inquire concerning the plan's large and growing cash investments" as an omission. *Ellis* also found the co-fiduciary liability claim was timely since it was based on inaction. *Id.* The allegations here are about a failure to conduct a prudent review of the valuations, which necessarily entail omissions; the co-fiduciary liability claim does as well. [AOB 11.] However, at a minimum the breach of the duty of disclosure is expressly alleged as an omission. [ASA149-150 ¶ 640.]

Lyon's claims based on the July 2012 valuation are timely.

## V.    THE SAC PLEADS CO-FIDUCIARY LIABILITY.

Count 38 of the SAC alleges that State Street "knowingly participated in and enabled the ESOP Committee members' breaches of fiduciary duty." [ASA156-157 ¶¶ 1162-1167.] There are no special pleading requirements for this claim.

State Street incorrectly describes Lyon's "enabling" argument as "underdeveloped" and argues waiver. There is no basis for that. The Opening Brief only focused on the financial projections and the pension liability as exemplary facts that supported co-fiduciary liability. [AOB 51; ASA156-157 ¶ 1164.]

State Street argues that the financial projections argument cannot support liability because the valuations came after the ESOP Committee provided

projections to Stout. There are no temporal limitations here, however; State Street still enabled the ESOP Committee members' breaches by accepting the inflated projections. In addition, beginning in 2008, the ESOP Committee members also breached their fiduciary duties by affirmatively approving the valuations that State Street had approved. [ASA156-157 ¶ 1164.] State Street also allowed the ESOP Committee to control communications with the ESOP's Employee Owners, and those communications misleadingly described the valuations. [*Id.*] These breaches of fiduciary duty by the ESOP Committee would not have been possible without State Street's own breaches; further, the SAC alleges State Street knew about these breaches at least through its own meetings with the ESOP Committee. [*Id.*]

As to "actual knowledge," there is no heightened pleading standard for this claim and knowledge may be averred generally. Fed. R. Civ. P. 9(b). However, Lyon's opening brief explained that the district court erroneously refused to make "an inferential step" relating and instead required proof of actual knowledge. [App. B018.] For example, the district court stated that it is "not reasonable to infer, based on a bare allegation that two parties had meetings, that one side told the other about how it was systematically defrauding its employees." [App. B045-46.] But it is not reasonable to require that inference. The SAC alleges the D&O Defendants breached their fiduciary duties in many ways which do not depend on fraud, and the D&O Defendants did not have to *inform* State Street about those breaches to allow an

29

inference of knowledge, particularly where the breaches were clear from facts in State Street's possession. [D&O Reply 15-23.] *See Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) (knowledge can be inferred from facts).

State Street does not attempt to support the district court's other reasoning, which dismissed the co-fiduciary liability claim as "a mirror-image of Count 7 of the FAC." [B045.] This failure to consider the allegations in the SAC was error. *DiLeo*, 901 F.2d at 626.

## <u>CONCLUSION</u>

For these reasons, the Court should reverse and remand for trial Lyon's ERISA claims against State Street.

RESPECTFULLY SUBMITTED this 6th day of November, 2023.

/s/ *L. Richard Williams*
L. Richard Williams
Abigail M. Terhune
Jennifer B. Anderson
BEUS GILBERT McGRODER PLLC
701 North 44th Street
Phoenix, Arizona 85008-6504
*Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document does comply with the type-volume limit of Fed. R.

App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, excluding the parts of the

document exempted by Fed. R. App. P. 32(f), this document contains 6,853 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Office Word

Version 2003 with Times New Roman font in 14-point type.


/s/ *L. Richard Williams*

## <u>CERTFICATE OF SERVICE</u>

I hereby certify that on November 6, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/  <em>L. Richard Williams</em>